James M. Finberg (State Bar No. 114850)
Steven M. Tindall (State Bar No. 187862)
Peter E. Leckman (State Bar No. 235721)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Counsel for the Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOPI VEDACHALAM and KANGANA BERI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TATA AMERICA INTERNATIONAL CORPORATION, a New York corporation; TATA CONSULTANCY SERVICES, LTD, an Indian Corporation; and TATA SONS, LTD, an Indian Corporation.<br><br>Defendants. | CASE NO. C 06-0963 (VRW)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR CONVERSION; BREACH OF CONTRACT; UNJUST ENRICHMENT; UNFAIR BUSINESS PRACTICES; AND VIOLATIONS OF CALIFORNIA WAGE AND HOUR LAWS**<br><br>CLASS ACTION<br><br>**DEMAND FOR JURY TRIAL** |

1   Individual and representative Plaintiffs Gopi Vedachalam and Kangana Beri ("Plaintiffs")

2   allege, on behalf of themselves and all others similarly situated, as follows:

3   **<u>JURISDICTION AND VENUE</u>**

4   1.      Plaintiffs bring this class action on behalf of various Classes of employees of Tata

5   Consultancy Services, Ltd., and Tata Sons, Ltd., Indian corporations headquartered in Mumbai,

6   India, as well as their U.S. subsidiary, Tata America International Corporation (collectively

7   referred to as "TCS" or "Defendants").

8   2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

9   § 1332, as recently amended by the Class Action Fairness Act, because the aggregate amount

10  claimed by the individual members of the proposed Classes exceeds $5,000,000, exclusive of

11  interest and costs.  The Nationwide Classes each exceed 100 persons, and their members are

12  citizens of India and other countries, and Defendant Tata America International is a citizen of

13  New York.  The California Classes exceed 100 persons, and the California Classes' members are

14  citizens of India and other countries, and Defendant Tata America International is a citizen of

15  New York.

16  3.      Personal jurisdiction over TCS is proper because it has purposefully availed itself

17  of the privilege of conducting business activities within the State of California by employing

18  workers within California, and selling its services within the State.  TCS generally has maintained

19  systematic and continuous business contacts with California.

20  4.      Venue is proper in this district pursuant to 42 U.S.C. § 2000e5(f) and 28 U.S.C.

21  § 1391 (b) & (c).  Many of the acts complained of herein occurred in this District and gave rise to

22  the claims alleged.  TCS conducts business in this District and employs hundreds of workers

23  within the State of California.

24  **<u>SUMMARY OF CLAIMS</u>**

25  5.      Plaintiffs are current and former employees of TCS, who were "deputed" to the

26  United States by TCS in order to work in-house for TCS's customers. Plaintiffs were not paid the

27  wages they were promised by TCS, were forced to pay back to TCS wages previously earned, and

28  were injured by TCS's systematic violations of California's wage and hour laws.

6.    Plaintiffs are members of, and seek to represent, the following nationwide class:

> All non-U.S. citizens who were, are, or will be employed by TCS at anytime since February 14, 2000 through the date of the final disposition of this action who were promised a higher amount of wages than they actually received ("Nationwide Class A").

7.    Plaintiffs allege, on behalf of themselves and Nationwide Class A, that TCS did not pay them the gross wages that TCS promised it would pay them in exchange for working for TCS in the United States.  Plaintiffs, on behalf of themselves and Nationwide Class A members, seek damages, injunctive relief, and restitution of all unjust enrichment Defendants have enjoyed as a result of TCS's contract breaches.

8.    Plaintiff Vedachalam is a member of, and seeks to represent, the following nationwide class:

> All non-U.S. citizens who were, are, or will be employed by TCS at anytime since February 14, 2000 through the date of the final disposition of this action who were forced to endorse and pay to TCS their tax refund checks ("Nationwide Class B").

9.    Named Plaintiff Vedachalam alleges, on behalf of himself and Nationwide Class B members, that TCS forced them to pay back to the Defendants wages that the employees had previously earned in the form of tax refund checks.  Plaintiff Vedachalam, on behalf of himself and Nationwide Class B members, seeks damages, injunctive relief, and restitution of all unjust enrichment Defendants have enjoyed as a result of these practices.

10.    Plaintiffs further allege, on behalf of themselves and all non-U.S. citizens who were, are, or will be employed by TCS in California at any time since February 14, 2000 through the date of the final disposition of this action, that TCS violated various California labor code provisions by forcing their California employees to pay back to the Defendants wages that the employees had previously earned ("California Class A").  Plaintiffs, on behalf of themselves and California Class A members, seek damages, injunctive relief, and restitution of all unjust enrichment Defendants have enjoyed as a result of these practices.

11.    Plaintiff Beri, on behalf of herself and all non-U.S. citizens who were, are, or will be employed by TCS in California as technical support workers, including those with the titles

Assistant Systems Engineer Trainee, Assistant Systems Engineer, Information Technology Analyst, and all others who had the primary duties of installing, maintaining, and/or supporting computer software and/or hardware, further alleges that TCS violated California law by improperly misclassifying these employees as exempt from overtime pay under California law ("California Class B"). Named Plaintiff Beri, on behalf of herself and California Class B, seeks damages, injunctive relief, and restitution of all unjust enrichment Defendants have enjoyed as a result of these practices.

12.     Plaintiff Beri, on behalf of herself and all non-U.S. citizens who worked for TCS in California at any time since February 14, 2000 through the date of the final disposition of this action, and who are no longer working for TCS ("California Class C"), further alleges that at least until July 2005, TCS had an unlawful "use-it-or-lose-it" vacation policy, whereby employees who left TCS would forfeit vacation time that they earned, but did not use. Plaintiff Beri, on behalf of herself and California Class C, further alleges that TCS violated California labor law by failing to pay discharged employees all wages earned and unpaid within 72 hours of termination. Named Plaintiff Beri, on behalf of herself and California Class C, seeks damages, injunctive relief, and restitution of all unjust enrichment Defendants have enjoyed as a result of these practices.

**THE PARTIES**

13.     Plaintiff Gopi Vedachalam is a citizen of India, legally working and living in California under an L-1 visa. (The L-1 visa is used to transfer an employee to a US parent, affiliate, subsidiary, or branch office from a related foreign company.) In 1997, Mr. Vedachalam began working for Tata Consultancy Services in Bangalore, India. In April 2000, Tata Consultancy Services "deputed" Mr. Vedachalam, sending him to work for Tata America International in the United States. Since April 2000, Mr. Vedachalam has worked in the United States for Tata America International and Tata Consultancy Services, Ltd. From 2000 to 2003, Vedachalam worked in Hayward, California, as a TCS project manager for Target; since 2003, he has worked as a TCS project manager for 21st Century Insurance in Woodland Hills, California.

14.     Plaintiff Kangana Beri is a citizen of India, legally living in California under an H-4 visa. (The H-4 visa is a dependant visa for someone whose spouse lives and works legally in the

United States on an H-1B visa.)  In 2001, Ms. Beri began working for TCS in New Delhi, India.
In April 2003, Ms. Beri was deputed to the United States.  TCS classified Ms. Beri as an
Assistant Systems Engineer and her primary duties were to maintain and support computer
software.  Ms. Beri consistently worked in excess of eight (8) hours in a workday and forty (40)
hours in a workweek, without receiving overtime compensation as required by California law.
Ms. Beri did not take any vacation while working for TCS and has never received compensation
from TCS for vacation days she did not use.  Ms. Beri has not worked for TCS since September
2004.

15.    Defendant Tata America International Corporation ("Tata America"), a U.S.
subsidiary of Tata Consultancy Services, Ltd., is, and at all times mentioned herein was, a New
York corporation operating in the San Francisco Bay Area as well as throughout the State of
California and the United States.  Tata America's principal place of business is in New York,
New York.

16.    Defendant Tata Consultancy Services, Ltd. is an Indian corporation with its
principal place of business in Mumbai, India.  Tata Consultancy Services, Ltd. is wholly owned
by Defendant Tata Sons, Ltd., an Indian corporation.

17.    Defendant Tata Sons, Ltd., is an Indian corporation with its principal place of
business in Mumbai, India.  Tata Sons is the parent company of Tata Consultancy Services, Ltd.

## STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS

**A.**    **TCS's Deputation of Its Employees to the United States**

18.    Most TCS employees in the United States are non-U.S. citizens.  Most of these
individuals have worked for TCS in India and are "deputed" to work in the United States,
meaning that the employees continue to work for TCS, but are stationed in the United States.

19.    Each employee signs a Deputation agreement that outlines the terms and
conditions of his or her employment in the United States.

20.    These employees are granted visas, which allow the employees to work and live in
the United States.  TCS, under the penalty of perjury, makes certain representations to the U.S.
government and to its employees on these applications about the amount of wages each employee

will earn during his or her stay in the United States.

21.     The Deputation agreements state that the employee's gross amount of compensation shall be includable as earnings in the United States and reported to the U.S. Internal Revenue Service.

22.     The Deputation agreements state that "[i]n addition to the compensation and benefits you currently receive and will continue to receive in India while on Deputation, you shall receive additional compensation in the United States in the gross amount of" a certain number of dollars.

23.     While in the United States, these employees are paid by TCS, Ltd., through Tata America International.

**B.     TCS's Operations**

24.     TCS is the information technologies outsourcing/consulting arm of the Indian conglomerate Tata Group.  Tata America is a U.S. subsidiary of TCS.  Tata America has branch offices throughout the United States, including, but not limited to, Arizona, California, Connecticut, Colorado, Florida, Illinois, Indiana, Kentucky, Maryland, Minnesota, Michigan, New York, New Jersey, Texas, Washington, Wisconsin.

25.     On information and belief, Plaintiffs believe that most TCS employees, working in the United States, work on-site with other U.S. businesses.

**CLASS ALLEGATIONS**

26.     Plaintiff Vedachalam and/or Plaintiff Beri bring this class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of a two nationwide classes and three California classes, as described below.

**II.     NATIONWIDE CLASSES**

**A.     Nationwide Class A**

27.     Plaintiffs are members of, and seek to represent, the following nationwide class:

> All non-U.S. citizens who were, are, or will be employed by TCS at anytime since February 14, 2000 through the date of the final disposition of this action who were promised a higher amount of wages than they actually received ("Nationwide Class A").

28.    When Defendants "depute" their Indian employees to the United States, they promise those employees a certain gross salary in addition to the salary they will continue to earn in India. This promise is contained in the Deputation Terms Agreement, which reads: "In addition to the compensation and benefits you currently receive and will continue to receive in India while on Deputation, you shall receive additional compensation in the United States in the gross amount of" a certain number of dollars.

29.    For example, TCS promised Plaintiff Beri a gross amount of $50,000 in addition to the compensation and benefits she received in India.  Ms. Beri did not receive this gross amount in addition to the compensation and benefits she received in India when she worked for TCS in the United States.

30.    TCS also makes certain salary representations to the employees and to the U.S. government in the employees' visa petitions.  For example, under penalty of perjury, in Plaintiff Vedachalam's May 2003 visa application to the United States, TCS represented to Plaintiff Vedachalam (and to the U.S. government) that from May 30, 2003 through May 29, 2005, Plaintiff Vedachalam would receive $74,000 per year.  Mr. Vedachalam did not receive this amount of annual salary in 2004 or 2005, and is not currently receiving this amount of annual salary.

31.    In addition to not paying their employees the amount promised, TCS, in many instances, decreased their employees' wages further by requiring their employees to sign over their tax refund checks or by requiring them to pay to receive the tax forms required to file an income tax return.

32.    For example, in 2004, for tax year 2003, Plaintiff Beri informed TCS that she would like to file her own tax returns jointly with her husband.  TCS unlawfully refused to provide her with her W-2 tax forms. See 26 C.F.R. § 31.6051-1 (setting forth the requirement that employers must provide their employees with two copies of their W-2 forms on or before January 31 of the year following the tax year). Ultimately, TCS informed her that they would only provide her with her W-2 form if she first paid TCS $2,440.  This was the amount that TCS calculated that she would receive as a refund had she been unmarried and filed as an unmarried individual.

Plaintiff Beri wrote a personal check to TCS in that amount and only then, months after January 31, 2004, did TCS provide her with her W-2 forms.

33.     TCS has not repaid Plaintiff Beri for the amount they required her to pay to receive her 2003 W-2 forms.

34.     In no signed agreement were Plaintiffs promised a lower net salary rather than the gross salary set forth in their Deputation Terms Agreements and/or represented to them in their visa petitions.

35.     On information and belief, Plaintiffs were never provided with an "Overseas Deputation Policy."

**B.     Nationwide Class B**

36.     Named Plaintiff Vedachalam is a member of, and seeks to represent, the following nationwide class:

> All non-U.S. citizens who were, are, or will be employed by TCS at anytime since February 14, 2000 through the date of the final disposition of this action who were forced to endorse and pay to TCS their tax refund checks ("Nationwide Class B").

37.     Plaintiff Vedachalam was paid a gross amount monthly, and federal and state income taxes were withheld from these gross monthly wages.

38.     At least until July 2005, Defendants required that their non-U.S. citizen employees sign power of attorney agreements that delegated an outside agency to calculate and submit each employee's tax returns to the applicable state and federal tax authorities.

39.     On information and belief, Plaintiffs allege that during each year of the class period, each Nationwide Class B member received a state and federal tax refund check, representing the amount of taxes they had overpaid the state and federal tax agencies.

40.     Each year that Plaintiff Vedachalam worked for Defendants in the United States, the Internal Revenue Service and California Franchise Tax Board sent to Defendants checks made out to Plaintiff Vedachalam in the amount of tax he overpaid throughout the preceding year. Each year that Plaintiff Vedachalam has worked for Defendants in the United States, Defendants have required him to endorse his tax refund checks and send those checks back to the company.

1   In 2004, for example, TCS sent Plaintiff Vedachalam an "Urgent Memo" that stated: "Thank you

2   very much for your excellent support in assisting us to file the tax return on your behalf for the

3   year [current year].  We are now forwarding you the tax refund check received from the Tax

4   Authority.  Please sign on the reverse of the cheque and return it to the below mentioned address.

5   Your assistance in the [sic] regard will be highly appreciated."

6      41.    On information and belief, Plaintiffs allege that when Defendants receive the tax

7   refund checks from the respective tax agencies, made out to each of their non-U.S.-citizen

8   employees, they send their non-U.S.-citizen employees an "Urgent Memo," demanding that the

9   employees endorse the checks and send them back to Defendants.

10      42.    Vedachalam did not provide TCS with his tax over-payment, i.e., his refund check,

11   voluntarily.  Instead, he had no choice in the matter, because—prior to sending his refund checks

12   to him—TCS stamped the back of the checks with a stamp that read: "Pay to the Order of . . .

13   Tata Consultancy Services, Ltd."

14      43.    On information and belief, Plaintiffs allege that Defendants have retained the

15   proceeds from the Nationwide Class B members' tax refund checks by requiring that employees

16   endorse their refund checks for TCS's benefit.  Defendants have not repaid these funds to their

17   employees.

18      44.    On information and belief, Plaintiff Vedachalam alleges that Defendants have

19   taken the proceeds from his state and federal tax refunds for each year that he has worked in the

20   United States.  Defendants have never repaid Vedachalam the tax refund money that they

21   required him to sign over to TCS.

22      45.    On information and belief, Plaintiff Vedachalam alleges that Defendants may have

23   received as much as $5,000 per year, per employee as a result of Defendants' requirement that

24   each Nationwide Class B member sign over his or her tax refund checks to Defendants.

25      46.    Plaintiff Vedachalam estimates that Defendants have retained nearly $25,000 in

26   federal and state tax refunds that rightfully belong to him.

27      47.    In no signed agreement (or any other document) were Plaintiffs told that they

28   would receive a set net pay amount that TCS would then "gross-up" to include their taxes.

1  Instead, Plaintiffs Vedachalam and Beri believed that they were receiving a gross amount from

2  TCS, out of which taxes were being withheld.

3  **C.    Suitability Of The Nationwide Classes for Class Certification**

4  48.    The members of the Nationwide Classes identified herein are so numerous that

5  joinder of all members is impracticable.  At the end of 2005, Defendants employed thousands of

6  non-U.S.-citizen employees in the United States.  Although the precise number of employees

7  affected by the illegal practices alleged herein is currently unknown, it is far greater than can be

8  addressed feasibly through joinder.  The precise number is ascertainable from Defendants'

9  records.

10  49.    There are many questions of law and fact common to the Nationwide Classes, and

11  these questions predominate over any questions affecting only individual members.  Common

12  questions of fact or law include, among others: (1) whether Defendants had a systematic plan to

13  breach the contracts of their non-U.S.-citizen employees (Nationwide Class A); (2) whether

14  Defendants unlawfully held hostage the W-2 tax forms of those employees who wished to file

15  their own tax returns, requiring that such employees pay TCS a set amount of money before TCS

16  relinquished the tax forms, thereby lowering the amount of salary promised in their agreements

17  (Nationwide Class A); (3) whether Plaintiff Vedachalam and the proposed class have a right to

18  their individual tax refund checks (Nationwide Class B); (4) whether Defendants unlawfully

19  compelled the Plaintiff Vedachalam and the proposed class to turn over those refund checks to

20  TCS (Nationwide Class B); (5) whether Defendants exerted an act of ownership or dominion over

21  the personal property of Plaintiff Vedachalam and the proposed Class (Nationwide Class B);

22  (6) whether, by signing over their refund checks to TCS, Plaintiff Vedachalam and the proposed

23  Class conferred a benefit to Defendants (Nationwide Class B); (7) whether Defendants were

24  aware of the benefit they received (Nationwide Class B); (8) whether Defendants have retained

25  this benefit under circumstances that make it inequitable for Defendants to retain the benefit

26  without the payment of its value (Nationwide Class B); and (9) whether injunctive relief and other

27  equitable remedies (including restitution) and compensatory and punitive damages are warranted

28  for the Nationwide Classes (Nationwide Classes A and B).

50.     The claims of Plaintiffs are typical of the claims of the respective Nationwide Class(es) they seek to represent.

51.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Nationwide Classes.  Plaintiffs' counsel is competent and highly experienced in complex class actions in general and employment-related class actions in particular.

52.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because TCS has acted and/or refused to act on grounds generally applicable to the Nationwide Classes, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Nationwide Classes.  The law entitles members of the Nationwide Classes to injunctive relief, including restitution of the profits Defendants have unlawfully acquired and retained through their illegal acts.

53.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any individual questions affecting members of the Nationwide Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of Nationwide Classes have been damaged and are entitled to recovery as a result of Defendants' common, uniform, and illegal policies and practices.  Defendants have computerized payroll and personnel data that will make calculation of damages for specific members of the Nationwide Classes relatively straightforward.

## III.    CALIFORNIA CLASSES

### A.    California Class A

54.     Plaintiffs are members of, and seek to represent, the following Class:

> All non-U.S. citizens who were, are, or will be employed by TCS in California at any time from February 14, 2002 through the date of the final disposition of this action who were forced to pay back to TCS previously-earned wages ("California Class A").

55.     By requiring that their non-U.S.-citizen employees either (1) sign over their tax refund checks to the company or (2) pay TCS in order to receive their W-2 tax forms, Defendants required their California employees to repay to Defendants wages those employees had

1    previously earned.

2        56.    The tax overpayment, or refund check, that TCS requires each class member to

3    submit to the Defendants represents the amount of the class members' gross wages that they

4    overpaid to the California Franchise Tax Board and the Internal Revenue Service from their

5    monthly paychecks.

6        57.    The class members are entitled to this amount because, among other reasons, (1) it

7    represents the amount that they have overpaid the tax authorities from their gross wages and

8    (2) taking the tax refund checks widens the gap between the amount that TCS promised these

9    employees and the amount TCS actually paid them.

10       58.    Plaintiff Vedachalam estimates that Defendants have required him to return to

11   Defendants nearly $5,000 in earned wages per year.  Plaintiff Beri estimates that Defendants

12   required her to return to the TCS $2,440 in earned wages.  On information and belief, Plaintiffs

13   allege that Defendants have required each member of California Class A to return similar

14   amounts to Defendants.

15       59.    While working in the United States for Defendants, Plaintiffs have not been

16   provided with accurate, itemized wage statements.  The statements TCS provided misstated the

17   employees' gross income and net income because the statements did not account for the wages

18   Defendants required the Plaintiffs to return to them.  Moreover, Defendants regularly changed the

19   number of exemptions listed on Plaintiffs' wage statements without informing Plaintiffs of the

20   change, the reasons for the change, or its consequences.  On information and belief, Plaintiffs

21   allege that other members of the California Class A similarly did not receive accurate, itemized

22   wage statements.

23       60.    By not accounting for the tax refunds that TCS required its employees return to

24   TCS, TCS has willfully refused to provide its employees with accurate, itemized wage

25   statements.

26   **B.    California Class B**

27       61.    Plaintiff Beri is a member of, and seeks to represent, the following Class:

28           All non-U.S. citizens who were, are, or will be employed by TCS in

538309. 3                                    - 11 -         FIRST AMENDED CLASS ACTION COMPLAINT
                                                            CASE NO. C 06-0963 (VRW)

California at any time within the four years prior to the date of the filing of this Complaint through the date of the final disposition of this action, as technical support workers—including Assistant Systems Engineers Trainees, Assistant Systems Engineers, Information Technology Analysts—and all others whose primary duties are installing, maintaining, and/or supporting computer software and/or hardware, and who worked over forty (40) hours per week and/or worked over eight (8) hours per day and were not paid at least time and one half for all overtime hours worked ("California Class B").

62.     Defendants employ a number of individuals in California whose primary tasks place them in a category that legally necessitates that TCS pay them premium overtime wages for all hours worked over forty (40) hours per week and all hours worked over eight (8) hours per day.

63.     Plaintiff Beri worked for TCS under the title Assistant Systems Engineer, and her primary duties were maintaining and supporting computer software for TCS's clients.  Others at TCS, including those classified as Assistant Systems Engineer Trainees, Assistant Systems Engineers, and Informational Technology Analysts engage in similar work and are improperly classified as exempt for California's wage and hour laws, requiring the payment of overtime wages for overtime hours worked.

64.     TCS required Plaintiff Beri to record 8 hours for every day that she worked despite the fact that she routinely worked more than 8 hours a day.

**C.     California Class C**

65.     Named Plaintiff Beri is a member of, and seeks to represent, the following Class:

All non-U.S. citizens who worked for TCS in California at any time from February 14, 2002 to the present and who are no longer working for TCS ("California Class C").

66.     TCS gives both U.S. citizens and non-U.S. citizen employees 15 vacation days a year.  All employees can carry over only five unused days to the following year.  At least until 2005, although U.S. citizen employees could cash-in unused vacation days in excess of the five days carried over, non-U.S.-citizen employees could not cash in their unused vacation days and were required to forfeit any unused vacation days beyond the five carried over without any compensation.

1   67.   Plaintiff Beri never took vacation from TCS during the time that she worked for

2   the company.

3   68.   Although Plaintiff Beri no longer works for TCS, Defendants have never paid her

4   for the vacation days she forfeited.

5   69.   On information and belief, Plaintiffs allege that Defendants have failed adequately

6   to compensate their dismissed California employees for all of the vacation time they earned but

7   did not use.

8   70.   On information and belief, Plaintiff Beri further alleges that TCS violated

9   California labor law by failing to pay California Class B members all wages earned and unpaid

10   within 72 hours of discharge.

11   **D.   Suitability of California Classes for Class Certification**

12   71.   The members of the California Classes are so numerous that joinder of all

13   members is impracticable.  At the end of 2005, Defendants employed hundreds of non-U.S.-

14   citizen employees throughout California.  Although the precise number of California employees

15   affected by the illegal practices alleged herein is currently unknown, it is far greater than can be

16   feasibly addressed through joinder.  The precise number is easily ascertainable from Defendants'

17   records.

18   72.   There are many questions of law and fact common to the proposed California

19   Classes, and these common questions predominate over any questions affecting only individual

20   members.  Common questions of fact or law include, among others: (1) whether Defendants

21   compelled their California employees to repay wages already earned (California Class A);

22   (2) whether Defendants misclassified certain employees as exempt from California's overtime

23   laws (California Class B); (3) whether Defendants refused to reimburse their former California

24   employees for vested vacation time (California Class C); (4) whether Defendants failed

25   adequately to pay their dismissed California employees within 72 hours of those class members'

26   terminations from the company (California Class C); (5) whether Defendants willfully failed to

27   provide their California employees with accurate, itemized statements of their wages (California

28   Classes A, B, and C); and (6) whether the law entitles the Class members to restitution of all

1   unjust enrichment Defendants have enjoyed from Defendants' alleged violations of the California

2   Labor Code (California Classes A, B, and C).

3       73.     The claims of Plaintiffs Vedachalam and/or Beri are typical of the claims of the

4   various Classes.

5       74.     Plaintiffs will fairly and adequately represent and protect the interests of the

6   members of the California Classes.  Plaintiffs' counsel is competent and highly experienced in

7   complex class actions in general and employment class actions in particular.

8       75.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because

9   Defendants have acted and/or refused to act on grounds generally applicable to the California

10  Classes, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the

11  proposed California Classes.  The law entitles the members of the California Classes to injunctive

12  relief to end Defendants' common, uniform, and illegal practices, including restitution of the

13  profits Defendants have acquired through their illegal acts.

14      76.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because

15  common questions of fact and law predominate over any questions affecting only individual

16  members of the proposed California Classes, and because a class action is superior to other

17  available methods for the fair and efficient adjudication of this litigation.  Defendants' practices

18  have damaged the members of the proposed California Classes, and the law entitles the proposed

19  California Classes to recovery as a result of Defendants' common, uniform, and illegal practices.

20  Defendants have computerized payroll and personnel data that will make calculation of damages

21  for specific members of the proposed California Classes relatively straightforward.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT—NATIONWIDE CLASS A**
**(by Plaintiffs on behalf of themselves and the proposed Nationwide Class A)**

22

23

24      77.     Plaintiffs hereby incorporate by reference the allegations contained in all

25  preceding paragraphs of this complaint.

26      78.     Plaintiffs bring this claim on behalf of themselves and the proposed Nationwide

27  Class A.

28      79.     The class period for the proposed Nationwide Class A is from February 14, 2000

1    through the date of judgment.

2         80.    By failing to pay Nationwide Class A members the amount of compensation

3    promised in their Deputation Terms Agreements, Defendants breached those contracts.  By

4    failing to pay Nationwide Class A members the amount promised as reflected in their visa

5    applications, which TCS signed under the penalty of perjury, Defendants breached their

6    agreements with the Nationwide Class A members.

7         81.    Defendants' breach of the terms of their contracts with the members of the

8    Nationwide Class entitles those members to restitution and recovery of all damages caused by

9    Defendants' nonperformance.

10        82.    It is inequitable for Defendants to retain the funds promised to the proposed

11   Nationwide Class Members.

12        83.    Defendants' conduct as alleged above establishes a claim for breach of contract, as

13   articulated by the Restatement (Second) of Contracts, the laws of New York (Tata America's

14   state of incorporation and principal place of business) and, in the alternative, the laws of

15   California, or the laws of Maryland.

16        84.    Plaintiffs request relief as provided in the Prayer for Relief below.

17                        **SECOND CLAIM FOR RELIEF**
                    **CONVERSION—NATIONWIDE CLASS B**
18        **(by Plaintiff Vedachalam on behalf of himself and proposed Nationwide Class B)**

19        85.    Plaintiffs hereby incorporate by reference the allegations contained in all

20   preceding paragraphs of this complaint.

21        86.    Plaintiff Vedachalam brings this claim on behalf of himself and proposed

22   Nationwide Class B.

23        87.    The class period for proposed Nationwide Class B is from February 14, 2000

24   through the date of judgment.

25        88.    The tax refund checks TCS required its employees to return to the company

26   represent the difference between the amount of the employees' earnings that was withheld for

27   taxes and the amount of taxes actually owed.  This amount was withheld from the gross wages

28   that the Defendants promised to pay Plaintiff Vedachalam and Nationwide Class B members.

1    Plaintiff Vedachalam and Nationwide Class B members, therefore, have the right to receive and

2    retain their federal and state income tax refund checks.

3        89.    By requiring that each class member sign over their state and federal income tax

4    refund check to Defendants, Defendants have intentionally taken dominion and control over

5    Plaintiff Vedachalam's and Nationwide Class B members' tax refund checks.

6        90.    Defendants' actions seriously interfere with Plaintiff Vedachalam's and proposed

7    Nationwide Class B members' rights to control and use their federal and state income tax refund

8    checks.

9        91.    Defendants' actions have caused Plaintiff Vedachalam and the proposed

10   Nationwide Class Members significant financial injury.  Defendants' alleged conversion of

11   Plaintiff Vedachalam's and proposed Nationwide Class B members' state and federal income tax

12   refund checks has deprived each class member of as much as thousands of dollars per year.

13       92.    Defendants' conduct as alleged above constitutes conversion, as articulated by the

14   Restatement (Second) of Torts, the laws of New York (Tata America's state of incorporation and

15   principal place of business), and, in the alternative, the laws of California.

16       93.    Plaintiff Vedachalam requests relief as provided in the Prayer for Relief below.

**THIRD CLAIM FOR RELIEF**
**UNJUST ENRICHMENT—NATIONWIDE CLASSES A AND B**
**(by Plaintiffs on behalf of themselves and Nationwide Classes A and B)**

19       94.    Plaintiffs hereby incorporate by reference the allegations contained in all

20   preceding paragraphs of this complaint.

21       95.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Classes they

22   respectively represent.

23       96.    By endorsing and sending their federal and state income tax refund checks to

24   Defendants and/or by being forced to pay to receive their W-2 tax forms, each proposed

25   Nationwide Class member conferred a substantial benefit upon Defendants each year, worth as

26   much as thousands of dollars per Class member.

27       97.    By requiring each member of the proposed Nationwide Class to sign tax refund

28   checks over to Defendants and submit the checks to them and/or requiring that each Class

1   member pay before receiving their W-2s, Defendants knew of and fully appreciated the benefit

2   they were receiving.

3         98.     It is inequitable for Defendants to retain tax refunds that rightfully belong to the

4   proposed Nationwide Class Members.

5         99.     By breaching their contracts with the Nationwide Class members in a way that

6   allowed TCS to retain funds that rightfully belonged to the class members, each proposed

7   Nationwide Class member has conferred a substantial benefit to the Defendants.

8        100.    By breaching their contracts with the Nationwide Class members in a way that

9   allowed TCS to retain funds that rightfully belonged to the class members, Defendants knew of

10  and fully appreciated the benefit they were receiving.

11       101.    It is inequitable for Defendants to retain the funds that rightfully belong to the

12  proposed Nationwide Class Members.

13       102.    Defendants' conduct as alleged above establishes a claim for unjust enrichment, as

14  articulated by the <u>Restatement (Third) of Restitution and Unjust Enrichment</u>, the laws of New

15  York (Tata America's state of incorporation and principal place of business) and, in the

16  alternative, the laws of California or Maryland.

17       103.    Plaintiffs request relief as provided in the Prayer for Relief below.

18                   **CAUSES OF ACTION UNDER OTHER STATES' LAWS**

19       104.    Formal discovery in this case has not yet begun, and Plaintiffs have not had access

20  to information that will allow them to know with certainty which State's (or States') law of

21  conversion, unjust enrichment, and contracts governs Defendants' conduct. Plaintiffs are

22  informed and believe that the conversion, unjust enrichment and contract law of New York and/or

23  California and/or Maryland shall govern here. To the extent that discovery reveals that another

24  State's law governs the conduct of Defendants' in this controversy, Plaintiffs allege causes of

25  action for conversion, unjust enrichment, and breach of contract under any State's law based on

26  the allegations that Defendants' conduct constituted conversion, unjust enrichment and breach of

27  contract as articulated by the Restatement (Second) of Torts, the Restatement (Third) of

28  Restitution and Unjust Enrichment, and the Restatement (Second) of Contracts. To the extent

1   that discovery reveals that another State's (or States') law of contract, conversion and unjust

2   enrichment governs, Plaintiffs will seek leave to amend to allege causes of action under such

3   State's (or States') law.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF CAL. LABOR CODE § 221
**(by Plaintiffs on behalf of themselves and proposed California Class A)**

6   105.    Plaintiffs hereby incorporate by reference the allegations contained in all

7   preceding paragraphs of this complaint.

8   106.    Plaintiffs bring this claim on behalf of themselves and proposed California

9   Class A.

10   107.    The class period for California Class A is from February 14, 2002 through the date

11   of the final disposition of this action.

12   108.    Pursuant to California Labor Code § 221, "It shall be unlawful for any employer to

13   collect or receive from an employee any part of wages theretofore paid by said employer to said

14   employee."

15   109.    Pursuant to California Labor Code § 1171.5(a),

> All protections, rights, and remedies available under state law,
> except any reinstatement remedy prohibited by federal law, are
> available to all individuals regardless of immigration status who
> have applied for employment, or who are or who have been
> employed, in this state.

19   110.    Defendants' conduct as alleged above constitutes a violation of California Labor

20   Code § 221, because by requiring Plaintiffs and proposed California Class members to sign over

21   their tax refunds and/or pay TCS to receive their W-2 forms, Defendants required Plaintiffs and

22   the proposed California Class A to return to Defendants a substantial part of the wages paid by

23   Defendants to them.

24   111.    Plaintiffs request relief as provided in the Prayer for Relief below.

25

26

27

28

1
2

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF CAL. WAGE ORDER NO. 4; CAL. LABOR CODE §§ 510, 1194**
**(by Plaintiff Beri on behalf of herself and proposed California Class B)**

3
4

112.    Plaintiff Beri hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

5
6

113.    The class period for California Class B is from anytime within the four years prior to the date of the filing of this Complaint through the date of the final disposition of this action.

7
8

114.    California law requires an employer, such as Defendant, to pay overtime compensation to all non-exempt employees.

9
10
11
12
13
14

115.    Plaintiff Beri and the California Class B members do not presently qualify, and have not at any time during the class period qualified, under any exemption from the requirement that their employer pay overtime compensation under California law because they spent more than one-half of their time performing non-exempt duties.  Therefore, Plaintiff Beri and California Class B members are entitled to be paid overtime compensation for all overtime hours worked.

15
16
17

116.    Throughout the class period, and continuing through the present, Plaintiff Beri and the California Class B members worked in excess of eight (8) hours in a workday and/or forty (40) hours in a workweek.

18
19
20

117.    During the class period, Defendants have misclassified Named Plaintiff Beri and the California Class B members as exempt from overtime pay entitlement and have failed and refused to pay to them overtime premium pay for their overtime hours worked.

21

118.    Plaintiff Beri requests relief as provided in the Prayer for Relief below.

22
23

**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF CAL. LABOR CODE §§ 201-203**
**(by Plaintiff Beri on behalf of herself and proposed California Class C)**

24
25

119.    Plaintiff Beri hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

26
27

120.    Plaintiff Beri brings this claim on behalf of herself and the proposed California Class C.

28

121.    The class period for California Class C is from February 14, 2002 through the date

1   of the final disposition of this action.

2       122.   Pursuant to California Labor Code § 201(a), "If an employer discharges an

3   employee, the wages earned and unpaid at the time of discharge are due and payable

4   immediately."

5       123.   Pursuant to California Labor Code § 202 (a),

6   
7        If an employee not having a written contract for a definite period
     quits his or her employment, his or her wages shall become due and

8        payable not later than 72 hours thereafter, unless the employee has
     given 72 hours previous notice of his or her intention to quit, in

9        which case the employee is entitled to his or her wages at the time
     of quitting.

10      124.   Pursuant to California Labor Code § 203,

11  
12       If an employer willfully fails to pay, without abatement or
     reduction, in accordance with Sections 201, 201.5, 202, and 205.5,

13       any wages of an employee who is discharged or who quits, the
     wages of the employee shall continue as a penalty from the due date

14       thereof at the same rate until paid or until an action therefor is
     commenced; but the wages shall not continue for more than 30

15       days.

16      125.   Pursuant to California Labor Code § 1171.5(a),

17       All protections, rights, and remedies available under state law,
     except any reinstatement remedy prohibited by federal law, are

18       available to all individuals regardless of immigration status who
     have applied for employment, or who are or who have been

19       employed, in this state.

20      126.   Defendants' conduct as alleged above constitutes a violation of California Labor

21  Code sections 201 through 203, because TCS failed to pay the entirety of dismissed class

22  members' wages owed to them within 72 hours of dismissal.

23      127.   Plaintiff Beri requests relief as provided in the Prayer for Relief below.

24  **SEVENTH CLAIM FOR RELIEF**
**VIOLATION OF CAL. LABOR CODE §§ 218.5, 227.3, and 201-203**

25  **(by Plaintiff Beri on behalf of herself and proposed California Class C)**

26      128.   Plaintiff Beri hereby incorporates by reference the allegations contained in all

27  preceding paragraphs of this complaint.

28      129.   This claim is brought on behalf of Plaintiff Beri and the California Class C.

130. Pursuant to California Labor Code § 227.3,

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.  The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.

131. Pursuant to California Labor Code § 218.5,

> In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.

132. Pursuant to California Labor Code § 1171.5(a),

> All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state.

133. Pursuant to California Labor Code § 201(a), "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

134. Pursuant to California Labor Code § 202 (a),

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

135. Pursuant to California Labor Code § 203,

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30

1    days.

2    136.    The conduct alleged in this complaint constitutes a violation of California Labor

3    Code §§ 201, 202, 203, 218.5, and 227.3, because Defendants' forfeiture of vested but unused

4    vacation pay, as alleged above, constitutes an unlawful "use-it-or-lose-it" vacation policy.  TCS

5    did not reimburse its terminated employees with the vacation time they had accrued.

6    137.    Named Plaintiff Beri requests relief as provided in the Prayer for Relief below.

7    **EIGHTH CLAIM FOR RELIEF**
     **VIOLATION OF CAL. LABOR CODE §§ 226, 1174**

8    **(by Plaintiffs on behalf of themselves and the proposed California Classes that they
     respectively represent)**

9

10   138.    Plaintiffs hereby incorporate by reference the allegations contained in all

11   preceding paragraphs of this complaint.

12   139.    Plaintiffs bring this claim on behalf of themselves and the proposed California

13   Employee Classes that they respectively represent.

14   140.    Pursuant to California Labor Code § 226(a),

15       Every employer shall, semimonthly or at the time of each payment
         of wages, furnish each of his or her employees, either as a
16       detachable part of the check, draft, or voucher paying the
         employee's wages, or separately when wages are paid by personal
17       check or cash, an accurate itemized statement in writing showing
         (1) gross wages earned, . . . (4) all deductions, provided that all
18       deductions made on written orders of the employee may be
         aggregated and shown as one item, (5) net wages earned, . . . .  The
19       deductions made from payments of wages shall be recorded in ink
         or other indelible form, properly dated, showing the month, day,
20       and year, and a copy of the statement or a record of the deductions
         shall be kept on file by the employer for at least three years at the
21       place of employment or at a central location within the State of
         California.
22

23   141.    California Labor Code § 226(e) provides that an employee suffering injury as a

24   result of a knowing and intentional failure by an employer to comply with Labor Code § 226(a) is

25   entitled to recover the greater of his or her actual damages or a penalty of $50 for the initial pay

26   period in which a violation occurs and $100 per employee for each violation in subsequent pay

27   period (up to a maximum of $4,000), in addition to attorneys' fees and costs.

28

1    142.    Pursuant to California Labor Code § 1174(d), employers shall keep

2
at a central location in the state or at the plants or establishments at
3
which employees are employed, payroll records showing the hours
worked daily by and the wages paid to, and the number of piece-
4
rate units earned by and any applicable piece rate paid to,
employees employed at the respective plants or establishments.

5    143.    Pursuant to California Labor Code § 1171.5(a),

6
All protections, rights, and remedies available under state law,
7
except any reinstatement remedy prohibited by federal law, are
available to all individuals regardless of immigration status who
8
have applied for employment, or who are or who have been
employed, in this state.

9    144.    The conduct alleged in this complaint constitutes a violation of California Labor

10    Code §§ 226 and 1174, as Defendants knowingly and intentionally failed to provide timely,

11    accurate, itemized wage statements to Plaintiffs and the proposed California Class Members.

12    Defendants routinely changed the number of tax exemptions without first obtaining the consent

13    and approval of the Plaintiffs and the California Class members. The wage statements Defendants

14    provided to the class members did not accurately reflect the employees' gross or net wages, as

15    they failed to discount the employees' tax refund checks that Defendants required the employees

16    to return to the company.  In addition, the wage statements Defendants provided to Class B

17    members did not accurately reflect the total number of hours worked.

18    145.    Plaintiffs request relief as provided in the Prayer for Relief below.

19    **NINTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200**
20    **(by Plaintiffs on behalf of themselves and the proposed California Classes that they**
**respectively represent)**

21    146.    Plaintiffs hereby incorporate by reference the allegations contained in all

22    preceding paragraphs of this complaint.

23    147.    Plaintiffs bring this claim on behalf of themselves and the proposed California

24    Employee Classes that they respectively represent.

25    148.    Defendants' violations of California Labor Code §§ 201-203, 221, 226, 227.3, 510,

26    1174, and 1194, as alleged above, constitute unlawful business acts or practices.

27    149.    Defendants' failure to pay wages as alleged herein to Plaintiffs and members of the

28    proposed classes under California Labor Code, and Defendants' failure to keep proper records, as

1  alleged herein, constitute unlawful activities prohibited by Business and Professions Code

2  §§ 17200, *et seq.*

3        150.    The actions of Defendants in failing to pay Plaintiffs and members of the proposed

4  classes in a lawful manner and in collecting part of their wages previously paid to them, as

5  alleged herein, constitute false, unfair, fraudulent and deceptive business practice, within the

6  meaning of Business and Professions Code §§ 17200, *et seq.*

7        151.    Defendants' conduct as alleged herein has damaged Plaintiffs and proposed Class

8  members by wrongfully failing to pay them all wages due upon termination of employment, and

9  by failing to provide itemized wage statements. Such conduct was substantially injurious to

10  Plaintiffs and the proposed Classes.

11        152.    Under the circumstances alleged herein, it would be inequitable and result in a

12  miscarriage of justice for Defendants to continue to retain the property of Plaintiffs and proposed

13  Class members, entitling Plaintiffs and proposed Class members to restitution of the unfair

14  benefits obtained and disgorgement of Defendants' ill-gotten gains.

15        153.    As a result of Defendants' unlawful business acts or practices, Defendants have

16  reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiffs and the

17  proposed California Classes.

18        154.    Defendants' improper, unfair and unlawful business practices and acts alleged

19  herein constitute a continuing threat to Plaintiffs, Class members, and members of the public in

20  that, unless restrained, Defendants may continue to violate California Labor law. Pursuant to

21  Business and Professions Code § 17203, Plaintiffs, on behalf of themselves, the California

22  Classes, and the general public, seek a permanent injunction requiring Defendants to cease its

23  unlawful and unfair business practices and acts.

24        155.    As a direct and proximate result of the aforementioned practices and acts,

25  Defendants have been unjustly enriched, and Plaintiffs, the proposed California Classes, and the

26  general public are entitled to restitution in an amount to be determined at trial.

27        156.    Plaintiffs request relief as provided in the Prayer for Relief below.

28

**RELIEF ALLEGATIONS**

157.    Plaintiffs and the classes they seek to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiffs and the classes they seek to represent are now suffering and will continue to suffer irreparable injury from TCS's illegal acts.

158.    The actions on the part of Defendant have caused and continue to cause Plaintiffs and the proposed classes substantial losses in earnings, other compensation, and other employment benefits, in an amount to be determined according to proof.

159.    Defendants acted or failed to act as herein alleged with malice or reckless indifference to the protected rights of Plaintiffs and members of the proposed classes.  Plaintiffs and members of the proposed classes are thus entitled to recover punitive damages in an amount to be determined according to proof.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and the proposed classes, pray for relief as follows:

160.    Certification of the case as a class action on behalf of the proposed Plaintiff classes, designation of Plaintiffs as representatives of the applicable classes as articulated above, and designation of their counsel of record as Class Counsel;

161.    Damages and equitable relief for all harm Plaintiffs and the classes have sustained as a result of Defendants' conduct, according to proof;

162.    Exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and to deter future unlawful conduct;

163.    A preliminary and permanent injunction against Defendants and their directors, officers, owners, agents, successors, employees, and representatives—and any and all persons acting in concert with them—from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

164.    A declaratory judgment that the practices complained of in this complaint are

1    unlawful and violate applicable federal and state law;

2          165.    Fees and costs incurred, including reasonable attorneys' fees, to the extent

3    allowable by law;

4          166.    Pre-judgment and post-judgment interest, as provided by law; and

5          167.    Such other and further legal and equitable relief as this Court deems necessary,

6    just, and proper.

     Dated:  June 5, 2006                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

7

8                                            By:_____ /s/ Steven M. Tindall_____

9                                                       Steven M. Tindall

10                                           James M. Finberg (State Bar No. 114850)
                                             Steven M. Tindall (State Bar No. 187862)
11                                           Peter E. Leckman (State Bar No. 235721)
                                             LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
12                                           Embarcadero Center West
                                             275 Battery Street, 30th Floor
13                                           San Francisco, CA  94111-3339
                                             Telephone:  (415) 956-1000
14                                           Facsimile:  (415) 956-1008

15                                           *Counsel for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  June 5, 2006

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By: _____ _/s/ Steven M. Tindall_
                 Steven M. Tindall

James M. Finberg (State Bar No. 114850)
Steven M. Tindall (State Bar No. 187862)
Peter E. Leckman (State Bar No. 235721)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

_Counsel for Plaintiffs_

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. C 06-0963 (VRW)