IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GOPI VEDACHALAM and KANGANA BERI, on behalf of themselves and all others similarly situated,

        Plaintiffs,

    v

TATA AMERICA INTERNATIONAL CORPORATION, a New York corporation; TATA CONSULTANCY SERVICES, LTD, an Indian corporation; and TATA SONS, LTD, an Indian corporation,

        Defendants.

No C 06-0963 VRW

ORDER

Plaintiffs allege various California wage and hour violations in this diversity-based class action, along with collateral claims. Defendants assert that Gopi Vedachalam, one of the plaintiffs, executed various agreements rendering his claims subject to arbitration. Defendants, therefore, move to compel arbitration under section 206 of the Federal Arbitration Act (FAA), 9 USC §§ 201-208, and to dismiss or stay the case pending completion of arbitration of Vedachalam's claims. Arbitrability of Vedachalam's claims presumably would render him an inadequate class

representative. Having reviewed the parties' submissions, for the reasons stated herein the court DENIES defendants' motion.

I

A

Tata America International Corporation, Tata Consultancy Services, Ltd and Tata Sons, Ltd are named as defendants in this action. Tata Consultancy Services, Ltd (TCS) is an information-technology-outsourcing and consulting company incorporated in India. Doc #10 at 3-4. Tata Sons, Ltd is the parent company of TCS and is also incorporated in India. Id. Tata America International Corporation is a United States subsidiary of TCS. Id. These entities are referred to collectively as "defendants."

Gopi Vedachalam is one of two plaintiffs in the suit. Vedachalam is a citizen of India who has worked for one or more of the defendant entities as a project manager in the United States since April 2000 under an L-1 visa. Doc #24 at 3. The L-1 visa allows multinational companies to transfer foreign employees to work for parent, subsidiary, affiliate or branch offices in the United States. Id. From 2000 to 2003, Vedachalam worked in Hayward, California. Id. Since 2003, Vedachalam has worked in Woodland Hills, California. Id. Vedachalam's complaint pleads claims arising from his deputation to the United States.

Defendants move to compel arbitration in Mumbai, India based primarily on two documents: a 1997 agreement between Vedachalam, his father and TCS and a letter drafted by TCS dated September 24, 2000 that Vedachalam signed. A description of these and related documents, in chronological order, follows.

2

The first document is an untitled form agreement. Doc # 11 Ex B. Blanks for day and month are filled in with "twentieth" and "February," respectively, by hand. The blank on the form for year remains blank and no other markings on the form indicate the year; the parties agree, however, that the agreement was made in 1997. Doc #10 at 4, Doc #31 at 1.

The document has no title and the parties disagree about what to call it. Defendants refer to this document as a "service agreement." Doc #10 at 4. Vedachalam refers to this document as a "training agreement." Doc #31 at 4. Because the parties disagree and there is no compelling extrinsic evidence in the record supporting either label, the court will refer to this document as "the 1997 agreement."

The 1997 agreement lists three parties, the first of which is printed on the form, the other two filled in by hand: "Tata Sons Limited acting through its Division Tata Consultancy Services;" V Gopi (Vedachalam), "hereinafter referred to as Probationer" (although the terms "Trainee" and "Probationer" are used throughout the contract about equally); and A Vedachalam (Vedachalam's father), described as "The Surety/Sureties." Doc #11 Ex B at 1.

The agreement recites that "the training is of a duration of [blank] months and is liable to be extended by a further duration based on the performance of the Trainee during the Training Program * * *." The word "one" is handwritten in the blank before the printed word "months." Id. The 1997 agreement recites, <u>inter alia</u>, that the subject training "involves considerable expenditure" and "sustantially [sic] improves the

3

Trainee's professional standing and it has been imparted by the Division at considerable expenditure as an investment." Id at 2.

Vedachalam's part of the bargain was "to serve the Division * * * for a period of [blank] years  * * * and he/she agrees not to take employment with any other person, firm or company during such period." The word "two" is handwritten before "years." Id.  Id at page 2.

"By way of guarantee" of Vedachalam's performance, the 1997 agreement requires a refundable deposit of 50,000 rupees for two years and Vedachalam's father to "stand as Surety." Id at pages 2-3. "In the event of a breach of any of the terms and conditions of this agreement of which the Division shall be the sole judge, the said deposit amount with interest shall be forfeited." Id. In addition, Vedachalam's father, as surety, "in the event of [Vedachalam's] failure/neglect to fulfill any of the terms of this undertaking or of any other form of breach of the same he/she will be liable to pay the Division Rs 50,000 as compensation with interest thereon at nine percent OR [Vedachalam's father] shall be liable jointly and severally with the Trainee to pay the same to the Division." Id at 3.

The provision of the 1997 agreement of greatest interest to the parties in connection with the instant motion provides that "any dispute or disagreement over the interpretation of any of the terms herein above contained or any claim of liability of any part including the surety/sureties * * * shall be referred to a person to be nominated by the division" which "shall be deemed a submission to arbitration." Id.  The two-year period of employment
\\

**4**

required by the agreement was completed over a year before Vedachalam was deputed to the United States. Doc #30 at 14.

The copy of the 1997 agreement attached to defendants' moving papers bears the signatures of Vedachalam and his father, but the signature blank for TCS is empty. Doc #11 Ex B at 5.

The next document is a "Service Agreement Addendum" (the Addendum) signed by Vedachalam and his father. Doc #11 Ex D. The agreement itself is not dated although the text "12-4-2000" is written near the top of the form. Id at 1. Defendants' declaration says this document was "executed on or about April 12, 2000." Doc #11 at 3. The Addendum recites, <u>inter alia</u>, that "the Employee has executed a Service Agreement that, among other things, contains service commitments by the Employee" and that "the Employee may require [sic] to embark on an overseas deputation" and that "TCS and the Employee wish to clarify the service commitments of the Employee that will derive from this overseas deputation." Doc #11 Ex D at 1. Paragraph two of the Addendum provides that Vedachalam "agrees to return to India after completion of every overseas deputation * * * for a minimum period of six months." Id at 2.

The addendum further provides that "in the event of the Employee's breach of the commitment specified in Paragraph two, above, the matter will proceed to arbitration" and, moreover, specified, as alternatives, two arbitrators: Mr Navroze H Seerval and Mr Keki Mehta, both of Mumbai, India. Id. The Addendum also contained the following provision that seemed to tie into the 1997 agreement or one similar to it:

> when an employee proceeds on an overseas
> deputation for a TCS assignment at one of its
> client companies, then the Employee's remaining

5

```
                obligations under the Service Agreement will be
                as follows:

                The Employee will be obligated to serve TCS for
                any time remaining under the Employee's
                two/three year service commitment.  If committed
                in the service agreement then such commitment
                will run concurrently with any additional
                service commitment incurred by the Employee as a
                result of this overseas deputation, and the
                Employee remains subject to his/her Rs 50,000
                obligation with respect to this commitment.
```

Id at 3.

The next document, also apparently signed by Vedachalam on April 12, 2000, is a "Non Immigration Agreement." Doc #11 Ex F. Like the Service Agreement Addendum, the "Non Immigration Agreement" itself is not dated. A handwritten note of the date "12-4-2000" is written near the top of the form. Id at 1. Defendants' declaration states that this document was "executed on or about April 12, 2000." Doc #11 at 3. This agreement provides that Vedachalam "shall not under any circumstances attempt to apply for permanent immigration or any other non-immigrant status while * * * on work experience/assignment" and "shall not accept employment or assignment with any other [TCS] client, who has been introduced to me during the deputation or employment by any competitor of [TCS] or any other employer in USA * * *" during the deputation. The agreement specified liquidated damages of $30,000 for breach by Vedachalam, reimbursement of "not exceeding Rs 5,00,000 [sic] towards allowances being paid from the day of deputation along with airfare and salary" and payment of "all costs and expenses of litigation and reasonable Attorney's fees up to 30% of the amount of Judgement [sic]." Id at 1.

\\

Vedachalam also signed a "Deputation Agreement." Doc #11 ex E at 1. Filled-in blanks in the deputation agreement indicate the date of agreement to be April 24, 2000 although a handwritten note bears the date "12-4-2000," the same as the two documents just discussed. Defendant's declaration states that the deputation agreement was "executed on or about April 24, 2000." Doc #11 at 3. The deputation agreement provided that the "Employee does agree and commit, to complete his/her Deputation in the Country of deputation and to return to India at the conclusion of the Deputation." Id. The "Employee expressly acknowledges that, as a salaried and exempt employee, he/she may be required to work long hours without additional compensation." Id at 5. Paragraph 9.1 provides, in part, that the parties have:

> the understanding and expectation that the Deputation (and all assignments of the Deputation) will be successfully completed by the Employee to the Employer's satisfaction. The Employee acknowledges and agrees that by leaving any assignment on this Deputation before its completion would automatically result in breach of the terms and conditions of the agreement.

Id at 6. Regarding dispute resolution, paragraph 9.2(a) provides:

> any claim or controversy arising out of the Employee's breach as specified in paragraph 9.1, above, will be settled by litigation in courts of competent jurisdiction in the place of deputation, or India at the option fo [sic] the employer

Id. The deputation agreement, like the non-immigration agreement, also provides for liquidated damages:

> In connection with the calculation of damages resulting from the Employee's breach as specified in Paragraph 9.1 * * * the parties have agreed to an amount equivalent to that of US $30,000 as liquidated and agreed upon

7

>     damages, and not as a penalty, in the event of
>     any such breach, together with pre-judgment
>     interest at the prevailing rate.

Id at 7. Regarding arbitration, paragraph 9.2(c) contains the following rather convoluted provision:

>     The parties acknowledge that if they have
>     entered into a Service Agreement and a Service
>     Agreement Addendum (collectively referenced to
>     [sic] as "Service Agreements") in India which if
>     it contains contractual commitment by the
>     Employee (i) to serve the Employer for a minimum
>     period of two/three years from the date of
>     joining the Employer, and (ii) to return to
>     India after this Deputation, and to continue to
>     work for the Employer in India for the period
>     specified in the Service Agreements, then the
>     parties further acknowledge that the Service
>     Agreements contain a mechanism for an
>     arbitration in India (pursuant to Indian law) in
>     the event the Employee breaches either of these
>     commitments.

Id.

Also in the record is a one-paragraph form letter drafted by TCS. Doc #11 Ex C. Vedachalam's name, address, telephone and signature and the date —— September 24, 2000 —— are handwritten on the letter. The letter provides:

>     In the context of [TCS] deputing me abroad and
>     any dispute/s arising thereof, I hereby
>     authorize Mr Navroze H Seervai * * * as the Sole
>     Arbitrator and in the event that he is unable to
>     serve as an arbitrator then Mr Keki Mehta * * *
>     being appointed as the Sole Arbitrator to hear
>     and resolve the said dispute/s.

Id. These are the same arbitrators specified in the Service Agreement Addendum.

On May 4, 2001, Vedachalam signed a second deputation agreement containing provisions substantially the same as those noted above with one important exception: paragraph 9.2(a) provides that "any claim or controversy arising out of the employee's breach

8

as specified in paragraph 9.1, above, [failure to complete the deputation] will be settled by litigation in courts of competent jurisdiction in the state of Maryland, court [sic] of Montgomery." Doc #11 Ex G at 4.  The second deputation agreement contained a $30,000 liquidated damages provision like the first one.  It also provided that the agreement "shall be governed by the laws of the state of Maryland, without giving effect to its internal principles of conflicts of law."  Id at 5.

B

Vedachalam filed his complaint initiating this action on February 14, 2006.  Doc # 1.  He filed a first amended complaint on June 5, 2006.  Doc #24.  The amended complaint contains allegations related to both Vedachalam and co-plaintiff Kangana Beri.  Because defendants move to compel arbitration only of claims made by Vedachalam, facts unrelated to Vedachalam are beyond the scope of this order.

Vedachalam alleges that defendants, through a visa petition signed under penalty of perjury, represented that Vedachalam would receive a salary of $74,000 per year during his deputation in the United States, but that he did not receive this amount of salary in 2004 or 2005 and is not currently receiving this amount of annual salary.  Doc #24 at ¶ 30.  In addition, Vedachalam alleges that defendants forced him to endorse his tax refund check over to TCS by stamping the back of the check "[p]ay to the order of * * * Tata Consultancy Services."  Doc #24 at ¶ 42.  Vedachalam further alleges that defendants thus retained state and local tax refunds intended for him totaling nearly $25,000.  Doc #24 at ¶ 46.

9

Vedachalam is a plaintiff in six of the nine claims alleged in the complaint:  (1) breach of contract for failing to pay the salary promised in the Deputation Terms Agreement; (2) conversion of tax refunds; (3) unjust enrichment through retaining tax refunds; (4) violation of California Labor Code § 221 (which provides that it "shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid"); (8) violation of California Labor Code § 226 (which requires that the employer provide accurate statements showing gross wages and deductions); and (9) "false, unfair, fraudulent and deceptive business practice within the meaning of [California] Business and Professions Code §§ 17200" necessitating injunctive relief on behalf of themselves and the public.

On May 4, 2006, defendants filed the instant motion to compel arbitration.  Doc #10.

II

To compel arbitration, defendants must identify a valid agreement to arbitrate and establish that the agreement to arbitrate covers the claims asserted by Vedachalam.  Unless both conditions are present, the court may not compel arbitration.

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention) defines conditions that must be met before the court may compel arbitration.  The Convention "shall be enforced in United States."  9 USC § 201.  Article II, paragraph one of the Convention provides that:

> Each contracting state shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any

10

> differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

The court may compel arbitration only if there is "an agreement in writing" and this agreement "undertake[s] to submit [the dispute] to arbitration." The two requirements listed above are not the only requirements imposed by the Convention; it is unnecessary, however, for the court to address other requirements at this time.

Under article II of the Convention, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" <u>Mitsubishi Motors Corp v Soler Chrysler-Plymouth, Inc</u>, 473 US 614, 626 (1985), quoting <u>Moses H Cone Memorial Hospital v Mercury Construction Corp</u>, 460 US 1, 24 (1983). In so doing, the court applies the federal common law of contracts. "In applying federal contract law, we are guided by general principles of contract law and by the Restatement." <u>First Interstate Bank of Idaho v Small Business Administration</u>, 868 F2d 340, 343 (9th Cir 1989).

### III

Defendants move to compel arbitration based on the 1997 agreement and the form letter designating arbitrators signed by Vedachalam on September 24, 2000. Neither document meets both requirements stated above. The scope of the 1997 agreement does not encompass Vedachalam's claims. The 2000 letter lacks consideration

11

and is unenforceable. Because neither document clearly establishes that the parties jointly undertook to submit the claims stated in Vedachalam's complaint to arbitration, the criteria required for compelling arbitration are absent.

Of note, although the documentary record of the legal relationship between Vedachalam and the defendant entities suggests inequality in the parties' bargaining power, Vedachalam does not contend in opposing the motion that the agreements he signed were unconscionable and circumstances in India might be that what appears unfair to American eyes is not out of line. In any event, the court has not considered unconscionability and related concepts in adjudicating this motion.

### A

The 1997 agreement appears to have expired by its own terms at the end of two years, at which point Vedachalam had presumably completed his minimum service to the defendants and thus discharged his debt or obligation for the one month of training he received. On or about February 20, 1999, therefore, Vedachalam was no longer obligated by this document to work for defendants, his father was no longer required to serve as a surety and his father was entitled to a refund of his 50,000 rupees.

Defendants argue, however, that while some provisions expired or were discharged, the arbitration agreement in paragraph four continued to govern the relationship between the parties. At oral argument, defendants' counsel contended that because each subsequent agreement "supplement[ed] and [did] not supersede any other written agreement," they somehow kept alive or revived a

**12**

1 document that had expired by its own terms more than a year before
2 the earliest of these subsequent agreements came into being.
3 Defendants furthermore seek to avoid paragraph four's plainly-worded
4 scope –– to arbitrate disputes over the meaning of the 1997
5 agreement –– by pointing to the catch-all language after "or":  "In
6 the event of any dipute [sic] or disagreement over the
7 interpretation of any of the terms herein above contained or any
8 claim of liability of any part * * *."  The court is not persuaded.
9      Article II, section one of the Convention requires the
10 court to recognize an agreement "under which the parties undertake
11 to submit to arbitration all or any differences * * * in respect of
12 a defined legal relationship."  Accordingly, the court must
13 determine whether the claims stated in the complaint are within the
14 scope of the legal relationship defined in the 1997 training
15 agreement.
16      The relationship defined by the 1997 training agreement is
17 primarily that of trainer and trainee.  Although the 1997 agreement
18 is untitled, the terms of the agreement relate to a training period
19 and a related right to exclusive employment and surety given in
20 exchange for training.  The agreement refers to Vedachalam
21 repeatedly as "Trainee."  Doc #11 ex B at 3.  The agreement also
22 notes that the duration of the training period may be extended based
23 on Vedachalam's performance during the "training programme."
24 Accordingly, the 1997 training agreement primarily defines a legal
25 relationship between trainee and trainer, not necessarily a
26 continuing or regular employment relationship.
27      Vedachalam's claims in his suit are not "in respect of"
28 the training relationship as required by the Convention.  Defendants

13

argue that the training agreement demonstrates that Vedachalam "agreed to arbitrate 'any claim of liability' concerning his employment with TCS." Doc #10 at 9. But Vedachalam's claims arise from his deputation in the United States, not the training period or the training program. As Vedachalam points out, "[t]here is no dispute that Mr Vedachalam received his training and did not work for any other employer within two years of the date of joining the division." Doc #31 at 10. In a more general sense, it is simply too much of a stretch to hold that by entering into an agreement that was entirely about a defined training/probationary period of employment for a new employee, the parties agreed to anything concerning a deputation to the United States that may not have been within the contemplation of any party in 1997.

The 1997 training agreement does not provide a basis for compelling arbitration of Vedachalam's claims before this court.

B

The letter dated September 24, 2000 similarly does not support defendant's attempt to compel arbitration.

Under federal contract law, an agreement without consideration is generally unenforceable. "In applying federal contract law, we are guided by general principles of contract law and by the Restatement." First Interstate Bank of Idaho v Small Business Admin, 868 F2d 340, 343 (9th Cir 1989). Formation of a contract requires "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17 (1981).

\\

**14**

The 2000 letter is not an enforceable agreement to arbitrate because it lacks consideration; not only does it not bind TCS to arbitrate disputes, it offers no other corresponding benefit for Vedachalam. Defendants nonetheless argue that the 2000 letter "demonstrate[s] the intent of the parties to arbitrate disputes." Doc #10 at 8. But the 2000 letter uses a singular pronoun —— "I hereby authorize" —— indicating that Vedachalam alone assented to arbitration. In addition, because TCS drafted the language in question, its failure to include itself in the arbitration provision is especially significant. Doc #33 at 5. It is, moreover, consistent with other provisions in the documents before the court that unilaterally bind Vedachalam, such as paragraphs 9.2(a) and (b) of the deputation agreement (Doc #11, Ex E), which provide, in the event of breach of the agreement by the employee, for liquidated damages to be paid by Vedachalam and for the matter to be resolved by litigation "in the place of deputation, or India at the option of the employer." The unmistakable import of these documents, taken together with defendants' stance before this court, is that defendants would have one set of rules apply to Vedachalam and another set of rules apply to them in the event of legal disputes. This kind of contractual arrangement simply does not manifest the mutual assent to arbitrate the instant disputes that the law requires.

IV

To repeat the above-cited quotation from Justice Blackmun's opinion in <u>Mitsubishi Motors Corporation</u>, "the first task of a court asked to compel arbitration of a dispute is to determine

15

whether the parties agreed to arbitrate that dispute." 473 US at 626. Because the record does not support a finding that the parties agreed to arbitrate the claims stated in this suit, the court DENIES defendants' motion to compel arbitration.

The parties will appear for a case management conference on March 27, 2007 at 9:00 am. The parties' joint case management conference statement must be filed with the court no later than one week before the conference.

IT IS SO ORDERED.

**VAUGHN R WALKER**
**United States District Chief Judge**