1
2
3
4
5
6      IN THE UNITED STATES DISTRICT COURT
7      FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9
GOPI VEDACHALAM and KANGANA
10   BERI,on behalf of themselves
and all others similarly
11   situated,

12              Plaintiffs,
                                         No C 06-0963 VRW
13        v
                                              ORDER
14   TATA AMERICA INTERNATIONAL
CORPORATION, a New York
15   corporation; TATA CONSULTANCY
SERVICES, LTD, an Indian
16   corporation; and TATA SONS, LTD,
an Indian corporation,
17
              Defendants.
18   _____/

19

20        In its order filed March 13, 2007 (Doc #55), the court

21   denied defendants' motion to compel arbitration of the claims

22   asserted in this case by plaintiff Gopi Vedachalam.  The court now

23   addresses defendants' motion to compel arbitration of the claims

24   brought by Vedachalam's co-plaintiff Kangana Beri.  For the reasons

25   stated herein, the court DENIES defendants' motion to compel

26   arbitration of Beri's claims.

27        The first amended complaint (Doc # 24) pleads diversity

28   (28 USC § 1332) as the basis for federal jurisdiction and describes

two classes of plaintiffs. Plaintiffs Vedachalam and Beri both describe themselves as members of a "Nationwide Class A" consisting of individuals employed by defendant TCS who were promised more pay upon deputation to the United States than they actually received and of a "California Class A" consisting of TCS employees who were forced to pay back to defendants, in violation of California Labor Code provisions, wages they had previously earned. Id ¶¶ 6-10.

Plaintiff Beri seeks also to represent a class described as "California Class B" consisting of TCS employees working as technical support workers who were allegedly misclassified as exempt from overtime pay and, presumably, directed to work overtime hours without additional compensation. Id ¶ 12. She also seeks to represent a "California Class C" consisting of discharged TCS employees who were allegedly made to forfeit unused vacation time without compensation in violation of California law.

Defendants move to compel arbitration under 9 USC § 206 and to dismiss or stay the case pending completion of arbitration of Beri's claims. Doc # 74. Because the court concludes that the arbitration provision on which defendants rely applies only to two aspects of the parties' agreement, not here at issue, the claims at bar are not subject to arbitration. This being the case, it is unnecessary to reach certain other contentions that Beri raises to defeat arbitrability, namely: that the agreement is unconscionable; that claims under Business & Professions Code § 17200 cannot be arbitrated; and that the documents are legally insufficient under the convention because they lack signatures by TCS.

\\

2

Tata America International Corporation, Tata Consultancy Services, Ltd and Tata Sons, Ltd are named as defendants in this action. Tata Consultancy Services, Ltd (TCS) is an information-technology outsourcing and consulting company incorporated in India. Doc #24 ¶¶ 15-17. Tata Sons, Ltd is the parent company of TCS and is also incorporated in India. Id. Tata America International Corporation is a United States subsidiary of TCS. Id. These entities are referred to collectively as "defendants."

Plaintiff Kangana Beri is a citizen of India who worked in the United States for TCS as an assistant systems engineer from April 2003 to September 2004. Doc #24 ¶ 14. She now resides in California under an H-4 visa, a dependant visa allowing spouses of those legally working in the United States on H-1B visas to reside in the United States. Id. Beri worked for TCS in India from 2001 until her deputation to the United States in April 2003. The complaint pleads claims arising from alleged actions by TCS after Beri's deputation to the United States.

As with Vedachalam's claims, defendants move to compel arbitration in Mumbai, India based on various documents of different dates. With regard to Beri, defendants submit: a letter offering Beri employment with TCS, a "service agreement" Beri signed upon joining TCS in 2001, a "service agreement addendum," a "deputation agreement" and a "deputation terms agreement." Declaration of Kevin Smith (Doc # 75), Exs F, B, C, D, E. The documents appear, in general, to be more evolved or detailed iterations of the documents in Vedachalam's file that were the subject of the court's scrutiny in connection with the earlier

motion to compel.  Doc # 55.  A description of the documents relevant to this motion follows, in chronological order.

A

The first document is a letter to Beri dated August 7, 2000 signed on behalf of TCS by "P A Vandrevala, Executive Vice President."  Doc #75, Ex F.  The letter offers Beri a position as "Assistant Systems Engineer —— Trainee —— 12 months" at a monthly salary of 11,000 rupees plus benefits.  The bulk of the letter consists of a lengthy paragraph about TCS's training program, excerpted as follows:

> On joining TCS, you will be given the benefit of formal training at any of our offices.  The training forms a critical part of your employment with TCS and is an ongoing process.  TCS would continue to make investment on [sic] training and continuing education of its professionals. * * *  We would request that the training be taken very seriously to enable you to be successful.

The August 7 letter encloses a two-page "Annexure" listing "Benefits" and "Terms of Service."  There is no mention of arbitration or dispute resolution of any kind in the letter or the annexure.  The annexure, however, in part states:

> Service Agreement.  On the date of your joining, you will be required to handover a Service Agreement to serve TCS for three years, including your initial training period. The agreement seeks your reciprocation to TCS' investment in your training, and its commitment to your professional development.  A breach of this undertaking would involve payment of Rs. 50,000/- towards damages to TCS. Accordingly, the Agreement requires a Surety from an income tax assessee who can provide a guarantee against this breach and acceptable to TCS.

Id.

\\

The next document is a form agreement bearing the heading "ARTICLES OF AGREEENT [sic]." Doc # 75 Ex B. Blanks for day and month are filled in with "Ninth" and "April," respectively, by hand. For the year, "two thousand" is printed while "and one" is filled in by hand. Defendants refer to this document as a "service agreement." Doc # 74, passim. Beri's attorneys refer to this document as a "training agreement," pointing out that Beri is referred to throughout the document as "Trainee" and the document contains references to "the training" and the "Training Programme." Doc #84, passim. Indeed, Beri's name is filled in by hand before the printed parenthetical in the document text stating "hereinafter referred to as 'The Trainee.'" Doc #75 Ex B at 1. Defendants, emphasize that the "Service Agreement" referred to in the annexure requires Beri "to serve TCS for three years, including your initial training period" and that Beri would be required to "handover" such an agreement on her first day. Id Ex F. Accordingly, the court will refer to the April 9, 2001 agreement as the service agreement.

The service agreement lists three parties, the first of which is printed on the form, the other two filled in by hand: "Tata Sons Limited acting through its Division Tata Consultancy Services;" Kangana Beri; and Virendar Beri, described as "The Surety/Sureties." Id.

The agreement recites that "the training is of a duration of [blank] months and is liable to be extended by a further duration based on the performance of the Trainee during the Training Program * * *." "12 (Twelve)" is handwritten in the blank. Id. The service agreement recites, inter alia, that the "above mentioned training" "involves considerable expenditure" and

5

"substantially improves the Trainee's professional standing and it has been imparted by the Division at considerable expenditure as an investment," and that "the Division expects a commitment (elaborated below) from the employee to recover its expenditure or seek a penalty for non-fulfilment of the same." Id at 1-2.

Beri undertook "to serve the Division * * * for a period of [blank] years * * * and he/she agrees not to take employment with any other person, firm or company during such period." The word "three" is handwritten before "years." Id. Id at page 2.

"By way of guarantee" of Beri's performance, the service agreement required one of two alternatives: (1) giving a refundable deposit of 50,000 rupees for two years, subject to forfeiture "in the event of a breach of any of the terms and conditions of this agreement of which the Division shall be the sole judge," and (2) providing the names of "near relatives" to "stand as Surety" to be liable to pay 50,000 rupees in the event of "failure/neglect to fulfill any of the terms of this undertaking or of any other form of breach." Id at pages 3-4. The paragraph containing the former choice (the refundable deposit) is stricken out and the latter contains the name, address and occupation of Virendar Beri as surety.

The provision in the service agreement upon which defendants rely most heavily in bringing the instant motion provided: "[i]n the event of any dispute or disagreement over the interpretation of any of the terms hereinabove contained or any claim of liability of any part including the Surety/Sureties * * * shall be referred to a person to be nominated by the Division whose decision shall be final and binding upon the parties hereto," which

United States District Court

For the Northern District of California

reference "shall be deemed a submission to arbitration." Id at 4. "The venue of arbitration shall be Mumbai." Id. The same paragraph also stated "[s]ubject hereto the Court in Mumbai shall have exclusive jurisdiction to the exclusion of all other courts."

Finally, the service agreement provided that if the trainee "leaves/resigns," she must pay not only liquidated damages of 50,000 rupees but also "three months' calendar notice or salary in lieu thereof." Id.

The copy of the service agreement attached to defendants' moving papers bears the signatures of Beri and her father Virendar Beri acting as her surety, but the signature blank for TCS is empty. Id at 6.

On April 4, 2003, just five days short of the two-year mark for Beri's three-year service agreement, Beri signed three documents presented to her by TCS in preparation for her deputation to the United States.

The first such document was a "Service Agreement Addendum" (the addendum) signed by Beri and a different surety, Rashim Anand. Doc #75 Ex C. The addendum recited, <u>inter alia</u>, that "the Employee has executed a Service Agreement that, among other things, contains service commitments by the Employee" and that "the Employee may require [sic] to embark on an overseas deputation to the United States" and that "the Employee has agreed voluntarily to accept and embark upon the overseas deputation." Id at 1.

Paragraph one of the addendum provided that Beri "agrees to return to India after completion of every overseas deputation provided the deputation was in excess of 30 days and to serve TCS in India for a minimum period of six months." Id. It further provided

**7**

United States District Court

For the Northern District of California

that "in the event of the Employee's breach of the commitment specified in paragraph 1 [to return to India], above, the matter will proceed to arbitration in accordance with the provisions of the Indian Arbitration and Conciliation Act of 1996" and, moreover, specified two alternative arbitrators: Navroze H Seerval and Keki Mehta, both of Mumbai, India. Id. A subparagraph provided that TCS — but not the employee — could seek an award of damages from the arbitrator if the employee should fail to complete the required term of service in India. Id at 2, ¶ C. A further paragraph stated TCS's sole remedy, if the employee's breach occurred during the deputation, to be that specified in the deputation agreement (described infra). Id at 3.

The addendum also contained a provision addressing the circumstance present in Beri's case (but absent from Vedachalam's) that the period of service required under the service agreement had not yet been satisfied before the deputation began:

> when an employee proceeds on an overseas deputation for a TCS assignment at one of its client companies, then the Employee's remaining obligations under the Service Agreement will be as follows:
>
> A.    The Employee will be obligated to serve TCS for any time remaining under the prescribed period of the Employee's service commitment as specified in the Service Agreement. Any such remaining commitment will run concurrently with any additional service commitment incurred by the Employee as a result of the deputation to the United States and the Employee remains subject to his/her Rs 50,000 obligation with respect to this commitment. However, in the event that a breach of this service commitment also constitutes a breach of the Deputation Agreement that invokes the remedies and damages specified in the Deputation Agreement if the Employee leaves any assignment on the deputation before its conclusion, then TCS' sole remedy will be to proceed in accordance with the remedy specified in the Deputation Agreement.
>
> \\

> B. The Employee will remain obligated to give three
> months' notice of resignation, but there will be no
> remaining obligation for the payment of salary in lieu of
> notice in the event of the Employee's resignation. This
> continuing obligation to provide three months' notice of
> resignation will run concurrently with any additional
> service commitments by the Employee.

Id at 3.

Beri also signed a document styled "Deputation Agreement — United States." Doc #75 Ex D at 1. The deputation agreement, much expanded over that signed by Vedachalam, provided that the "Employee does agree and commit, to complete his/her Deputation in the Country of deputation and to return to India at the conclusion of the Deputation in order to impart the experience, knowledge and skills acquired on the Deputation to employees of the Employer in India," to serve TCS exclusively, to safeguard proprietary information, to comply with United States laws and not to compete with TCS while employed and for one year following termination of employment. Id. An initial "general provision" provided, <u>inter alia</u>, that

> the Employee is an employee of the Employer pursuant
> to a Service Agreement entered into in India upon
> commencement of the Employee's employment. The
> Service Agreement, and all other current agreements
> between the Employee and the Employer regarding the
> employment relationship in India, remain in full
> force and effect.

Id ¶ 1.1.

Regarding disputes, Paragraph 8 provided that the Employer could seek "from any court of competent jurisdiction * * * injunctive relief, * * * an equitable accounting * * * and any damages allowed by law." Paragraph 10.2(a), meanwhile, provided:

> any claim or controversy arising out of the
> Employee's breach as specified in paragraph 10.1
> [failure by employee to complete the deputation]

**9**

United States District Court

For the Northern District of California

> will be submitted to litigation in courts of
> competent jurisdiction in the State of Maryland,
> Montgomery County * * *. THE PARTIES EXPRESSLY
> AGREE TO SUBMIT TO PERSONAL JURISDICTION OVER
> HIM/HER IN THE STATE OF MARYLAND ACCORDINGLY.

Paragraph 10.2(c) contained an acknowledgment that the parties had entered into the service agreement and the addendum "which contain, among other commitments, a contractual commitment by the Employee (i) to serve the Employer as an Employee of the Employer in India for a minimum stated term and (ii) to return to India after a Deputation and continue to work for the Employer in India for a period of six (6) months." This paragraph concluded with an acknowledgment that the service agreement and the addendum "contain a mechanism for an arbitration in India (pursuant to Indian law) in the event the Employee breaches either of these commitments." Paragraph 10.2(d) stated that "as specified in the Service Agreement Addendum" the arbitration remedy in the service agreement and the addendum would not be available to TCS for a breach of paragraph 10.1, for which a suit for civil damages in the state court of Maryland would be the sole method of redress.

The Deputation Agreement bore Beri's signature, together with a notarial seal, on every one of its nine pages, but, while it provided blanks for a signature on behalf of TCS and for a witness to that signature, both blanks were unsigned. Doc #75 Ex D, passim.

The third agreement dated April 4, 2003 was a "Deputation Terms Agreement for a United States Deputation" containing more specific terms of Beri's employment in the United States. Doc #75 Ex E. This, like the other documents, had a signature blank for TCS but was not signed by TCS. It provided that the deputation term was for twelve months and that Beri would continue to receive her salary

10

and benefits in India during the period of the deputation "subject to any tax requirements in the United States and its states" and would also receive a gross salary of $50,000 "less deductions required by law or otherwise voluntarily authorized by you." Id at 2. The additional salary was stated to be "for living and other expenses in the United States." Id.

The deputation terms agreement also contained a number of terms relating to business and travel expenses, leave, visa and medical issues and other details associated with the deputation. Among these additional provisions was the following: "Upon your return to India, you will continue to be bound by the terms and conditions of your Service Agreement and Service Agreement Addendum executed by you. As stated in the [addendum], you agree to return to India after completion of your Deputation for an additional period of post-deputation service to TCS in India of 6 months." Id ¶ 6. This agreement did not address dispute resolution. It concluded with an affirmation that, among other things, confirmed "your agreement to the terms and conditions of your deputation agreement, service agreement, service agreement addendum and confidentiality agreement" above Beri's signature.

B

Beri filed her first amended complaint initiating this action on June 5, 2006. Doc #24. The amended complaint contains allegations related to both Vedachalam and Beri. Because the motions before the court pertain only to Beri's claims, the following summary discusses only these claims and not those pertaining to Vedachalam.

Beri alleges that TCS promised in her Deputation Terms Agreement that, for her work in the United States, she would receive a gross amount of $50,000 in addition to the compensation and benefits she received in India, but that defendants failed to pay her the promised amounts.  Doc # 24 ¶ 7, 29.

Beri also alleges that defendants violated various California Labor Code provisions by requiring her to pay back to defendants wages that she had previously earned.  Id ¶ 10.  For example, Beri alleges that in 2004 TCS unlawfully refused to provide Beri with her W-2 tax form unless she first paid TCS $2,440 and that only after Beri wrote a check to TCS in that amount did TCS provide her with her W-2 forms.  Id ¶ 32.

Beri further alleges that defendants improperly misclassified her as exempt from overtime pay and that she consistently worked more than eight hours per workday and forty hours per workweek without receiving overtime pay.  Id ¶ 11.

And finally, Beri alleges that "at least until July 2005," TCS maintained an unlawful "use-it-or-lose-it" vacation policy, whereby employees who left TCS forfeited vacation time that they earned but did not use, and that TCS violated California labor law by failing to pay discharged employees all wages earned and unpaid within 72 hours of termination.  Id ¶ 12.  Specifically, Beri asserts that she never took vacation from TCS during the time that she worked for the company but was never compensated for the vacation days that she did not use.  Id ¶ 67.

Beri is a plaintiff in eight of the amended complaint's nine causes of action:  (1) breach of contract for failing to pay the salary promised in the Deputation Terms Agreement; (2) unjust

enrichment through retaining tax refunds; (3) violation of California Labor Code § 221 (which provides that it "shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid"); (4) violation of California Labor Code §§ 510, 1194 by failing to pay overtime to non-exempt employees; (5) violation of California Labor Code §§ 201-203 by failing to pay employees their earned wages within seventy-two hours of dismissal; (6) violation of California Labor Code §§ 218.5, 227.3 and 201-203 by failing to pay for unused vacation time accrued by employees; (7) violation of California Labor Code § 226 and 1174 by failing to provide accurate statements showing gross wages and deductions; and (8) "false, unfair, fraudulent and deceptive business practice within the meaning of [California] Business and Professions Code §§ 17200." She seeks actual damages and equitable relief, exemplary and punitive damages, injunctive and declaratory relief, fees and costs.

Defendants move to compel arbitration of all of Beri's claims based on the documents described in Part I A, supra. Doc #74.

II

To compel arbitration, defendants must identify a valid, enforceable agreement to arbitrate and establish that the agreement to arbitrate covers the claims asserted by Beri. Unless both conditions are met, the court may not compel arbitration.

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the convention) requires parties to the convention, of which the United States is one, to recognize

13

> an agreement in writing under which the parties
> undertake to submit to arbitration all or any
> differences which have arisen or which may arise
> between them in respect of a defined legal
> relationship, whether contractual or not,
> concerning a subject matter capable of settlement
> by arbitration.

Convention Art II, ¶ 1, 9 USC § 201.  The convention defines "an agreement in writing" to include "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams."  Id Art II ¶ 2.

Courts "shall," when a party to an arbitration agreement meeting the above criteria seeks to enforce it, "refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed."  Id Art III ¶ 3.

Under article II of the convention, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.  The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'"  <u>Mitsubishi Motors Corp v Soler Chrysler-Plymouth, Inc</u>, 473 US 614, 626 (1985), quoting <u>Moses H Cone Memorial Hospital v Mercury Construction Corp</u>, 460 US 1, 24 (1983). In so doing, the court applies the federal common law of contracts. "In applying federal contract law, we are guided by general principles of contract law and by the Restatement."  <u>First Interstate Bank of Idaho v Small Business Administration</u>, 868 F2d 340, 343 (9th Cir 1989).

In response to defendants' motion, Beri contends that the documents defendants have presented to the court do not contain a valid agreement to arbitrate the disputes in her first amended

**14**

complaint.  Her primary argument is that, as the court determined in Vedachalam's case, no contract to arbitrate the claims in Beri's action ever came into being.  Secondarily, Beri argues that any agreement to arbitrate disputes would not be enforceable because it is "null and void" under the convention in that it is unconscionable.  As the court observed in its order of March 13, 2007 (Doc # 55 at 12), Vedachalam did not argue unconscionability and the court did not consider such concepts in adjudicating the motion to compel arbitration of his claims.  As a separate argument, Beri contends that the agreement could not form the basis for arbitration of her claims for injunctive relief under California's Unfair Competition Law.  As noted previously, because the court has determined that Beri's primary argument suffices to defeat the motion to compel arbitration, this order does not reach the remaining arguments.

III

Defendants move to compel arbitration based primarily on the service agreement, which they contend was extended and incorporated by reference into all the subsequent agreements. Specifically, they focus on the clause referring to claims of liability in this provision, contending that these words require arbitration of any and all claims ever arising in the course of Beri's employment with TCS: "[i]n the event of any dispute or disagreement over the interpretation of any of the terms hereinabove contained or <u>any claim of liability of any part</u> including the Surety/Sureties * * * shall be referred to a person to be nominated by the Division."  (Emphasis added.)  Doc # 75 Ex B at 4.

1   They argue that the court should not determine the service

2   agreement, as it did Vedachalam's initial agreement, to be primarily

3   one defining a relationship between "trainer and trainee."  Doc # 55

4   at 13.  They assert that "every reference to the [service agreement]

5   makes clear that the agreement which contains the arbitration clause

6   at issue is applicable to Beri's entire employment relationship with

7   TCS, not just her training."  Id at 4.

8   Understanding that they must distinguish Vedachalam's

9   facts from Beri's in order to prevail on their motion, defendants

10  point out one difference:  in contrast to Vedachalam's situation, in

11  which the initial agreement had expired before his deputation began,

12  Beri's deputation occurred during the three-year term of her initial

13  agreement; Beri therefore signed deputation-related agreements while

14  the service agreement was still in effect.  Id at 3.  The service

15  agreement was dated March 2, 2001 and the deputation-related

16  agreements were dated April 4, 2003.  The court agrees that this

17  distinguishes Beri's case from Vedachalam's.  The distinction,

18  however, is not material to the outcome of defendants' motion.

19  Defendants also argue that Beri's service agreement should

20  not be regarded as primarily a training agreement because Beri's

21  stated training period was one year, but her obligation to work for

22  TCS continued for two additional years.  Doc # 85 at 2-4.  "If the

23  [service agreement] were only a document governing training, it

24  would make no sense for it to continue beyond the twelve month

25  training period."  Id at 3.  They also consider it significant that

26  Beri's service agreement contains the word "minimum" in connection

27  with her three-year obligation.  Id.  Neither of these points,

28  however, distinguishes Beri's facts from Vedachalam's.  Nor,

16

standing alone, would these points warrant a finding of
arbitrability.

Vedachalam's initial agreement entitled him to one month
of training in exchange for "a minimum period of" two years' service
— a 1:12 ratio of training to service in contrast to Beri's 1:3.
The fact that the service obligation extends well beyond the
expiration of the training period does not change the fact that the
stated purpose of the agreement was for Beri to obtain training, the
quid pro quo for which was Beri's agreement to terms of service that
greatly restricted her freedom in the employment context for "a
minimum period of" three years.  Specifically, Beri's obligation to
work for TCS for three years would never have existed had she not
received the benefit of TCS's training under the service agreement;
absent this obligation, Beri would presumably have been free to
switch employers (something she was explicitly barred from doing
under paragraph 1 of the service agreement) and her sureties'
capital would not have been at risk of forfeiture for the three-year
period during which Beri was obligated to serve TCS exclusively.
The presence of the term "minimum" in the service agreement is, by
the same token, not helpful to defendants' position.

Article II, section one of the convention requires the
court to recognize an agreement "under which the parties undertake
to submit to arbitration all or any differences * * * in respect of
a defined legal relationship."  Accordingly, the court must
determine whether the claims stated in the complaint are within the
scope of the legal relationship defined in the service agreement.

Like Vedachalam's claims, Beri's claims in her suit are
not "in respect of" the training relationship as required by the

17

convention.  Beri's claims arise from issues pertaining to her employment following her deputation to the United States, not the training period or the training program.  Only the service agreement contains an arbitration clause that could be construed to require Beri to arbitrate disputes with TCS, but the service agreement is concerned with the training relationship.  The terms and conditions governing Beri's deputation to the United States, which was a significant new and essentially separate development in Beri's relationship with TCS, are specified in other documents —— the addendum, the deputation agreement and the deputation terms agreement.  Although the latter documents contain verbiage such as "by signing below you * * * confirm your agreement to the terms and conditions of your deputation agreement, service agreement, [addendum], and confidentiality agreement," see, e g, Doc # 75 Ex E at 4, such boilerplate clauses do not suffice to extend the reach of the service agreement's arbitration clause to other agreements that contain different, superseding or no provisions for dispute resolution because they do not clearly evidence the required intent to submit to arbitration disputes arising from the deputation.

Defendants cite Chloe Z Fishing Co v Odyssey Re (London) Limited, 109 F Supp 2d 1236, 1254-55 (S D Cal 2000)(Gonzales, J), which held that arbitration clauses in two sets of insurance policies could be read broadly enough to encompass collateral disputes "'arising out of' or 'in connection with' the parties' business relationship created by" the insurance policies at issue in that case.  Defendants argue that the arbitration clause in Beri's service agreement should be read to apply to all other agreements and, indeed, all events and issues pertaining to her employment.

18

But <u>Chloe Z</u> is distinguishable in important respects from the present case.

At issue in <u>Chloe Z</u> was a dispute over insurance coverage in which, as is typical in such cases, the outcome of the dispute hinged on interpreting the language of the policies. The two policies contained slightly different arbitration clauses, one providing that "any difference or dispute between the Company and the Assured concerning any claim under the Policy of Insurance [would be] referred to arbitration in London," the other providing that "any difference between the Company and the Assured arising out of or in connection with the Policy of Insurance [would be] referred to arbitration in London * * *." Id at 1254-55. The court noted that each of the plaintiffs' five causes of action —— breaches of the covenant of good faith and fair dealing, unfair business practices in connection with the handling of the plaintiffs' claims, intentional interference with contractual relations with third-party lenders and the United States government and declaratory relief regarding informing plaintiffs of the coverage provided by the policies —— "either specifically references the interpretation of the P & I policies * * * or implicitly charges that defendants have not performed their obligations in light of the coverage provided to plaintiffs in the P & I policies." Id at 1256. Finding that all the claims rested on interpretation of the policies, the court compelled arbitration of all claims in the suit.

The clutch of documents before the court on the instant motion, however, bears little resemblance to the pair of insurance forms under review in <u>Chloe Z</u>. Like the contracts under review in <u>Chloe Z</u>, the documents were forms drafted by the party seeking to

compel arbitration.  But the instant motion presents several
complexities not present in <u>Chloe Z</u>.  First, in <u>Chloe Z</u> only one
single insurance policy was in effect at any given time, whereas in
the instant matter four documents contained terms purporting to
govern the employment relationship between Beri and TCS at the time
of the events at issue in the amended complaint.  Second, and more
importantly, whereas in <u>Chloe Z</u> the policies provided that all
"differences" would be referred to arbitration in London, the
documents at issue here provide for different legal remedies and
forums for different types of breaches of the agreements by Beri ——
liquidated damages, actual and consequential damages, arbitration,
litigation in Indian courts and Maryland state courts and so on.
Third, moreover, these provisions are not mutual; whereas there are
numerous provisions contemplating different types of breaches by
Beri, only one provision is arguably applicable to TCS:  the broad
clause in paragraph 4 of the service agreement (Doc # 75, Ex B)
referring to "any claim of liability of any part including the
Sureties."  These distinctions are critical; <u>Chloe Z</u> provides little
guidance here.

TCS's intent in drafting the various provisions is not
expressly stated and is not obvious.  The court's careful review of
the documents presented in support of the motion leads it to several
conclusions about TCS's intent: (1) because none of the documents
acknowledges the possibility that the employer might breach any
agreement, violate any law or otherwise commit any act that might
give the employee reason to seek redress, such scenarios were not
within TCS's contemplation at the time it drafted the various
provisions pertaining to dispute resolution; (2) TCS's primary

objectives as expressed in the documents Beri signed were to ensure that Beri would (i) work for TCS for at least three years from her start date and for six months after returning to India from her deputation (periods which could in theory run concurrently) and (ii) complete —— and not leave or abandon —— assignments during her deputation to the United States; and (3) in the event of the latter type of breach, TCS planned to seek a judicial remedy in the Maryland, whereas TCS planned to arbitrate breaches of the former type (which presumably would occur in India) before its arbitrator in India.

As for the "any claim of liability of any part" clause, this provision is so broad and vague that it is unpersuasive as evidence that TCS intended to arbitrate disputes not directly related to the service agreement. While defendants urge that the breadth of this clause makes it so elastic that it can be stretched to encompass the entire universe of potential disputes between Beri and defendants, its very breadth more reasonably suggests that it was intended to apply to "any claim of liability" by any party to the service agreement arising from or pertaining to that agreement, as if a clause such as "in connection with this agreement" had simply been omitted for the sake of brevity or because it seemed unnecessary.

The contractual arrangement at issue simply does not manifest the mutual assent to arbitrate the instant disputes that the convention requires. Indeed, while it is nearly certain that Beri did not intend, in signing the various documents, that claims such as those set forth in the amended complaint would be subject to arbitration in India, it is not even apparent that TCS had such

**21**

intent.  The service agreement does not provide a basis for compelling arbitration of the claims in Beri's amended complaint.

VI

For the reasons stated herein, defendants' motion to compel arbitration of Beri's claims is DENIED. Pursuant to the stipulation and order dated May 1, 2007 (Doc #83), the parties are directed to contact the deputy clerk to arrange a hearing date for defendants' motion to stay proceedings (Doc #60) and defendants' motion to dismiss the amended complaint (Doc #71) to be held within ninety (90) days.  For administrative purposes, the clerk is directed to terminate these two motions (Doc ## 60, 71) and to re-open them when a hearing date is noticed.

The administrative motion at Doc # 63 is DENIED as moot.

IT IS SO ORDERED.

_____
VAUGHN R WALKER
United States District Chief Judge

United States District Court
For the Northern District of California