**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GOPI VEDACHALAM and KANGANA BERI, on
behalf of themselves and all others
similarly situated,

　　　　　Plaintiffs,

　　v.

TATA AMERICA INTERNATIONAL
CORPORATION, a New York Corporation;
TATA CONSULTANCY SERVICES, LTD., an
Indian corporation; and TATA SONS,
LTD., an Indian Corporation,

　　　　　Defendants.
_____/

No. C 06-0963 CW

ORDER GRANTING IN
PART AND DENYING
IN PART
DEFENDANTS'
MOTION FOR
PARTIAL SUMMARY
JUDGMENT
(Docket No. 150)

　　　Plaintiffs Gopi Vedachalam and Kangana Beri charge Defendants

Tata America International Corporation; Tata Consultancy Services,

Ltd. (TCS); and Tata Sons, Ltd., with breach of contract and

violations of California's Labor Code and Unfair Competition Law

(UCL).  Defendants move for partial summary judgment.[1]  Plaintiffs

oppose the motion.  The motion was heard on April 28, 2011.  Having

considered oral argument and the papers submitted by the parties,

the Court GRANTS Defendants' motion in part and DENIES it in part.

BACKGROUND

　　　Tata Sons and TCS are Indian corporations headquartered in

_____

[1] To support their motion, Defendants cite multiple
unpublished California state court opinions.  Under California Rule
of Court 8.1115, state court opinions "not certified for
publication or ordered published must not be cited or relied on by
. . . a party in any other action."  Defendants' reliance on these
opinions violates Civil L.R. 3-4(e), which prohibits parties from
citing opinions not designated for citation.  Accordingly, the
Court *sua sponte* strikes from Defendants' papers all citations to
unpublished state opinions.

Mumbai, India.  Tata America, a New York corporation, is the "U.S. Subsidiary" of Tata Sons and TCS.  First Am. Answer ¶¶ 1-2.  TCS, which was once a division of Tata Sons, offers information technology services to clients located worldwide.

To serve its clients, TCS deploys its employees on "temporary deputation assignments."  Mukherjee Decl. ¶¶ 4-9.  Before an employee departs on a so-called "deputation," TCS and the employee undertake several steps.  TCS first files a petition for a United States non-immigrant visa on behalf of the employee.  After a visa is obtained, TCS and the employee then enter into a deputation agreement (DA) and deputation terms agreement (DTA).  According to Defendants, a DA is a master agreement that pertains to all deputations, whereas a DTA contains terms relevant to a specific deputation.

Various policies and procedures governed deputations, several of which changed in July 2005.  Before July 2005, TCS handled employees' federal and state income tax obligations, including setting the number of tax withholding exemptions claimed by employees and filing tax returns on their behalf.  Under this arrangement, any "excess taxes paid by TCS on behalf of the employee are returned to TCS."  Smith Decl., Ex. A, at TCS1932. TCS maintains that, before departure, each employee received an "Overseas Deputation Manual" that explained how TCS handled income taxes and tax returns.  Mukherjee Decl. ¶ 9.  In July 2005, TCS changed its handling of employees' income taxes.  It now requires its employees to file their own federal and state tax returns.

Also before July 2005, TCS compensated deputed employees in

**United States District Court**
For the Northern District of California

the United States by depositing funds into their accounts in India
and by issuing them paychecks in the United States.  <u>See</u> Defs.'
Mot. for Summ. J. at 6:12-14.  TCS changed this compensation scheme
in July 2005.  TCS employees now earn only a gross salary, paid in
the United States.

Finally, before July 2005, TCS policy provided that employees
on deputation in the United States accrued "Privilege Leave."
However, to take this leave, the employee first had to return to
India and report to a TCS branch.  Smith Decl., Ex. B,
Sivasubramini Depo. 104:23-105:8.  Once these requirements were
met, the employee could use the accrued leave time "wherever he
want[ed] to use it."  <u>Id.</u> at 105:1.  This policy changed in July
2005.  Under the new policy, TCS does not require its employees to
return to India before going on leave.

Employees on deputation in the United States are entitled to
"Home Leave."  <u>See</u> Hutchinson Decl., Ex. 7, at TCS374.  Home Leave
was described as follows,

> On completion of twelve months of continuous service in
> the United States, and if you are required to continue
> your Deputation in the United States for a minimum of
> twelve additional months, you will be eligible for paid
> Home Leave in India for a maximum period of three weeks,
> subject to the business requirements of TCS and at the
> discretion of the Resident Manager.  On this paid Home
> Leave, you must report to any one of TCS branches in
> India that you designate prior to returning to India, so
> that we may know your whereabouts.

<u>Id.</u>; <u>see also</u> Hutchinson Decl., Ex. C, Sivasubramini Depo. 178:6-
183:7.

Vedachalam and Beri are Indian citizens.  During various
periods between 2000 and 2005, they were TCS employees on

3

United States District Court

For the Northern District of California

deputations in the United States.  Their circumstances are described separately below.

A.   Vedachalam

In April 2000, Vedachalam accepted a temporary deputation assignment to work as a project manager for Target Corporation, a TCS client, in Hayward, California.  Vedachalam worked for Target from April 2000 to August 2003.  On April 24, 2000 and on May 6, 2001, Vedachalam executed DAs for his deputation.  In relevant part, the DAs stated,

> During the period of the Deputation, the Employee will continue to receive his/her pay and benefits in India, as if the Employee had continued to work for the Employer in India, subject to any tax requirements under the laws of the country of deputation and its states.  Moreover, the period of the Deputation will be treated as approved service with the Employer and count for all of the following purposes in India, based on the pay the Employee continues to receive in India while on Deputation: Privilege Leave; . . .

Hutchinson Decl., Ex. 14, at TCS92-93; id., Ex. 15, at TCS116.

On May 14, 2002, TCS petitioned for a visa on Vedachalam's behalf.  The petition stated that Vedachalam's employment would span from May 14, 2002 through May 13, 2005 and that he would earn $56,058 per year.  Hutchinson Decl., Ex. 21, at TCS1684.

On May 27, 2002, Vedachalam signed a DTA, which stated in relevant part,

> (B)  Salary and Benefits in India.  As stated in the Deputation Agreement, you will continue to receive your salary and benefits in India during the period of the Deputation, subject to any tax requirements of the United States and its states.

> (C)  Compensation in the United States.  In addition to the compensation and benefits you currently receive and will continue to receive in India while on Deputation, you shall receive additional compensation in the United

4

States in the gross amount of $_____ less deductions required by law or otherwise voluntarily authorized by you. This compensation shall be for living and other expenses while in the United States.

(D)   <u>Total Gross Compensation</u>. Amounts of salary paid by TCS in India (under Paragraph 4(b) above) and the additional compensation in the United States (under Paragraph 4(c) above) shall be aggregated and thus shall be treated as your gross compensation for purposes of U.S. law with respect to your employment in the United States.

<u>Id.</u>, Ex. 22, at TCS129.

On June 2, 2003, TCS petitioned for another visa on Vedachalam's behalf. TCS indicated that his employment had changed and requested that his stay in the United States be extended or amended based on his new status. Smith Decl., Ex. U. The petition stated that Vedachalam's employment would span from May 30, 2003 through May 29, 2005 and that he would earn $74,000 per year.

On August 16, 2003, Vedachalam's deputation with Target ended and he returned to India.

Thereafter, Vedachalam accepted a temporary deputation assignment with 21st Century Insurance Group, another TCS client, in Los Angeles, California. On September 30, 2003, he signed a DTA that, like his 2002 DTA, did not state how much additional compensation he would receive while in the United States.

On April 20, 2005, TCS filed a petition to extend the expiration date of Vedachalam's visa. This petition, like the 2003 petition, indicated that Vedachalam would earn $74,000 per year.

As noted above, before July 2005, TCS filed federal and state tax returns on behalf of its deputed employees in the United States. These tax returns resulted in refunds. Pursuant to

5

company policy, Vedachalam signed the tax refund checks over to TCS.

Until the pay period ending June 30, 2005, Vedachalam's earning statements reflected deductions for "Indian Salary."  For example, eight statements, dated between June 2002 and November 2002, indicate that TCS deducted a total of $10,860.85 from Vedachalam's gross pay for "Indian Salary."  Hutchinson Decl., Ex. 24.  However, as noted above, TCS changed its compensation policy in July 2005.  Earnings statements issued on July 29, 2005; August 29, 2005; and September 30, 2005 do not show such deductions.

B.    Beri

On April 4, 2003, Beri signed a DA and DTA for her temporary deputation assignment in the United States.  In relevant part, her DA stated,

>     2.3   <u>Compensation and Benefits in India</u>.  During the
>     period of the Deputation the Employee will continue to
>     receive his/her salary and benefits in India, as if the
>     Employee had continued to work for the Employer in India,
>     subject to any tax requirements under the laws of the
>     United States and its states.  Moreover, the period of
>     Deputation will be treated as approved service with the
>     Employer and counted for all of the following purposes in
>     India, based on the salary the Employee continues to
>     receive in India while on Deputation: Privilege
>     Leave; . . .
>
>     2.4   <u>Compensation in the United States</u>.  During the
>     period of the Deputation, the Employee will receive
>     additional compensation in U.S. dollars, in the amount
>     stated in the DTA.  This compensation shall be for living
>     and other expenses in the United States.  It shall be
>     part of Employee's total compensation for purposes of
>     U.S. Department of Labor "prevailing wage"
>     determinations.
>
>     2.5   <u>Total Gross Compensation</u>.  Amounts of salary paid by
>     the Employer in India (under Paragraph 2.3) and
>     compensation paid for living expenses in the United
>     States (under Paragraph 2.4) shall be aggregated and thus

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> shall be treated as the Employee's total gross
> compensation under U.S. law with respect to the
> Employee's employment in the United States.

Hutchinson Decl., Ex. 6, at TCS384.

Beri's DTA, like Vedachalam's, contained provisions for her salary and benefits in India, her compensation in the United States and her total gross compensation. However, in contrast to Vedachalam's DTAs, Beri's listed an amount she would receive as additional compensation while on deputation in the United States. Her DTA stated,

> (C) <u>Compensation in the United States.</u> In addition to
> the compensation and benefits you currently receive and
> will continue to receive in India while on Deputation,
> you shall receive additional compensation in the United
> States in the gross amount of *$50,000*, less deductions
> required by law or otherwise voluntarily authorized by
> you. This compensation shall be for living and other
> expenses in the United States.

Hutchinson Decl., Ex. 7, at TCS373 (italicized text in original). At the time she signed her DTA, Beri understood that she would receive $50,000 as additional compensation in the United States.

Beri began her deputation with P&O Nedlloyd Limited, a TCS client, located in East Rutherford, New Jersey. On November 24, 2003, Beri began working for Experian, another TCS client, in Costa Mesa, California. Beri explained that, for Experian, she tested software code, which entailed running code and seeing "if it gives the desired output." Hutchinson Decl., Ex. A, Beri Depo. 41:25- 42:1. If the result did not match the "desired output," Beri would inform the code's developer and her supervisor; she did not, however, provide input or guidance on how to fix the code. <u>Id.</u> at 42:8-12. Beri did not design the code, even though her resume

7

indicated otherwise.  Beri stated during her deposition that her
resume contained language she copied from the resume of another TCS
employee working at Experian and that this language did not apply
to her.  Beri remained with Experian until September 25, 2004.

Beri sought to file her tax returns for 2003.  When she
requested her W-2 for that year, TCS required her to pay $2,440,
which was the amount it estimated would be her federal and state
tax refund for that year.  Hutchinson Decl., Ex. 10, at
VEDACHALAM91.  Also, as it did with Vedachalam, TCS deducted
"Indian Salary" from Beri's gross pay.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and
disputed issues of material fact remain, and when, viewing the
evidence most favorably to the non-moving party, the movant is
clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.
56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
1987).

The moving party bears the burden of showing that there is no
material factual dispute.  Therefore, the court must regard as true
the opposing party's evidence, if supported by affidavits or other
evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815
F.2d at 1289.  The court must draw all reasonable inferences in
favor of the party against whom summary judgment is sought.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d
1551, 1558 (9th Cir. 1991).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an

essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. <u>Nissan</u>, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. <u>Id.</u>

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. <u>Id.</u> This is true even though the non-moving party bears the ultimate burden of persuasion at trial. <u>Id.</u> at 1107.

DISCUSSION

I.   Breach of Contract Claims

Plaintiffs allege that Defendants breached their DAs and DTAs, to which they refer collectively as their employment contracts, by failing to pay them as promised.

A.   Vedachalam

Defendants contend that Vedachalam cannot prevail on a breach of contract claim for their conduct after July 2005, the month they altered their compensation scheme for employees deputed in the United States. Vedachalam did not respond to this argument. Accordingly, summary judgment is granted in favor of Defendants on Vedachalam's breach of contract claim, to the extent it rests on the compensation scheme effective July 2005.

With respect to the pre-July 2005 compensation scheme, Defendants contend that they are entitled to summary judgment because they never promised Vedachalam a specific amount of additional compensation he would receive while in the United

States.  They point to Vedachalam's DTAs, which did not state the amount of his additional United States compensation.  Vedachalam responds that Defendants breached his employment contracts in two ways.  First, he maintains that Defendants committed a breach by deducting his Indian salary from his United States paychecks. Second, he maintains that the wage amounts Defendants included on his visa petitions can be used as extrinsic evidence of his promised additional United States compensation.  Defendants' motion must be denied as to both theories.

Vedachalam's 2003 DTA states that his compensation in the United States would be in addition to his compensation in India. The July 2005 addendum to Vedachalam's DA and DTA stated that "in the past TCS has provided compensation and benefits both in India (salary in rupees) and in the country of deputation (a living allowance in local currency such as U.S. dollars)."  Smith Decl., Ex. F, at TCS2314.  Nothing in Vedachalam's employment contracts suggests that his Indian salary would be deducted from his United States paychecks.  Read together in a light favoring Vedachalam, these documents support an inference that Vedachalam's United States compensation was to be independent from his Indian salary.

Defendants' arguments on this point are unavailing.  They assert that, because this "theory" was not plead in Plaintiffs' First Amended Complaint (1AC), it is impermissibly raised on summary judgment.  Reply at 2.  However, Plaintiffs allege that they were promised a "a certain gross salary in addition to the salary they will continue to earn in India," 1AC ¶ 28, and that Defendants failed to pay "the amount of compensation promised," id.

11

United States District Court
For the Northern District of California

¶ 80.  These allegations sufficiently encompass Vedachalam's claim that Defendants committed a breach by deducting his Indian salary from his United States compensation.  Defendants also contend that subtracting Vedachalam's Indian salary from his United States compensation is entirely consistent with his 2003 DTA because it states that his gross compensation would include monies paid in both countries.  This argument, however, is undercut by the language that Vedachalam's United States compensation was in addition to the compensation he received and continued to receive in India while he was on deputation.  Thus, there is a triable issue as to Vedachalam's breach of contract claim to the extent it is based on deductions of his Indian salary from his United States compensation.

Likewise, summary judgment is not warranted on this claim insofar as it is based on Defendants' alleged breach of a promise to pay Vedachalam additional compensation in the United States in the amounts listed on his visa petitions.  As noted above, Vedachalam's 2002 visa petition indicates that his "wage" will be "$56,058/yr."  Hutchinson Decl., Ex. 21, at TCS1684.  His 2003 and 2005 visa petitions state that his "wages" will be "$74,000/yr."  Id., Ex. 29, at TCS1590; id., Ex 43, at TCS1713.  Vedachalam points to these petitions as extrinsic, or parol, evidence of his intent at the time he agreed to the terms of his deputation.  Under California law, if contract terms are disputed, "'the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning.'"  First Nat'l Mortg. Co. v. Fed. Realty

12

United States District Court
For the Northern District of California

Inv. Trust, 631 F.3d 1058, 1067 (9th Cir. 2011) (quoting Morey v. Vannucci, 64 Cal. App. 4th 904, 912 (1998)).  If, based on the extrinsic evidence, the contract is reasonably susceptible of the proffering party's interpretation, that evidence must then be admitted to assist in the interpretation of the contract.  See First Nat'l, 631 F.3d at 1067; see also Winet v. Price, 4 Cal. App. 4th 1159, 1165 (1992).  If conflicting extrinsic evidence supports different interpretations of the contractual language, this poses a question of fact not amenable to summary judgment.  See First Nat'l, 631 F.3d at 1067.  The extrinsic evidence cited by Vedachalam supports his interpretation of the DTA.  Defendants contend that the fact that the compensation provision was blank shows that the parties did not agree on an amount.  However, this is not dispositive.  See In re Estate of Gardner, 187 Cal. App. 4th 543, 550 (2010) (noting that, if an individual completed "paperwork but failed to fill out all the terms, parol evidence may be used to explain the missing terms in that paperwork").

Genuine issues of material fact exist with respect to Vedachalam's breach of contract claim.  Accordingly, summary judgment is not appropriate.

B.   Beri

As noted above, unlike Vedachalam, Beri's DTAs provided that she would receive $50,000 in additional compensation while she was on deputation in the United States.  Defendants concede that they never paid Beri this amount.  Instead, they contend that there was a mutual mistake of fact that rendered this provision unenforceable.  As the proponents of the unenforceability of the

13

provision, Defendants have the burden to show that they are entitled to summary judgment as a matter of law.  See Ladd v. Warner Bros. Entm't, Inc., 184 Cal. App. 4th 1298, 1309 n.8 (2010).

Although Defendants proffer testimony indicating they may have been mistaken, they offer no evidence showing that Beri made a similar mistake.  On the contrary, Beri testified that she understood that she would receive $50,000 in additional compensation while in the United States.  Accordingly, Defendants' motion is denied with respect to Beri's breach of contract claim.

II.  Claims under California Labor Code section 221

California Labor Code section 221 provides, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."  "'Wages' for this purpose 'includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.'" Prachasaisoradej v. Ralphs Grocery Co., Inc., 42 Cal. 4th 217, 226 (2007) (quoting Cal. Lab. Code § 200(a)).  Section 221 "was adopted to prevent the use of secret deductions or 'kickbacks' to make it appear the employer is paying a required or promised wage, when in fact it is paying less."  Prachasaisoradej, 42 Cal. 4th at 231 (citing Kerr's Catering Serv. v. Dep't of Indus. Relations, 57 Cal. 2d 319, 328 (1962)).  Plaintiffs contend that Defendants violated section 221 in two ways: (1) by deducting their Indian salary from their United States compensation and (2) by requiring them to sign over their tax refund checks to Defendants.

14

United States District Court
For the Northern District of California

Defendants argue that Plaintiffs may not pursue section 221 claims based on deductions for their Indian salaries because this factual basis was not plead in the 1AC.  Unlike the allegations made with respect to their breach of contract claims, the allegations supporting Plaintiffs' section 221 claims do not suggest that Plaintiffs seek relief under that statute based on deductions for their Indian salaries.  Plaintiffs explicitly plead that their section 221 claims are based on Defendants' requirement that they sign over their tax refund checks.  See 1AC ¶ 110. Accordingly, Defendants' motion is granted, to the extent it is directed at Plaintiffs' section 221 claims on this new factual basis.  Plaintiffs are given leave to amend their complaint to seek relief on their section 221 claims on these grounds.  In response, Defendants may renew their motion for partial summary judgment.

Defendants contend that they are entitled to summary judgment on Plaintiffs' section 221 claims, to the extent they are based on the signing over of their tax refund checks, because tax refunds are not wages.  In particular, Defendants argue that a "tax refund is not paid to employees for 'labor performed,' but rather is for the payment of taxes to the federal, state or local taxing authority."  Mot. at 19:24-26.  This argument is unavailing.  In this case, before July 2005, Defendants controlled the number of federal and state exemptions Plaintiffs claimed for tax withholding purposes.  The number Defendants claimed affected the amounts Plaintiffs received for the labor they performed.  See, e.g., IRC § 3402; 26 C.F.R. § 31.3402(f)(1)-1.  Any over-withholding of taxes would result in a tax refund, which, before July 2005, Defendants

15

United States District Court
For the Northern District of California

required Plaintiffs to sign over to them.  Based on these facts, a jury could conclude that, through their pre-July 2005 control over Plaintiffs' tax withholding exemptions, tax returns and tax refunds, Defendants received wages from Plaintiffs that they had paid to Plaintiffs, in violation of section 221.

The cases cited by Defendants, none of which addressed section 221 or the type of employment arrangement at issue here, do not warrant a contrary conclusion.  In Wightman v. Franchise Tax Board, taxpayers brought claims against the California Franchise Tax Board for withholding their state income tax refunds to offset monies the taxpayers owed to other state agencies.  202 Cal. App. 966, 969 (1988).  The state court stated that, in a procedural due process analysis, a tax refund is not analogous to "wages or regular income upon which the taxpayer relies for his daily necessities" when considering the nature of the private interest affected by official action.  Id. at 980.  Vaessen v. Woods, 35 Cal. 3d 749 (1984), is similarly inapposite.  There, the California Supreme Court concluded that, for the purposes of a state program established under the Social Security Act, tax refunds were not to be considered "resources" that reduced amounts to which program participants were entitled.  Id. at 751.

Defendants also argue that Plaintiffs agreed to have their income taxes handled under Defendants' pre-July 2005 procedures because the Overseas Deputation Manual stated that employees on deputation were required to sign over their income tax refund checks to Defendants.  However, Vedachalam testified that he never received the manual, and Beri testified that she never saw it.

16

**United States District Court**
For the Northern District of California

Furthermore, deductions by employers not otherwise authorized by state or federal law must be "expressly authorized in writing by the employee." Cal. Lab. Code § 224. There is no evidence that Plaintiffs gave such an express authorization. Defendants cite Vedachalam's "2004 Questionnaire for Preparation of Your Personal Income Tax Return," in which Defendants indicated that refund checks "need to be endorsed by the employee in favour of the company." Smith Decl., Ex. VV, at TCS000312. However, that document does not contain Vedachalam's express authorization, as required by section 224.

In sum, Defendants' motion is granted to the extent it is directed at Plaintiffs' section 221 claims based on deductions for their Indian salaries. Plaintiffs are granted leave to amend their complaint to plead this factual basis. In response, Defendants may renew their motion for partial summary judgment. Defendants' motion is denied to the extent it is directed at Plaintiffs' section 221 claims based on Defendants' treatment of their income taxes before July 2005. However, the Court summarily adjudicates that Plaintiffs cannot seek relief on their section 221 claims for Defendants' conduct after July 2005.

III. Beri's Claim for Overtime Pay

Beri alleges that she was entitled to overtime compensation. She maintains that Defendants misclassified her as exempt from overtime pay and, as a result, violated California Labor Code section 510 and Industrial Wage Commission Order No. 4-2001. Defendants contend that summary judgment is warranted in their favor because Beri was properly classified as exempt under

17

California's "administrative exemption."

Under California law, employees must ordinarily be paid overtime compensation if they work more than forty hours in one week. Cal. Lab. Code § 510. State law exempts from this rule employees who work in administrative capacities. Cal. Lab. Code § 515; Cal. Code Regs. tit. 8, § 11040(1)(A)(2) (codifying California Industrial Welfare Commission Wage Order No. 4-2001, which pertains to "persons employed in professional, technical, clerical, mechanical, and similar occupations").

Employers have the burden of proving that an employee is exempt from state overtime pay requirements. See Gomez v. Lincare, Inc., 173 Cal. App. 4th 508, 515 (2009) (citing Sav-On Drug Stores, Inc. v. Superior Court, 34 Cal. 4th 319, 338 (2004)). Courts construe exemptions narrowly against employers. Gomez, 173 Cal. App. 4th at 515. The determination of whether an exemption applies requires a fact-intensive inquiry. See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 945 (9th Cir. 2009) (citing Tumminello v. United States, 14 Cl. Ct. 693, 697 (1988)).

Defendants do not establish that, as a matter of law, Beri was subject to the administrative exemption. There are factual disputes as to the nature of Beri's position with Experian. She testified that her primary duty was to test software code, not write it. Courts generally view employees who primarily perform such software troubleshooting tasks as not exempt from overtime pay requirements. See Heffelfinger v. Elec. Data Sys. Corp., 580 F. Supp. 2d 933, 962 (C.D. Cal. 2008) (citing Eicher v. Advanced Business Integrators, Inc., 151 Cal. App. 4th 1363 (2007); Bothell

18

v. Phase Metrics, Inc., 299 F.3d 1120 (9th Cir. 2002); Martin v. Ind. Mich. Power Co., 381 F.3d 574 (8th Cir. 2004)).  It is true that Beri's resume indicated that she had more substantial responsibilities; however, she has disavowed those representations. Beri's credibility is a matter to be judged by a jury.

Because there is a triable issue as to whether Beri was an exempt administrative employee, summary judgment on her claim for unpaid overtime pay is not warranted.

IV.  Beri's Claim for Unpaid Accrued Vacation Time

California Labor Code section 227.3 provides that

> whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served.

An "employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination."  Id.  This is because vested vacation time "is not a gratuity or a gift, but is, in effect, additional wages for services performed."  Suastez v. Plastic Dress-Up Co., 31 Cal. 3d 774, 779 (1982) (citation omitted).  Pay for vested vacation time, similar to pension or retirement benefits, "is simply a form of deferred compensation." Id. at 780.

Employers, however, may impose policies that prevent an employee from earning vacation time during a so-called "waiting period."  Owen v. Macy's, Inc., 175 Cal. App. 4th 462, 471 (2009). For instance, an employer may lawfully prohibit "new employees from earning any amount of vacation for the first six months."  Id. at

19

United States District Court
For the Northern District of California

472.  "A company policy specifying that no vacation is earned during the first six months of employment is permissible."  _Id._ at 470.

Beri contends that Defendants violated section 227.3 by failing to pay her for unused Privilege Leave.  As noted above, this benefit is accrued in India during an employee's deputation abroad.  Generally, there is a presumption against the extraterritorial application of state laws.  _See_ _Diamond Multimedia Sys., Inc. v. Superior Court_, 19 Cal. 4th 1036, 1059 (1999).  Plaintiffs do not identify any authority providing that section 227.3 applies to vacation time accrued in another country.  _Tidewater Marine Western, Inc. v. Bradshaw_, 14 Cal. 4th 557 (1996), does not support their position.  There, the California Supreme Court concluded that Industrial Wage Commission (IWC) Wage Orders apply to maritime employment in the Santa Barbara Channel because, under state law, the Channel was within California's boundaries.  _Id._ at 564, 577-79.  The court noted that the extraterritorial enforcement of state labor laws raises difficult questions and that the holding in _Tidewater_ was limited.  _See_ _id._ at 577-78 (stating that it declined to hold that "IWC wage orders apply to _all_ employment in California").  Thus, absent authority providing otherwise, Beri may not rely on section 227.3 to recover benefits accrued abroad.

Beri also brings a section 227.3 claim pertaining to Home Leave, which likewise fails.  Her DTAs stated that she was "eligible" for paid Home Leave if she completed "twelve months of continuous service in the United States" and if she was "required

United States District Court
For the Northern District of California

to continue [her] Deputation in the United States for a minimum of twelve additional months."  Hutchinson Decl., Ex. 7, at TCS374. The DTAs did not otherwise state that Beri would accrue Home Leave if these requirements were not met.  Nor does Beri identify any other language indicating that she earned Home Leave over the course of her deputation.

Plaintiffs argue that, notwithstanding these conditions, Beri accrued Home Leave and it is now payable.  However, Plaintiffs' reliance on <u>Suastez</u> is unavailing.  In that case, the vacation policy "unequivocally provided that an employee would earn a one week vacation during the 'first year' of employment."  <u>Owen</u>, 175 Cal. App. 4th at 462 (discussing <u>Suastez</u>).  But the policy also provided that "employees are not eligible for any vacation pay unless they are still employed on the anniversary of the day they began work."  <u>Suastez</u>, 31 Cal. 3d at 778.  The California Supreme Court held this requirement to be unlawful because it amounted to "a condition subsequent which attempts to effect a forfeiture of vacation pay already vested."  <u>Id.</u> at 781.  Here, Beri does not offer evidence that she satisfied both requirements under the stated policy and that she accrued Home Leave.

The Home Leave policy is more analogous to the one at issue in <u>Owen</u>.  There, the vacation policy provided, "All eligible associates earn and vest in paid vacation <u>after they have completed six months of continuous employment</u>."  <u>Owen</u>, 175 Cal. App. 4th at 465 (emphasis in original).  The policy further explained that employees "who have completed at least six months of continuous service as of May 1 and who have worked at least 1000 hours during

21

the prior vacation year will be eligible for paid vacation." <u>Id.</u> at 466.  The court concluded this was permissible under <u>Suastez</u> because the policy did not require forfeiture of vacation time already earned; the policy made clear that no vacation time was earned during a new employee's first six months on the job.  <u>Id.</u> at 470.  Here, as in <u>Owen</u>, the DTAs stated that Beri did not earn Home Leave until she continuously served a certain period of time and was assigned to another deputation assignment that would last at least twelve months.  These restrictions did not preclude Beri from taking leave, as in <u>Suastez</u>; instead, the restrictions precluded her from earning leave, as in <u>Owen</u>.

Beri presents no evidence that she had vested vacation time for which she was not paid.  Accordingly, summary adjudication is granted in favor of Defendants on her section 227.6 claim.

V.    Beri's Claim for Penalties Related to Wages Not Paid at
      Discharge

Beri alleges that Defendants failed to pay her wages to which she was entitled within seventy-two hours of her dismissal, in violation of California Labor Code sections 201, 202 and 203. Beri's employment ended in September 2004.  Defendants argue that summary judgment is warranted on this claim because she was paid on August 31, 2004 for the pay period ending September 30, 2004.

Summary judgment on this claim is not appropriate.  As explained above, Beri has raised triable issues as to whether Defendants breached their promise to pay her $50,000 per year as her compensation in the United States, whether they took improper deductions from her United States compensation and whether they

22

**United States District Court**
For the Northern District of California

failed to compensate her for overtime pay.  If she prevails on these claims, she will demonstrate that she was entitled to wages not paid within seventy-two hours of her discharge.

Defendants contend that, if the parties had "a good faith dispute," Beri would not meet the section 203's requirement that an employer's violation be willful.  However, the evidence does not establish as a matter of law that Defendants' failure to pay was in good faith.

Accordingly, Defendants' motion is denied to the extent that it is directed at Beri's claim for waiting-time penalties.

VI.  Claims Against Tata America and Tata Sons

Defendants seek summary adjudication that Tata America cannot be held liable for any of Plaintiffs' claims.  Because Plaintiffs did not respond to Defendants' motion on this point, the Court grants it.

Defendants also seek summary adjudication that Tata Sons cannot be held liable on any of Plaintiffs' claims for any damages incurred after August 9, 2004.  Defendants provide evidence that, on that date, TCS became a separate corporate subsidiary of Tata Sons and "assumed all of the assets, rights, obligations, and liabilities of the former division of Tata Sons known as Tata Consultancy Services."  Mukherjee Decl. ¶¶ 22-23.

The Court summarily adjudicates that Tata Sons cannot be held liable for damages Plaintiffs incurred after August 9, 2004. Plaintiffs do not dispute Tata Sons's corporate reorganization, but instead point to Beri's August 31, 2004 earnings statement, which has Tata Sons printed on it.  However, this paycheck stub is not

inconsistent with TCS becoming a separate corporate entity on
August 9.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part
Defendants' motion for partial summary judgment and DENIES it in
part.  (Docket No. 150.)

    1.    The Court summarily adjudicates that Tata America cannot
be held liable on any of Plaintiffs' claims and that Tata
Sons cannot be held liable for damages incurred after
August 9, 2004.

    2.    Summary judgment is warranted in Defendants' favor on
Vedachalam's breach of contract claim, to the extent it
is premised on the compensation scheme effective July
2005.

    3.    Summary adjudication is granted with regard to
Plaintiffs' section 221 claims, to the extent they are
based on deductions for their Indian salaries.
Plaintiffs may promptly amend their complaint to add this
factual basis.  Defendants may respond by renewing their
motion for summary judgment.  The Court summarily
adjudicates that Plaintiffs cannot seek damages on their
section 221 claims for conduct that occurred after July
2005.

    4.    Summary adjudication is granted in Defendants' favor on
Beri's section 227.3 claim for an alleged failure to pay
for accrued vacation time.

Defendants' motion is DENIED in all other respects.

24

**United States District Court**
For the Northern District of California

1    Plaintiffs' motions for class certification and to appoint

2 class counsel will be heard and a case management conference will

3 be held on October 20, 2011 at 2:00 p.m.

4    IT IS SO ORDERED.

5

6 Dated: 7/13/2011

7                                        CLAUDIA WILKEN
                                         United States District Judge

**United States District Court**
For the Northern District of California

25