1   Kelly M. Dermody (State Bar No. 171716)
    kdermody@lchb.com
2   Daniel M. Hutchinson (State Bar No. 239458)
    dhutchinson@lchb.com
3   Anne B. Shaver (State Bar No. 255928)
    ashaver@lchb.com
4   Katherine M. Lehe (State Bar No. 273472)
    klehe@lchb.com
5   LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
6   275 Battery Street, 29th Floor
    San Francisco, CA 94111
7   Telephone: (415) 956-1000
    Facsimile:  (415) 956-1008
8
    Steven M. Tindall (State Bar No. 187862)
9   steventindall@rhdtlaw.com
    Angela Perone (State Bar No. 245793)
10  angelaperone@rhdtlaw.com
    RUKIN HYLAND DORIA & TINDALL LLP
11  100 Pine Street, Suite 2150
    San Francisco, CA 94111
12  Telephone: (415) 421-1800
    Facsimile: (415) 421-1700
13
    *Counsel for Plaintiffs and the Proposed Class*
14

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17

18  GOPI VEDACHALAM and KANGANA          CASE NO. C 06-0963 (CW)
    BERI, on behalf of themselves and all
19  others similarly situated,           **SECOND AMENDED CLASS ACTION
                                         COMPLAINT FOR BREACH OF
20              Plaintiffs,              CONTRACT; UNFAIR BUSINESS
                                         PRACTICES; AND VIOLATIONS OF
21  v.                                   CALIFORNIA WAGE AND HOUR LAWS**

22  TATA CONSULTANCY SERVICES,           CLASS ACTION
    LTD, an Indian Corporation; and TATA
23  SONS, LTD, an Indian Corporation.    **DEMAND FOR JURY TRIAL**

24              Defendants.

25

26

27

28

933746.3

Individual and representative Plaintiffs Gopi Vedachalam and Kangana Beri ("Plaintiffs") allege, on behalf of themselves and all others similarly situated, as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs bring this class action on behalf of three Classes of employees of Tata Consultancy Services, Ltd., and Tata Sons, Ltd., Indian corporations headquartered in Mumbai, India (collectively referred to as "TCS" or "Defendants").

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act, because the aggregate amount claimed by the individual members of the proposed Classes exceeds $5,000,000, exclusive of interest and costs. The Nationwide Class exceeds 100 persons, and its members are citizens of India and other countries, and Defendants have offices and conduct business in various states throughout the United States. The California Classes exceed 100 persons, and the California Classes' members are citizens of India and other countries, and Defendants have offices and conduct business in various states throughout the United States.

3.      Personal jurisdiction over TCS is proper because it has purposefully availed itself of the privilege of conducting business activities within the State of California by employing workers within California, and selling its services within the State. TCS generally has maintained systematic and continuous business contacts with California.

4.      Venue is proper in this district pursuant to 42 U.S.C. § 2000e5(f) and 28 U.S.C. § 1391 (b) & (c). Many of the acts complained of herein occurred in this District and gave rise to the claims alleged. TCS conducts business in this District and employs thousands of workers within the State of California.

## SUMMARY OF CLAIMS

5.      Plaintiffs are current and former employees of TCS, who were "deputed" to the United States by TCS in order to work in-house for TCS's customers. Plaintiffs were not paid the wages they were promised by TCS, were forced to pay back to TCS wages previously earned, and were injured by TCS's systematic violations of California's wage and hour laws.

6.      Plaintiffs are members of, and seek to represent, a Rule 23(b)(3) Nationwide Class

of all non-U.S. citizens whom Defendants employed in the United States at any time from February 14, 2002 through June 30, 2005, alleging breach of contract ("Nationwide Class"). Plaintiffs allege, on behalf of themselves and the Nationwide Class, that TCS did not pay them the gross wages that TCS promised it would pay them in exchange for working for TCS in the United States.  Plaintiffs, on behalf of themselves and Nationwide Class members, seek damages and injunctive relief.

7.      Plaintiffs are members of, and seek to represent, a Rule 23(b)(3) California Class of all non-U.S. citizens whom Defendants employed in California at any time from February 14, 2002 through June 30, 2005 ("California Class A").  Plaintiffs allege, on behalf of themselves and the California Class A members, that TCS forced them to pay back to TCS wages that the employees had previously earned in the form of tax refund checks.  In addition, TCS wrongfully deducted Class members' Indian salaries from their U.S. pay, in violation of their uniform employment contracts.  Plaintiffs, on behalf of themselves and California Class A member, seek damages.

8.      Plaintiffs are members of, and seek to represent, a Rule 23(b)(3) California Class of all non-U.S. citizens whom Defendants employed in California at any time from February 14, 2002 through the final disposition of this action ("California Class B").  Plaintiffs allege, on behalf of themselves and the California Class B members, that TCS violated California Labor law by failing to provide accurate wage statements, and by failing to pay discharged employees all wages earned and unpaid within 72 hours of termination.  Plaintiffs, on behalf of themselves and California Class B members, seek damages.

9.      Plaintiff Beri, on behalf of herself, further alleges that TCS violated California law by improperly misclassifying her as exempt from overtime pay.  Plaintiff Beri seeks damages.

**THE PARTIES**

10.      Plaintiff Gopi Vedachalam is a citizen of India and currently resides in Chennai, India.  In 1997, Mr. Vedachalam began working for Tata Consultancy Services in Bangalore, India.  In April 2000, Tata Consultancy Services "deputed" Mr. Vedachalam, sending him to work for TCS in the United States.  From April 2000 to 2007, Mr. Vedachalam worked in the

United States for TCS.  From 2000 to 2003, Vedachalam worked in Hayward, California, as a TCS project manager for Target.  From 2003 to 2007, he worked as a TCS project manager for 21st Century Insurance in Woodland Hills, California.

11.     Plaintiff Kangana Beri is a citizen of India, legally living in Washington under an H-4 visa. (The H-4 visa is a dependant visa for someone whose spouse lives and works legally in the United States on an H-1B visa.)  In 2001, Ms. Beri began working for TCS in New Delhi, India.  In April 2003, TCS deputed Ms. Beri to the United States.  From April 2003 to September 2004, Ms. Beri worked as an Assistant Systems Engineer for TCS clients in California.

12.     Defendant Tata Consultancy Services, Ltd. is an Indian corporation with its principal place of business in Mumbai, India, operating in the San Francisco Bay Area as well as throughout the State of California and the United States.  Tata Consultancy Services, Ltd. was wholly owned by Defendant Tata Sons, Ltd., an Indian corporation, until August 2004.

13.     Defendant Tata Sons, Ltd., is an Indian corporation with its principal place of business in Mumbai, India, operating in the San Francisco Bay Area as well as throughout the State of California and the United States.  Tata Sons, Ltd. was the parent company of Tata Consultancy Services, Ltd., until August 2004.

## STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS

### A.     TCS's Deputation of Its Employees to the United States

14.     Most TCS employees in the United States are non-U.S. citizens.  Most of these individuals have worked for TCS in India and are "deputed" to work in the United States, meaning that the employees continue to work for TCS, but are stationed in the United States.

15.     Each employee signs a Deputation Agreement and a Deputation Terms Agreement that outline the terms and conditions of his or her employment in the United States.

16.     These employees are granted visas, which allow the employees to work and live in the United States.  TCS, under the penalty of perjury, makes certain representations to the U.S. government and to its employees on the visa petitions about the amount of wages each employee will earn during his or her stay in the United States.

17.     The Deputation Agreements state that the employee's gross amount of

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. C 06-0963 (CW)

1   compensation shall be includable as earnings in the United States and reported to the U.S. Internal

2   Revenue Service.

3         18.     The Deputation Agreements state that "[i]n addition to the compensation and

4   benefits you currently receive and will continue to receive in India while on Deputation, you shall

5   receive additional compensation in the United States in the gross amount of" a certain number of

6   dollars.

7         19.     While in the United States, these employees are paid by TCS.

8         **B.     TCS's Operations**

9         20.     TCS is the information technologies outsourcing/consulting arm of the Indian

10  conglomerate Tata Group.  TCS has branch offices throughout the United States and deputes

11  employees throughout the United States to provide information technology support to TCS

12  clients.

13        21.     On information and belief, Plaintiffs believe that most TCS deputed employees

14  work on-site at TCS clients' offices.

15                          **CLASS ALLEGATIONS**

16        22.     Plaintiff Vedachalam and/or Plaintiff Beri bring this class action pursuant to Fed.

17  R. Civ. P. 23(a) and (b)(3), on behalf of a Nationwide Class and two California classes, as

18  described below.

19  **II.    NATIONWIDE CLASSES**

20        **A.     Nationwide Class A**

21        23.     Plaintiffs are members of, and seek to represent, the following nationwide class:

22              All non-U.S. citizens who were employed by TCS at anytime from
                February 14, 2002 through June 30, 2005 who were promised a
23              higher amount of wages than they actually received ("Nationwide
                Class A").
24
        24.     When Defendants depute their Indian employees to the United States, they
25
    promise those employees a certain gross salary in addition to the salary they will continue to earn
26
    in India. This promise is contained in the Deputation Terms Agreement, which reads: "In addition
27
    to the compensation and benefits you currently receive and will continue to receive in India while
28

on Deputation, you shall receive additional compensation in the United States in the gross amount of" a certain number of dollars.

25.     For example, TCS promised Plaintiff Beri a gross amount of $50,000 in addition to the compensation and benefits she received in India.  Ms. Beri did not receive this gross amount in addition to the compensation and benefits she received in India when she worked for TCS in the United States.

26.     TCS also makes certain salary representations to the employees and to the U.S. government in the employees' visa petitions.  For example, under penalty of perjury, in Plaintiff Vedachalam's May 2003 visa petition to the United States, TCS represented to Plaintiff Vedachalam (and to the U.S. government) that from May 30, 2003 through May 29, 2005, Plaintiff Vedachalam would receive $74,000 per year.  Mr. Vedachalam did not receive this amount of annual salary in 2004 or 2005.

27.     In addition to not paying their employees the amount promised, TCS decreased their employees' wages further by requiring their employees to sign over their tax refund checks or by requiring them to pay to receive the tax forms required to file an income tax return.

28.     In no signed agreement were Plaintiffs promised a lower net salary rather than the gross salary set forth in their Deputation Terms Agreements and/or represented to them in their visa petitions.

29.     Deputed employees were paid a gross amount monthly, and federal and state income taxes were withheld from these gross monthly wages.

30.     Until July 2005, Defendants required that their non-U.S. citizen employees sign power of attorney agreements that delegated an outside agency to calculate and submit each employee's tax returns to the applicable state and federal tax authorities.

31.     On information and belief, Plaintiffs allege that during each year of the class period, TCS received a state and federal tax refund check made out to each Nationwide Class member, representing the amount of taxes the Class member had overpaid the state and federal tax agencies.  TCS then forced the employees to endorse these refund checks to TCS.

32.     For example, each year that Plaintiff Vedachalam worked for Defendants in the

1    United States, the Internal Revenue Service and California Franchise Tax Board sent to

2    Defendants checks made out to Plaintiff Vedachalam in the amount of tax he overpaid throughout

3    the preceding year.  Each year that Plaintiff Vedachalam has worked for Defendants in the United

4    States, Defendants have required him to endorse his tax refund checks and send those checks

5    back to the company.  In 2004, for example, TCS sent Plaintiff Vedachalam an "Urgent Memo"

6    that stated: "Thank you very much for your excellent support in assisting us to file the tax return

7    on your behalf for the year [current year].  We are now forwarding you the tax refund check

8    received from the Tax Authority.  Please sign on the reverse of the cheque and return it to the

9    below mentioned address.  Your assistance in the [sic] regard will be highly appreciated."

10        33.    On information and belief, Plaintiffs allege that when Defendants receive the tax

11   refund checks from the respective tax agencies, made out to each of their non-U.S.-citizen

12   employees, they send their non-U.S.-citizen employees an "Urgent Memo," demanding that the

13   employees endorse the checks and send them back to Defendants.

14        34.    Employees did not provide TCS with their tax over-payment, i.e., their refund

15   checks, voluntarily.  Instead, they had no choice in the matter, because—prior to sending their

16   refund checks to the employees—TCS stamped the back of the checks with a stamp that read:

17   "Pay to the Order of . . . Tata Consultancy Services, Ltd."

18        35.    On information and belief, Plaintiffs allege that Defendants have retained the

19   proceeds from the Nationwide Class members' tax refund checks by requiring that employees

20   endorse their refund checks for TCS's benefit.  Defendants have not repaid these funds to their

21   employees.

22        36.    On information and belief, Plaintiff Vedachalam alleges that Defendants have

23   taken the proceeds from his state and federal tax refunds for each year that he has worked in the

24   United States.  Defendants have never repaid Vedachalam the tax refund money that they

25   required him to sign over to TCS.

26        37.    On information and belief, Plaintiff Vedachalam alleges that Defendants may have

27   received as much as $5,000 per year, per employee as a result of Defendants' requirement that

28   each Nationwide Class B member sign over his or her tax refund checks to Defendants.

38.     Plaintiff Vedachalam estimates that Defendants have retained nearly $25,000 in federal and state tax refunds that rightfully belong to him.

39.     In no signed agreement (or any other document) were Plaintiffs told that they would receive a set net pay amount that TCS would then "gross-up" to include their taxes. Instead, Plaintiffs Vedachalam and Beri believed that they were receiving a gross amount from TCS, out of which taxes were being withheld.

40.     Also during the class period, TCS did not allow deputed employees to file their own tax returns unless they first paid TCS the amount of their anticipated tax refund.  For example, in 2004 Plaintiff Beri informed TCS that she would like to file her own tax returns for the year 2003 jointly with her husband.  TCS unlawfully refused to provide her with her W-2 tax forms. See 26 C.F.R. § 31.6051-1 (setting forth the requirement that employers must provide their employees with two copies of their W-2 forms on or before January 31 of the year following the tax year). Ultimately, TCS informed her that they would only provide her with her W-2 form if she first paid TCS $2,440.  This was the amount that TCS calculated that she would receive as a refund had she been unmarried and filed as an unmarried individual.  Plaintiff Beri wrote a personal check to TCS in that amount and only then, months after January 31, 2004, did TCS provide her with her W-2 forms.

41.     TCS has not repaid Plaintiff Beri for the amount they required her to pay to receive her 2003 W-2 forms.

42.     On information and belief, Plaintiffs were never provided with an "Overseas Deputation Policy."

**B.     Suitability Of The Nationwide Class for Class Certification**

43.     The members of the Nationwide Class identified herein are so numerous that joinder of all members is impracticable.  Upon information and belief, Defendants have employed 13,121 employees on deputation in the United States between February 14, 2002 and June 30, 2005.  This number is far greater than can be addressed feasibly through joinder.

44.     There are many questions of law and fact common to the Nationwide Class, and these questions predominate over any questions affecting only individual members.  Common

1   questions of fact or law include, among others: (1) whether Defendants had a systematic plan to

2   breach the contracts of their non-U.S.-citizen employees; (2) whether Defendants unlawfully held

3   hostage the W-2 tax forms of those employees who wished to file their own tax returns, requiring

4   that such employees pay TCS a set amount of money before TCS relinquished the tax forms,

5   thereby lowering the amount of salary promised in their agreements; (3) whether Plaintiffs and

6   the proposed class have a right to their individual tax refund checks; (4) whether Defendants

7   unlawfully compelled the Plaintiffs and the proposed class to turn over those refund checks to

8   TCS; (5) whether Defendants breached their uniform employment agreements with Class

9   members by deducting their Indian salaries from their U.S. pay; and (6) whether injunctive relief

10  and other equitable remedies (including restitution) and compensatory and punitive damages are

11  warranted for the Nationwide Class.

12      45.     The claims of Plaintiffs are typical of the claims of the Nationwide Class they seek

13  to represent.

14      46.     Plaintiffs will fairly and adequately represent and protect the interests of the

15  members of the Nationwide Class.  Plaintiffs' counsel is competent and highly experienced in

16  complex class actions in general and employment-related class actions in particular.

17      47.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because

18  common questions of fact and law predominate over any individual questions affecting members

19  of the Nationwide Class, and because a class action is superior to other available methods for the

20  fair and efficient adjudication of this litigation.  The members of Nationwide Class have been

21  damaged and are entitled to recovery as a result of Defendants' common, uniform, and illegal

22  policies and practices.  Defendants have computerized payroll and personnel data that will make

23  calculation of damages for specific members of the Nationwide Class relatively straightforward.

24  **III.    CALIFORNIA CLASSES**

25      **A.    California Class A**

26      48.     Plaintiffs are members of, and seek to represent, the following Class:

27          All non-U.S. citizens who were employed by TCS in California at
            any time from February 14, 2002 through June 30, 2005 who were
28          forced to pay back to TCS previously-earned wages ("California

1    Class A").

2    49.    By deducting their Indian salary from their U.S. wages and requiring that their

3    non-U.S.-citizen employees either (1) sign over their tax refund checks to the company or (2) pay

4    TCS in order to receive their W-2 tax forms, Defendants required their California employees to

5    repay to Defendants wages those employees had previously earned.

6    50.    When Defendants depute their Indian employees to the United States, they

7    promise those employees both an Indian salary and a gross U.S. salary.  This promise is

8    contained, among other places, in the Deputation Terms Agreement, which reads: "As stated in

9    the Deputation Agreement, you will continue to receive your salary and benefits in India during

10   the period of the Deputation[,]" and "In addition to the compensation and benefits you currently

11   receive and will continue to receive in India while on Deputation, you shall receive additional

12   compensation in the United States in the gross amount of . . . ."

13   51.    Despite this promise, Defendants recouped the amounts of non-U.S.-citizen

14   employees' Indian salaries from them by making Indian salary deductions from their U.S. wages.

15   52.    Plaintiff Vedachalam estimates that Defendants required him to return to

16   Defendants between $8,000 and $17,000 in earned wages per year from Indian salary deductions.

17   Plaintiff Beri estimates that Defendants required her to return between $3,000 and $6,000 per

18   year in earned wages.  On information and belief, Plaintiffs allege that Defendants have required

19   each member of California Class A to return similar Indian salary amounts to Defendants.

20   53.    The tax overpayment, or refund check, that TCS required each class member to

21   submit to the Defendants represents the amount of the class members' gross wages that they

22   overpaid to the California Franchise Tax Board and the Internal Revenue Service from their

23   monthly paychecks.

24   54.    The class members are entitled to this amount because, among other reasons, (1) it

25   represents the amount that they have overpaid the tax authorities from their gross wages and

26   (2) taking the tax refund checks widens the gap between the amount that TCS promised these

27   employees and the amount TCS actually paid them.

28   55.    Plaintiff Vedachalam estimates that Defendants required him to return to TCS

between $5,000 and $10,000 in earned wages per year.  Plaintiff Beri estimates that Defendants required her to return to TCS $2,440 in earned wages.  On information and belief, Plaintiffs allege that Defendants have required each member of California Class A to return similar tax refund amounts to Defendants.

**B.     California Class B**

56.     Plaintiffs are members of, and seek to represent, the following Class:

> All non-U.S. citizens who were, are, or will be employed by TCS in California at any time from February 14, 2002 through the date of the final disposition of this action. ("California Class B").

57.     While working in California for Defendants, Plaintiffs and members of California Class B have not been provided with accurate, itemized wage statements.  The statements TCS provided misstated the employees' gross income and net income in several ways.  First, the statements did not account for the wages Defendants required the Plaintiffs and Class members to return to them in the form of tax refunds.  Second, the statements did not account for the Indian salary amounts that were wrongfully deducted from Plaintiffs' and Class members' U.S. salaries.  Third, Defendants regularly changed the number of exemptions listed on Plaintiffs' and Class members' wage statements and W2 forms without authorization and without informing them of the change, the reasons for the change, or its consequences.

58.     By not accounting for the tax refunds and the Indian salary deductions, and by unilaterally changing the number of exemptions, TCS has willfully refused to provide its employees with accurate, itemized wage statements.

59.     On information and belief, Plaintiffs further allege that TCS violated California labor law by failing to pay California Class B members all wages earned and unpaid within 72 hours of discharge.

**C.     Suitability of California Classes for Class Certification**

60.     The members of the California Classes are so numerous that joinder of all members is impracticable.  Defendants have employed thousands of non-U.S.- citizen employees throughout California.  Although the precise number of California employees affected by the illegal practices alleged herein is currently unknown, between February 14, 2002 and June 30,

2005 alone, 2,347 TCS employees were on deputation in California. The total number is therefore far greater than can be feasibly addressed through joinder. The precise number is easily ascertainable from Defendants' records.

61.     There are many questions of law and fact common to the proposed California Classes, and these common questions predominate over any questions affecting only individual members. Common questions of fact or law include, among others: (1) whether Defendants compelled their California employees to repay wages already earned (California Class A); (2) whether Defendants failed to adequately pay their dismissed California employees within 72 hours of those class members' terminations from the company (California Class B); (3) whether Defendants willfully failed to provide their California employees with accurate, itemized statements of their wages (California Class B); (4) whether injunctive relief and other equitable remedies (including restitution) and compensatory and punitive damages are warranted (California Classes A and B).

62.     The claims of Plaintiffs Vedachalam and Beri are typical of the claims of the California Classes.

63.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the California Classes. Plaintiffs' counsel is competent and highly experienced in complex class actions in general and employment class actions in particular.

64.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the proposed California Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' practices have damaged the members of the proposed California Classes, and the law entitles the proposed Classes to recovery as a result of Defendants' common, uniform, and illegal practices. Defendants have computerized payroll and personnel data that will make calculation of damages for specific members of the proposed Classes relatively straightforward.

## IV.   PLAINTIFF BERI'S INDIVIDUAL CLAIM FOR MISCLASSIFICATION.

65.     Plaintiff Beri worked for TCS under the title Assistant Systems Engineer, and her

1  primary duties were maintaining and supporting computer software for TCS's clients.  Her

2  primary tasks place her in a "non-exempt" category that legally requires TCS to pay her premium

3  overtime wages for all hours worked over forty (40) hours per week and all hours worked over

4  eight (8) hours per day.

5       66.    TCS willfully misclassified Plaintiff Beri as exempt from the requirement that

6  TCS pay her premium overtime wages under California law.

7       67.    TCS further required Plaintiff Beri to record 8 hours for every day that she worked

8  despite the fact that she routinely worked more than 8 hours a day.

9                              **FIRST CLAIM FOR RELIEF**
                        **BREACH OF CONTRACT—NATIONWIDE CLASS**
10          **(by Plaintiffs on behalf of themselves and the proposed Nationwide Class)**

11       68.    Plaintiffs hereby incorporate by reference the allegations contained in all

12  preceding paragraphs of this complaint.

13       69.    Plaintiffs bring this claim on behalf of themselves and the proposed Nationwide

14  Class.

15       70.    The class period for the proposed Nationwide Class is from February 14, 2002

16  through June 30, 2005.

17       71.    By failing to pay Nationwide Class members the amount of compensation

18  promised in their Deputation Terms Agreements, Defendants breached those contracts.  By

19  failing to pay Nationwide Class members the amount promised as reflected in their visa petitions,

20  which TCS signed under the penalty of perjury, Defendants breached their agreements with the

21  Nationwide Class members.  By forcing the Nationwide Class members to sign over their tax

22  refund checks to TCS, Defendants reduced their wages and thereby breached their agreements

23  with the Nationwide Class members.  By deducting the Nationwide Class members' Indian

24  salaries from their U.S. salaries, Defendants breached their agreements with the Nationwide Class

25  members.

26       72.    Defendants' breach of the terms of their contracts with the members of the

27  Nationwide Class entitles those members to recovery of all damages caused by Defendants'

28  nonperformance.

1    73.    Defendants' conduct as alleged above establishes a claim for breach of contract, as

2    articulated by the Restatement (Second) of Contracts, and the laws of California.

3    74.    Plaintiffs request relief as provided in the Prayer for Relief below.

4    **CAUSES OF ACTION UNDER OTHER STATES' LAWS**

5    75.    Plaintiffs are informed and believe that the contract law of California shall govern

6    here.  To the extent that another State's law governs the conduct of Defendants in this

7    controversy, Plaintiffs allege a cause of action for breach of contract under any such State's law

8    based on the allegations that Defendants' conduct constituted breach of contract as articulated

9    by the Restatement (Second) of Contracts.  To the extent that another State's (or States') law of

10    contract governs, Plaintiffs will seek leave to amend to allege causes of action under such State's

11    (or States') law.

12    **SECOND CLAIM FOR RELIEF**
**VIOLATION OF CAL. LABOR CODE § 221**

13    **(by Plaintiffs on behalf of themselves and proposed California Class A)**

14    76.    Plaintiffs hereby incorporate by reference the allegations contained in all

15    preceding paragraphs of this complaint.

16    77.    Plaintiffs bring this claim on behalf of themselves and proposed California

17    Class A.

18    78.    The class period for California Class A is from February 14, 2002 through June

19    30, 2005.

20    79.    Pursuant to California Labor Code § 221, "It shall be unlawful for any employer to

21    collect or receive from an employee any part of wages theretofore paid by said employer to said

22    employee."

23    80.    Pursuant to California Labor Code § 1171.5(a),

24          All protections, rights, and remedies available under state law,
          except any reinstatement remedy prohibited by federal law, are
25          available to all individuals regardless of immigration status who
          have applied for employment, or who are or who have been
26          employed, in this state.

27    81.    Defendants' conduct as alleged above constitutes a violation of California Labor

28    Code § 221, because by requiring Plaintiffs and proposed California Class A members to sign

over their tax refunds and/or pay TCS to receive their W-2 forms, Defendants required Plaintiffs and the proposed California Class A to return to Defendants a substantial part of the wages paid by Defendants to them.  Defendants have also violated California Labor Code § 221 by subtracting Plaintiffs' and Class members' Indian salaries from their U.S. salaries.  The Indian salary was included in Plaintiffs' and Class members' wages, and then deducted, thereby unlawfully recouping that money and decreasing their compensation.

82.     Plaintiffs request relief as provided in the Prayer for Relief below.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF CAL. LABOR CODE §§ 201-203
**(by Plaintiffs on behalf of themselves and proposed California Class B)**

83.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

84.     Plaintiffs Vedachalam and Beri bring this claim on behalf of themselves and proposed California Class B.

85.     The class period for California Class B is from February 14, 2002 through the final disposition of this action.

86.     Pursuant to California Labor Code § 201(a), "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

87.     Pursuant to California Labor Code § 202 (a),

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

88.     Pursuant to California Labor Code § 203,

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30

1     days.

2     89.     Pursuant to California Labor Code § 1171.5(a),

3

4

> All protections, rights, and remedies available under state law,
> except any reinstatement remedy prohibited by federal law, are
> available to all individuals regardless of immigration status who
> have applied for employment, or who are or who have been
> employed, in this state.

5

6

7     90.     Defendants' conduct as alleged above constitutes a violation of California Labor

Code sections 201 through 203, because TCS failed to pay the entirety of dismissed Class

8 members' wages owed to them within 72 hours of dismissal.

9     91.     Plaintiffs request relief as provided in the Prayer for Relief below.

10

11

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF CAL. LABOR CODE §§ 226, 1174**
**(by Plaintiffs on behalf of themselves and proposed California Class B)**

12

13     92.     Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this complaint.

14

15     93.     Plaintiffs bring this claim on behalf of themselves and proposed California Class

16 B..

17     94.     Pursuant to California Labor Code § 226(a),

18

19

20

21

22

23

24

25

> Every employer shall, semimonthly or at the time of each payment
> of wages, furnish each of his or her employees, either as a
> detachable part of the check, draft, or voucher paying the
> employee's wages, or separately when wages are paid by personal
> check or cash, an accurate itemized statement in writing showing
> (1) gross wages earned, . . . (4) all deductions, provided that all
> deductions made on written orders of the employee may be
> aggregated and shown as one item, (5) net wages earned, . . . . The
> deductions made from payments of wages shall be recorded in ink
> or other indelible form, properly dated, showing the month, day,
> and year, and a copy of the statement or a record of the deductions
> shall be kept on file by the employer for at least three years at the
> place of employment or at a central location within the State of
> California.

26     95.     California Labor Code § 226(e) provides that an employee suffering injury as a

27 result of a knowing and intentional failure by an employer to comply with Labor Code § 226(a) is

28 entitled to recover the greater of his or her actual damages or a penalty of $50 for the initial pay

1   period in which a violation occurs and $100 per employee for each violation in subsequent pay

2   period (up to a maximum of $4,000), in addition to attorneys' fees and costs.

3       96.    Pursuant to California Labor Code § 1174(d), employers shall keep

4       at a central location in the state or at the plants or establishments at

5       which employees are employed, payroll records showing the hours
    worked daily by and the wages paid to, and the number of piece-
    rate units earned by and any applicable piece rate paid to,

6       employees employed at the respective plants or establishments.

7       97.    Pursuant to California Labor Code § 1171.5(a),

8       All protections, rights, and remedies available under state law,
    except any reinstatement remedy prohibited by federal law, are

9       available to all individuals regardless of immigration status who
    have applied for employment, or who are or who have been

10      employed, in this state.

11      98.    The conduct alleged in this complaint constitutes a violation of California Labor

12  Code §§ 226 and 1174, as Defendants knowingly and intentionally failed to provide timely,

13  accurate, itemized wage statements to Plaintiffs and the proposed California Class B members.

14  Defendants routinely changed the number of tax exemptions without first obtaining the consent

15  and approval of the Plaintiffs and the California Class B members. The wage statements

16  Defendants provided to the class members did not accurately reflect the employees' gross or net

17  wages, as they failed to discount the employees' tax refund checks that Defendants required the

18  employees to return to the company.  In addition, the wage statements Defendants provided to

19  Class B members improperly subtracted Plaintiffs' and Class members' Indian salaries from their

20  U.S. salaries.  The Indian salary was included in Plaintiffs' and Class members' wages, and then

21  deducted, thereby unlawfully decreasing their compensation and rendering the itemized wage

22  statements inaccurate.

23      99.    Plaintiffs request relief as provided in the Prayer for Relief below.

24  **FIFTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200**

25  **(by Plaintiffs on behalf of themselves and the proposed California Classes A and B)**

26      100.    Plaintiffs hereby incorporate by reference the allegations contained in all

27  preceding paragraphs of this complaint.

28      101.    Plaintiffs bring this claim on behalf of themselves and the proposed California

1    Employee Classes that they represent.

2         102.    Defendants' violations of California Labor Code §§ 201-203, 221, 226, 227.3, 510,

3    1174, and 1194, as alleged above, constitute unlawful business acts or practices.

4         103.    Defendants' failure to pay wages as alleged herein to Plaintiffs and members of the

5    proposed Classes under California Labor Code, and Defendants' failure to keep proper records, as

6    alleged herein, constitute unlawful activities prohibited by Business and Professions Code

7    §§ 17200, *et seq.*

8         104.    The actions of Defendants in failing to pay Plaintiffs and members of the proposed

9    Classes in a lawful manner and in collecting part of their wages previously paid to them, as

10   alleged herein, constitute false, unfair, fraudulent and deceptive business practice, within the

11   meaning of Business and Professions Code §§ 17200, *et seq.*

12        105.    Defendants' conduct as alleged herein has damaged Plaintiffs and proposed Class

13   members by wrongfully failing to pay them all wages due upon termination of employment, and

14   by failing to provide itemized wage statements.  Such conduct was substantially injurious to

15   Plaintiffs and the proposed Classes.

16        106.    Under the circumstances alleged herein, it would be inequitable and result in a

17   miscarriage of justice for Defendants to continue to retain the property of Plaintiffs and proposed

18   Class members, entitling Plaintiffs and proposed Class members to restitution of the unfair

19   benefits obtained and disgorgement of Defendants' ill-gotten gains.

20        107.    As a result of Defendants' unlawful business acts or practices, Defendants have

21   reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiffs and the

22   proposed California Classes.

23        108.    Defendants' improper, unfair and unlawful business practices and acts alleged

24   herein constitute a continuing threat to Plaintiffs, Class members, and members of the public in

25   that, unless restrained, Defendants may continue to violate California Labor law.  Pursuant to

26   Business and Professions Code § 17203, Plaintiffs, on behalf of themselves, the California

27   Classes, and the general public, seek a permanent injunction requiring Defendants to cease its

28   unlawful and unfair business practices and acts.

109.    As a direct and proximate result of the aforementioned practices and acts, Defendants have been unjustly enriched, and Plaintiffs, the proposed California Classes, and the general public are entitled to restitution in an amount to be determined at trial.

110.    Plaintiffs request relief as provided in the Prayer for Relief below.

**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF CAL. WAGE ORDER NO. 4; CAL. LABOR CODE §§ 510, 1194**
**(by Plaintiff Beri on behalf of herself)**

111.    Plaintiff Beri hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

112.    California law requires an employer, such as Defendant, to pay overtime compensation to all non-exempt employees.

113.    Plaintiff Beri did not at any time during her employment qualify for any exemption from the requirement that their employer pay overtime compensation under California law because she spent more than one-half of her time performing non-exempt duties.  Defendants misclassified Beri as exempt from overtime pay entitlement and failed and refused to pay her overtime premium pay for her overtime hours worked.

114.    Throughout her employment with TCS, Plaintiff Beri worked in excess of eight (8) hours in a workday and/or forty (40) hours in a workweek.

115.    Therefore, Plaintiff Beri is entitled to be paid overtime compensation for all overtime hours worked.

116.    Plaintiff Beri requests relief as provided in the Prayer for Relief below.

**RELIEF ALLEGATIONS**

117.    Plaintiffs and the classes they seek to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiffs and the classes they seek to represent are now suffering and will continue to suffer irreparable injury from TCS's illegal acts.

118.    The actions on the part of Defendant have caused and continue to cause Plaintiffs and the proposed classes substantial losses in earnings, other compensation, and other

1  employment benefits, in an amount to be determined according to proof.

2       119.    Defendants acted or failed to act as herein alleged with malice or reckless

3  indifference to the protected rights of Plaintiffs and members of the proposed classes.  Plaintiffs

4  and members of the proposed classes are thus entitled to recover punitive damages in an amount

5  to be determined according to proof.

6                              **PRAYER FOR RELIEF**

7       **WHEREFORE,** Plaintiffs, on behalf of themselves and the proposed classes, pray for

8  relief as follows:

9       120.    Certification of the case as a class action on behalf of the proposed Plaintiff

10  classes, designation of Plaintiffs as representatives of the applicable classes as articulated above,

11  and designation of their counsel of record as Class Counsel;

12       121.    Damages and equitable relief for all harm Plaintiffs and the classes have sustained

13  as a result of Defendants' conduct, according to proof;

14       122.    Exemplary and punitive damages in an amount commensurate with Defendants'

15  ability to pay and to deter future unlawful conduct;

16       123.    A preliminary and permanent injunction against Defendants and their directors,

17  officers, owners, agents, successors, employees, and representatives—and any and all persons

18  acting in concert with them—from engaging in each of the unlawful practices, policies, customs,

19  and usages set forth herein;

20       124.    A declaratory judgment that the practices complained of in this complaint are

21  unlawful and violate applicable federal and state law;

22       125.    Fees and costs incurred, including reasonable attorneys' fees, to the extent

23  allowable by law;

24       126.    Pre-judgment and post-judgment interest, as provided by law; and

25       127.    Such other and further legal and equitable relief as this Court deems necessary,

26  just, and proper.

27

28

1    Dated:  September 20, 2011          LIEFF, CABRASER, HEIMANN &
                                         BERNSTEIN, LLP
2
                                         By:*/s/ Anne B. Shaver*_____
3
                                         Kelly M. Dermody (State Bar No. 171716)
4                                        kdermody@lchb.com
                                         Daniel M. Hutchinson (State Bar No. 239458)
5                                        dhutchinson@lchb.com
                                         Anne B. Shaver (State Bar No. 255928)
6                                        ashaver@lchb.com
                                         Katherine M. Lehe (State Bar No. 273472)
7                                        klehe@lchb.com
                                         LIEFF, CABRASER, HEIMANN &
8                                        BERNSTEIN, LLP
                                         275 Battery Street, 29th Floor
9                                        San Francisco, CA 94111
                                         Telephone: (415) 956-1000
10                                       Facsimile:  (415) 956-1008

11                                       Steven M. Tindall (State Bar No. 187862)
                                         steventindall@rhdtlaw.com
12                                       Angela Perone (State Bar No. 245793)
                                         angelaperone@rhdtlaw.com
13                                       RUKIN HYLAND DORIA & TINDALL LLP
                                         100 Pine Street, Suite 2150
14                                       San Francisco, CA 94111
                                         Telephone: (415) 421-1800
15                                       Facsimile: (415) 421-1700

16                                       *Counsel for Plaintiffs and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

933746.3                      - 20 -          SECOND AMENDED CLASS ACTION COMPLAINT
                                              CASE NO. C 06-0963 (CW)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  September 20, 2011           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: */s/ Anne B. Shaver*_____

Kelly M. Dermody (State Bar No. 171716)
kdermody@lchb.com
Daniel M. Hutchinson (State Bar No. 239458)
dhutchinson@lchb.com
Anne B. Shaver (State Bar No. 255928)
ashaver@lchb.com
Katherine M. Lehe (State Bar No. 273472)
klehe@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile:  (415) 956-1008

Steven M. Tindall (State Bar No. 187862)
steventindall@rhdtlaw.com
Angela Perone (State Bar No. 245793)
angelaperone@rhdtlaw.com
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

*Counsel for Plaintiffs and the Proposed Class*

933746.3

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. C 06-0963 (CW)