**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOPI VEDACHALAM and KANGANA BERI, on behalf of themselves and all others similarly situated, | No. C 06-0963 CW |
| Plaintiffs, | ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, |
| v. | GRANTING PLAINTIFFS' MOTION TO APPOINT CLASS |
| TATA CONSULTANCY SERVICES, LTD, an Indian Corporation; and TATA SONS, LTD, an Indian Corporation, | COUNSEL AND GRANTING DEFENDANTS' MOTION |
| Defendants. | FOR LEAVE TO FILE A SECOND SUR-REPLY (Docket Nos. 181, 185 and 272) |

Plaintiffs Gopi Vedachalam and Kangana Beri charge Defendants Tata Consultancy Services, Ltd. (TCS) and Tata Sons, Ltd., with breach of contract and violations of California's Labor Code and Unfair Competition Law (UCL).  Plaintiffs now move for class certification and appointment of class counsel.  Defendants oppose the motion for class certification, but do not oppose the motion for appointment of class counsel.  Having considered the papers filed by the parties and their oral arguments at the hearing, the Court GRANTS in part Plaintiffs' motion for class certification, GRANTS Plaintiffs' motion for appointment of class counsel, and GRANTS Defendants' motion for leave to file a second sur-reply.

BACKGROUND

Tata Sons and TCS, a division of Tata Sons, are Indian corporations headquartered in Mumbai, India.  TCS offers information technology services to clients located worldwide.

**United States District Court**
For the Northern District of California

To serve its clients, TCS deploys its employees to client sites worldwide on temporary assignments, known as "deputations." Before an employee departs on a deputation, TCS and the employee undertake several steps.  TCS first files a petition for a United States non-immigrant visa on behalf of the employee; in this visa petition, TCS provides a sworn statement to the United States government stating the amount of compensation to be paid to the employee in the United States.  After a visa is obtained, it is TCS's policy that TCS and the employee enter into a deputation agreement (DA) and deputation terms agreement (DTA).  According to Defendants, TCS has a "standard guideline" DTA, which they describe as a form with blanks that TCS was supposed to complete and have each deputed employee sign.  See Hutchinson Decl. ¶ 4, Ex. B, Tr. of Deposition of Ashok Mukherjee, at 143:8-144:12, 146:6-24.

The standard DTA states in part,

(B) Salary and Benefits in India.  As stated in the Deputation Agreement, you will continue to receive your salary and benefits in India during the period of the Deputation, subject to any tax requirements of the United States and its states.

(C) Compensation in the United States.  In addition to the compensation and benefits you currently receive and will continue to receive in India while on Deputation, you shall receive additional compensation in the United States in the gross amount of $_____, less deductions required by law or otherwise voluntarily authorized by you.  This compensation shall be for living and other expenses in the United States.

(D) Total Gross Compensation.  Amounts of salary paid by TCS in India (under Paragraph 4 (b) above) and the additional compensation in the United States (under Paragraph 4(c) above) shall be aggregated and thus shall be treated as your total gross compensation for purposes of U.S. law with respect to your employment in the United States.

According to Defendants, the blank space in section C was completed in one of four different manners: (1) $_____; (2) $50,000; (3) $_____ ($50,000); or (4) $45,000 ($50,000).

Some deputed employees also signed another form referred to as the Authorization for Payroll Deductions (APDs).  The APD contains an overall gross wage, as well as wages to be paid in India and in the United States.  The APD also states certain deductions that the deputed employees authorized from their United States wages.  For example, one APD executed within the class period states in part,

> I confirm that my rate of gross pay will be U.S.$ 41718 per year during my deputation in the United States.  The composition of my gross pay is indicated below.
>
> I hereby authorize TCS to deduct all applicable U.S. Federal and State income and employment taxes from my gross pay.  In addition, I authorize TCS to deduct, in monthly installments, the amounts listed below under Voluntary Deductions from my net pay for matters for my benefit.  I understand that the deductions are not conditions of employment and will not exceed 25% of my disposable earnings in any work period.
>
> I.   Gross Wages:                                  $ 41718
>   1. Wages paid in India                           $ 6234
>      (Indian wages to be paid in Rupees)
>   2. Wages paid in the United States (I-I.1=I.2) $ 35484
> II.  Deductions from US Component of Gross Wages:
>   1. Federal Income Tax
>   2. State Income Tax
>   3. Local Income Tax
>   4. SUI/SDI
>   5. Social security Tax
>   6. Medicare Tax
>   7. Total deductions from U.S. component of gross wages:                               $ 8665
> III. Net pay in the United States (I.2 minus II.7=III) :                                 $ 26819
> IV.  Voluntary deductions from Net pay in the U.S.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

```
        1. Medical insurance premium :              $ 336
        2. Car loan payment :                       $
        3. Other deductions :                       $ 419
           (Specify :
           Total Deductions                         $ 755
   V.   Net Take Home pay in the U.S. (III. minus IV.4 = V)
                                                    $ 26064
```

Smith Decl., Ex. BW.[1]  In none of the APDs provided by Defendants did deputed employees authorize TCS to deduct their Indian wages from their United States wages or to keep over-withheld tax deductions.  See Smith Decl., Exs. AJ, BH, BI, BT, BU, BV, BW, BX, BY.

Various policies and procedures governed deputations, several of which changed in July 2005.  Before July 2005, TCS handled employees' federal and state income tax obligations, including setting the number of tax withholding exemptions claimed by employees and filing tax returns on employees' behalf.  The number of tax withholding exemptions changed periodically for some employees.  When TCS received a tax refund check for a deputed employee, TCS placed a stamp on the back of the check that read, "Pay to the order of Tata Consultancy Services, Limited," and sent the check to the employee with an "urgent memo" directing the employee to endorse it and return it to TCS.  In July 2005, TCS changed its handling of employees' income taxes.  It now requires its employees to file their own federal and state tax returns.

---

[1] Defendants have submitted two APDs for deputed employees that fall within the proposed class period, see Smith Decl., Exs. AJ, BW, and six APDs that are dated prior to the proposed class period, see Smith Decl., Exs. BH, BI, BT, BU, BV, BX, BY.

**United States District Court**
For the Northern District of California

1  Before July 2005, TCS compensated deputed employees in the

2  United States both by depositing funds into their accounts in

3  India and by issuing them paychecks in the United States.  When

4  issuing paychecks in the United States, TCS deducted the amount of

5  the deputed employees' Indian wages from their United States

6  wages.  TCS changed this compensation scheme in July 2005.  TCS

7  employees now earn only a gross salary, paid in the United States.

8  Plaintiffs initiated this lawsuit on February 14, 2006.  On

9  April 25, 2011, Plaintiffs filed this motion for class

10  certification, in which they sought certification of two classes

11  and one subclass.  To prosecute their breach of contract claim,

12  Plaintiffs sought to certify under Rule 23(b)(3) a national class

13  defined as, "All non-U.S. citizens who were employed by Tata in

14  the United States at any time from February 14, 2002 through June

15  30, 2005." Mot. at 2.  In their reply, Plaintiffs further limit

16  the national class definition to include only those "who were

17  deputed to the United States after January 1, 2002." Reply, at 3.

18  To prosecute their claims under California law alleging improper

19  recoupment of wages, waiting time penalties, and inaccurate wage

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

statements,[2] Plaintiffs sought to certify under Rule 23(b)(3) a California class defined as, "All non-U.S. citizens who were employed by Tata in California at any time from February 14, 2002 through the date of judgment." Id.[3]

On July 13, 2011, this Court granted in part and denied in part Defendants' motion for partial summary judgment. The Court held, inter alia, that Plaintiffs had not alleged in their complaint that Defendants' deduction of deputed employees' Indian salaries from their American salaries violated California Labor Code section 221 and dismissed that claim to the extent that it was premised on Indian salary deductions. The Court granted Plaintiffs leave to amend their complaint to seek relief on their section 221 claims on these grounds.

---

[2] Plaintiffs previously asserted a claim against Defendants for failure to pay terminated employees for vested but unused vacation time at the time of discharge in violation of California Labor Code § 227.3. First Amended Compl. (1AC) ¶¶ 128-37. They initially sought certification of the California class to pursue this claim as well. Mot. at 1, n.1. After Plaintiffs filed their motion for class certification, this Court granted summary judgment in favor of Defendants on Plaintiff Beri's individual claim for unpaid accrued vacation pay. Order Granting in Part and Denying in Part Defs.' Mot. for Partial Summ. J., Docket No. 215, 19-22. Plaintiffs subsequently removed this cause of action from their Second Amended Complaint (2AC) and clarified at the hearing that they no longer seek certification to pursue this claim.

[3] To prosecute their claims seeking injunctive and declaratory relief for their claim under California law regarding inaccurate wage statements, Plaintiffs also initially sought to certify under Rule 23(b)(2) a California current employee subclass defined as, "All non-U.S. citizens who were employed by Tata in California on or after February 14, 2006 through the date of judgment." Mot. at 2. At the hearing on November 17, 2011, Plaintiffs clarified that they were no longer seeking certification of a Rule 23(b)(2) class.

1    On September 16, 2011, Defendants filed their opposition to

2    Plaintiffs' motion for class certification.

3    On September 20, 2011, Plaintiffs filed a second amended

4    complaint (2AC).  In the 2AC, Plaintiffs remedied the deficiency

5    as to their section 221 claim based on the deduction of Indian

6    salary.

7    On November 3, 2011, Plaintiffs filed a revised reply.  In

8    their reply, Plaintiffs make clear that they are seeking

9    certification to prosecute on a class-wide basis their claim that

10   Defendants' deduction of deputed employees' Indian salaries from

11   their American salaries violated California Labor Code section

12   221.  See Reply, at 20.

13                              DISCUSSION

14   I.   Motion for Leave to File a Second Sur-reply

15   On December 2, 2011, Defendants filed a motion for leave to

16   file a second sur-reply to address certification of the class to

17   prosecute Plaintiffs' section 221 claim for deducting class

18   members' Indian salary from their United States compensation.

19   With their motion, Defendants submitted a proposed eight-page sur-

20   reply.

21   The Court GRANTS Defendants' motion for leave to file a

22   sur-reply.  However, the Court will consider only those arguments

23   in the proposed sur-reply that address certification of the

24   California class to prosecute Plaintiffs' section 221 claim based

25   on the deduction of Indian salary and that Defendants could not

26   have previously made in opposition to certification of the

27   national class to prosecute Plaintiffs' breach of contract claim

28   based on the deduction of Indian salary.

**United States District Court**
For the Northern District of California

II.  Defendants' Evidentiary Objections

Defendants seek to strike the declarations Plaintiffs submitted from putative class members, on the grounds that they are "cookie cutter" declarations made without the declarants' personal knowledge, that they contradict the declarants' deposition testimony, and that eight declarants were not produced for depositions.

"On a motion for class certification, the Court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims" and therefore "the Court may consider evidence that may not be admissible at trial." Keiholtz v. Lennox Hearth Prods., Inc., 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010). Defendants do not include specific evidentiary objections in their opposition, as required by Local Rule 7-3, and instead make general and conclusory objections to all of Plaintiffs' declarations.  While Defendants argue that some of the declarations contradict the subsequent deposition testimony, the discrepancies that they point out in their opposition appear primarily because Defendants rely on excerpts of lengthy depositions.  The apparent contradictions are resolved or greatly diminished when placed in the context of additional deposition testimony.  This distinguishes the declarations at issue from those at issue in Evans v. IAC/Interactive Corp., 244 F.R.D. 568 (C.D. Cal. 2007), which contained statements that were "admittedly false," were clearly "simply made up by the declarant," or "for which the declarants lacked actual knowledge." Id. at 578.  Even in that case, the court declined to strike the declarations at issue, but instead considered these factors when determining how

much weight to give them.  Id. at 571.  Defendants offer no

specific facts or persuasive arguments that any of the

declarations were made without the declarants' personal knowledge.

Defendants also seek to strike eight specific declarations on

the basis that Plaintiffs did not make the declarants available

for depositions.  In support of their argument, Defendants only

cite Rojas v. Zaninovich, Inc., 2011 WL 2636071 (E.D. Cal.), in

which, in response to a motion to compel, the court directed the

plaintiffs to make "all good faith efforts" to produce a subset of

class members who had submitted declarations in support of class

certification.  The court did not require the plaintiffs to

produce all absent class members who had done so, and warned the

plaintiffs that the declarations of class members who willfully

failed to appear for depositions would be struck.  Here, however,

Defendants failed to subpoena six of these declarants, Shaver

Reply Decl. ¶ 48, and did not file a motion to compel the

depositions of any of them.

Accordingly, Defendants' request to strike is DENIED.

III. Plaintiffs' Evidentiary Objections

Plaintiffs object to the report and supplemental report of

Defendants' expert witness Bernard Siskin and to Defendants' 2006

internal audit examining DTAs executed between 2000 and 2005.

Defendants have addressed Plaintiffs' objections in their first

sur-reply.

Plaintiffs object to Dr. Siskin's initial report on the basis

that it required no expert skill and contains errors and legal

conclusions unhelpful to the Court and which the expert is not

qualified to make.  Defendants respond that Dr. Siskin's report

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

contains statistical analysis for which he is qualified and that his statistical summary is helpful to the Court.  In his report, Dr. Siskin reviews a sample of DTAs that Defendants provided to Plaintiffs and provides an opinion that the typed $50,000 figure was a "sample figure" and there was "no common, consistent or reliable information about what U.S. compensation was promised to a TCS employee."  The report also has data tables where Dr. Siskin displays how frequently the blanks in DTAs were completed in various ways and how the compensation amount compares to the amount of compensation stated in visa applications.

The Court SUSTAINS in part and OVERRULES in part Plaintiffs' objections to Dr. Siskin's report.  The Court will consider the data summaries that Dr. Siskin created, and will take into account the purported mistakes that Plaintiffs point out in determining how much weight to accord them, and in comparing them to the corresponding data summaries prepared by Plaintiffs.  However, the Court excludes Dr. Siskin's opinions.  In his report, Dr. Siskin does not explain the basis for his opinions.  He does not demonstrate that he is an expert in contract interpretation or determining whether a particular contract term was a sample or intended term.  He appears to base his opinions on several factors: that the figure is "in parentheses," see Siskin Decl. ¶ 16; that $50,000 is typed more frequently than it is handwritten and that other figures are more frequently handwritten, see id. at ¶ 17; that $50,000 rarely appears on visa petitions, see id. at ¶ 18; and that only one of the DTAs with the figure $50,000 had a "corresponding" visa petition with a compensation amount close to $50,000, id.  Dr. Siskin does not offer evidence of any scientific

methodology at all, let alone a reliable and valid methodology, that would allow a statistician to determine that a compensation amount entered on a contract did not accurately reflect what was promised in that contract, even though it appeared there.  Despite Defendants' assertions, Dr. Siskin does not refer to correlations or any other types of statistical tests that he used to compare the figures on an objective basis; instead, he only presents the data in descriptive terms and does not explain how he derives his opinions from these descriptions.

Plaintiffs also object to Dr. Siskin's supplemental report, filed on October 26, 2011, two days before Plaintiffs' reply deadline.  In this report, Dr. Siskin attempts to reconcile some of his data summaries with those created by Plaintiffs, using an Excel document that Plaintiffs provided to him on October 17, 2011.  The Court SUSTAINS Plaintiffs' objection to the supplemental report to the extent Dr. Siskin puts forward the same opinions as in his original report and DENIES Plaintiffs' objection to the extent it pertains to the data summaries themselves.

Plaintiffs also object to the 2006 Internal Audit of DTAs and other documents, on which Defendants rely to argue that many class members did not enter into DTAs.  Plaintiffs state that Defendants cannot locate seventy-five percent of the DTAs that were examined in the audit and, thus, Plaintiffs cannot verify or challenge its findings.  Plaintiffs also assert that Defendants have "improperly concealed and withheld the audit from discovery for years," by disclosing it for the first time with their opposition and not turning it over in initial or revised disclosures or in response

United States District Court
For the Northern District of California

to document requests and Court orders.  The Court DENIES

Plaintiffs' objection to the 2006 Internal Audit but will consider

Plaintiffs' arguments in determining the amount of weight to

accord this evidence.

IV.  Motion for Class Certification

    A. Legal Standard

    Plaintiffs seeking to represent a class must satisfy the

threshold requirements of Rule 23(a) as well as the requirements

for certification under one of the subsections of Rule 23(b).

Rule 23(a) provides that a case is appropriate for certification

as a class action if

> (1)  the class is so numerous that joinder of all
> members is impracticable;
>
> (2)  there are questions of law or fact common to the
> class;
>
> (3)  the claims or defenses of the representative
> parties are typical of the claims or defenses of the
> class; and
>
> (4)  the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b) further provides that a case

may be certified as a class action only if one of the following is

true:

> (1) prosecuting separate actions by or against
> individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with
> > respect to individual class members that would
> > establish incompatible standards of conduct for the
> > party opposing the class; or
> >
> > (B) adjudications with respect to individual class
> > members that, as a practical matter, would be
> > dispositive of the interests of the other members
> > not parties to the individual adjudications or
> > would substantially impair or impede their ability
> > to protect their interests;
>
> (2) the party opposing the class has acted or refused to
> act on grounds that apply generally to the class, so

that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.   The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).  Plaintiffs assert that the national and California classes qualify for certification under subdivision (b)(3).

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden.  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977).  The court must conduct a "'rigorous analysis,'" which may require it "'to probe behind the pleadings before coming to rest on the certification question.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Falcon, 457 U.S. at 160-61).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  Dukes, 131 S. Ct. at 2551.  To satisfy itself that class certification is

13

United States District Court
For the Northern District of California

proper, the court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975). Ultimately, it is in the district court's discretion whether a class should be certified.  Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991).

### B. Rule 23(a) Requirements

#### 1. Numerosity

Defendants concede that they deputed 13,121 employees to the United States between February 14, 2002 and June 30, 2005.  Opp. at 2.  Plaintiffs have submitted evidence that there were at least 6,244 California class members as of March 2010.  Hutchinson Decl. ¶ 77, Ex. 19, 5.  Defendants do not dispute that both the national and California classes meet the numerosity requirement. Accordingly, the Court finds that Plaintiffs have satisfied this requirement.

#### 2. Commonality

Rule 23 contains two related commonality provisions.  Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Rule 23(b)(3), in turn, requires that such common questions predominate over individual ones.

The Ninth Circuit has explained that Rule 23(a)(2) does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).  Indeed, Rule 23(a)(2) has been construed

permissively.  All questions of fact and law need not be
common to satisfy the rule.  The existence of shared
legal issues with divergent factual predicates is
sufficient, as is a common core of salient facts coupled
with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiffs contend that there are numerous common questions
of fact and law concerning Defendants' alleged illegal employment
practices, including the interpretation of the standard
compensation clauses in the form DTA entered into by all class
members, whether Defendants had a policy or practice of requiring
deputed employees to sign over their tax refund checks to
Defendants, and whether Defendants had a policy or practice of
deducting the Indian salary of deputed employees from their
American salaries, rather than paying deputed employees both
salaries.  Plaintiffs cite a number of cases involving form
contracts, in which courts have found that the commonality
requirement was met.

Plaintiffs present evidence that, in all of the earnings
statements Defendants produced for the class period, Defendants
deducted the Indian salary from the American salary, Shaver Decl.
¶ 8, and Defendants do not argue that they did not have a policy
and practice of deducting class members' Indian salary from their
United States salary.  Instead, Defendants assert that this case
does not meet Rule 23(b)(3)'s commonality provision, because no
form contract exists, there is no policy or practice of requiring
class members to sign over their tax refund checks, and there is
no policy or practice of providing inaccurate wage statements.
Defendants also argue that there is no common interpretation of
the purportedly ambiguous contract language.  Because Defendants

repeat many of their arguments in disputing that the predominance requirement is met, the Court will address those arguments in its discussion of predominance.

Defendants argue that, even though their own policies required that Defendants enter into a DTA with each employee prior to a deputation, many putative members of the national class did not enter into any "form contract" and, thus, they do not share common questions as to whether such a contract was breached. Defendants point to several sources to support their contention that some class members did not enter into the form DTA contracts.

First, Defendants point to a 2006 internal audit, which they say demonstrates that they did not consistently use DTAs, because between 2000 and 2006, only "62% of TCS employees deputed to the United States entered into complete DTAs."  Mukherjee Decl. ¶ 9. The Court finds that this audit does not provide persuasive evidence that Defendants did not consistently use DTAs during the class period.  The audit encompasses substantial time periods both before and after the class period for the national class, and Defendants provide no evidence which would support that the thirty-eight percent of TCS employees without "complete DTAs" were deputed within the class period.  Instead, Plaintiffs offer evidence that, of the small fraction of files that Defendants can now locate from the audit, over forty percent were from 2006, after the end of the national class period.  Furthermore, for the time period in the audit before the start of the class period, which was approximately one-third of the time covered by the audit in total, Defendants did not yet use DTAs for deputed employees. Further, the audit summary does not state that the thirty-eight

**United States District Court**
For the Northern District of California

percent of deputed employees without complete DTAs did not enter into a DTA with Defendants at all; instead, it indicates that thirty-eight percent of the deputed employees entered into a DTA that was not in "total compliance."  Mukherjee Decl. ¶ 9, Ex. A. This included, for example, a DTA missing the date or the employee number.  <u>Id.</u>

Defendants also assert that documentary evidence proves that many of the putative class members who submitted declarations did not have DTAs.  They state that, "out of the 35 declarants made available by Plaintiffs for deposition, only 12 of them had DTAs" that can now be located, even though Defendants acknowledge that additional declarants testified that they had signed DTAs.  Opp. at 16.  Defendants appear to base their arguments on the number of DTAs that they were able to locate in their own records, excluding those of the two named Plaintiffs.  <u>See</u> Smith Decl. ¶¶ 42-54 (providing copies of the DTAs of twelve deponents).  These numbers are unpersuasive; Defendants do not provide evidence that they were able to locate all DTAs that ever existed, and there is evidence that they could not: in response to Plaintiffs' request for the DTAs underlying the 2006 audit, Defendants have thus far only located about 24.9% of the DTAs that were known to have existed and were examined in the audit.  Reply, at 3 and n.5.  <u>See also</u> Siskin Decl. ¶ 4 (of 466 randomly selected employees from within the class period, Defendants were only able to produce 200 complete files).  Thus, the fact that Defendants do not have these documents does not mean that they did not exist at some point.

Finally, Defendants assert that the deposition testimony of six declarants establishes that they did not sign DTAs and imply

17

**United States District Court**
For the Northern District of California

that the testimony contradicts information in some of their
declarations.  The Court is not persuaded that the deposition
testimony establishes that the putative class member declarants
did not sign DTAs during the class period.[4]  The deposition
testimony to which Defendants point only shows either that the
declarants did not sign a DTA prior to the start of the class
period or that the declarants signed various contracts with
Defendants during the class period and could not remember
specifically what each agreement was called.

Defendants also argue that the DTA was not a form contract
because of variation in how the blank was completed in the section
of the DTA entitled, "Compensation in the United States," quoted
above, and because the interpretation of the agreement could
require consideration of extrinsic evidence.  However, the DTA is
a form contract drafted by Defendants and the executed DTAs are
identical in regards to almost every material term, including the
provision stating that the employees would be paid a United States
salary "in addition to" the amount they are paid in India and the
reference to "gross compensation."  See In re Chase Bank USA, N.A.
"Check Loan" Contract Litigation, 274 F.R.D. 286, 291-92 (N.D.
Cal. 2011) (where terms of agreements were "materially similar,"
even though there was variation in the specific text, and "the

---

[4] Plaintiffs state that, after submitting the declaration of
Sridhar Venkateswaran, they learned that he was in fact not a
putative class member, because he was not employed by Defendants
and was instead employed only by a separate entity, Tata Infotech,
which is not a party to this case.  Because Venkateswaran is not a
putative class member, whether or not he signed a DTA during the
class period is irrelevant here.

United States District Court
For the Northern District of California

amount of damages incurred by any particular class member may differ," the differences do not defeat certification under the commonality prong, "even where individualized evidence may be necessary for purposes of a damages calculation"). Even if Defendants could establish some ambiguity with extrinsic evidence, the ambiguous contract terms would interpreted against them, as the drafters of the form contract. See Restatement (Second) of Contracts § 206 ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."); Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."); Tahoe National Bank v. Phillips, 4 Cal. 3d 11, 20 (1971) ("Since the alleged ambiguities appear in a standardized contract, drafted and selected by the bank, which occupies the superior bargaining position, those ambiguities must be interpreted against the bank."). Further, when there is a form contract of adhesion at issue, as there is here, "the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.'" Ewert v. eBay, Inc., 2010 WL 4269259, at *7 (N.D. Cal.) (quoting Restatement (Second) of Contracts § 211(2)). "'[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it.'" Id. (quoting Restatement (Second) of Contracts § 211(2), at Comment e) (formatting in original).

United States District Court
For the Northern District of California

Accordingly, in construing the form contract between Defendants and class members, the Court need not delve into the actual knowledge of individual class members.  Because Defendants do not dispute that there are at least some identical material contract provisions, their arguments about the amounts in the compensation blank go more properly to whether individual questions predominate.

Defendants rely heavily on Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), to argue that commonality cannot be found here.  In Dukes, the Supreme Court found that the party seeking certification had not provided evidence sufficient to find that there was a company-wide discriminatory pay and promotion policy. Id. at 2555-57.  However, here, Plaintiffs have provided persuasive evidence that Defendants had a policy of requiring deputed employees to sign form DTAs, which materially varied only in the amount of additional compensation, and Defendants have not produced convincing evidence to disprove this.  There was an undisputed policy that Defendants deducted Indian salary from deputed employees' American paychecks during the class period. There was an undisputed policy that Defendants sent income tax refund checks to deputed employees, stamped to pay to the order of Defendants.  Accordingly, here, a class-wide proceeding will generate common answers regarding whether Defendants engaged in practices that violated the parties' agreements and California law.

Thus, the Court finds that Plaintiffs have satisfied their burden to meet the commonality requirement.

### 3. Typicality

Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156 (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted). The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Rule 23(a)(3) is satisfied where the named plaintiffs suffered the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members have been injured by the same course of conduct. Id. Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Id. (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990).

Defendants' arguments against typicality overlap substantially with their arguments against commonality and predominance. Defendants do not dispute that they acted in the same way toward Plaintiffs and the other putative class members or that Defendants applied common policies to both. Instead, they argue that named Plaintiffs and the DTAs that they signed are not typical of the class because there are no form contracts shared by all class members. The Court addresses this argument in discussing the commonality and predominance requirements.

21

Defendants also argue that Plaintiff Beri is not typical of the class, because Defendants may be able to develop a mutual mistake affirmative defense against her regarding the amount of compensation proven.  However, this does not defeat typicality. First, the availability of this defense is speculative at this point; Defendants do not assert that they have any evidence in support of this defense, but rather state that they will develop the defense through additional discovery.  Opp. at 21.  Plaintiff Beri maintains that she herself was not mistaken about the additional compensation amount.  Defendants have not argued that they will be able to prove a unilateral mistake defense.  This defense would not be unique to Plaintiff Beri; Defendants claim that they will assert the mutual mistake defense against other class members, though again they make this claim in a speculative way.  Further, even if mutual mistake rendered the compensation term ambiguous, Defendants drafted the contract, so the ambiguous term would be construed in favor of Plaintiff Beri and the other class members.

Thus, the Court finds that the interests of the named Plaintiffs are reasonably co-extensive with the absent class members and that the typicality requirement has been met.

### 4.  Adequacy

Rule 23(a)(4) establishes as a prerequisite for class certification that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Defendants do not dispute Plaintiffs' assertion that they satisfy the adequacy requirement, and the Court finds that Plaintiffs have met their burden on this prong.

United States District Court
For the Northern District of California

C. Rule 23(b)(3) requirements

    1.  Predominance

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  The focus is on the relationship between the common and individual issues." In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation marks and citations omitted).  "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" Hanlon, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (2d ed. 1986)).  A court must make "some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate . . . ." In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008) (citation and internal quotation marks omitted).

    a. Breach of Contract (National Class)

To assert a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach. Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (2004).

Plaintiffs argue that common issues will predominate, because the issue central to this claim is the interpretation of specific

provisions in a form contract applicable to all class members. Plaintiffs' breach of contract claim is premised on three separate types of violations: (1) that Defendants deducted class members' Indian salaries from their American salaries, even though the contract stated that the American salary would be "in addition to" the Indian salary; (2) that Defendants required class members to sign over their tax refunds; and (3) that Defendants did not pay class members the specific amount of additional United States compensation that they were contractually obliged to pay.

Defendants argue that individual issues would predominate in determining their liability under the first type of violation, because some class members authorized Defendants to deduct their Indian wage from their gross wage. Under California law, any deductions not otherwise authorized by state or federal law must be "expressly authorized in writing by the employee." Cal. Lab. Code § 224. Thus, Defendants must have written authorization of such a deduction. Defendants argue that some class members signed APDs in which they authorized the deduction of their Indian salaries from their United States wages. However, these APDs do not demonstrate that individual issues will predominate for several reasons. First, while the specific monetary amounts and formatting of the forms differ, the APDs are uniform in their material terms and, thus, the determination of whether class members who signed the APDs authorized the deduction of their Indian salary from their United States salary can be made on a class-wide basis.

Second, contrary to Defendants' contentions, neither the two APDs produced by Defendants from within the class period, nor the

**United States District Court**
For the Northern District of California

APDs from outside the class period that they proffered,
demonstrate that class members authorized this deduction.
Defendants argue that, because the APDs show that wages paid in
the United States are calculated by subtracting the Indian salary
from the deputed employee's "Gross Wages," the employees
authorized the deduction of their Indian salary from their United
States compensation amount.   See, e.g., Defs.' Suppl. Brief, at 6.
However, Defendants' conclusion conflates the total gross wages
and the gross wages paid in the United States and ignores that the
contracts that they drafted use the word "gross" in multiple
contexts.   The APDs put in evidence show that the deputed
employee's "Gross Wages" is the total of the "Wages paid in India"
and "Wages paid in the United States."   This is consistent with
the language in the form DTAs.   The DTAs state that deputed
employees will receive, "in addition to the compensation and
benefits you currently receive and will continue to receive in
India," an "additional compensation in the United States in the
gross amount of $ [blank], less deductions required by law or
otherwise voluntarily authorized by you."   They also state that
"Total Gross Compensation" is the aggregate of the "amounts of
salary paid by TCS in India" and "the additional compensation in
the United States."   The APDs thus authorize subtraction of the
Indian salary from the total gross compensation in order to
calculate the United States compensation--just as the employees
authorized in the DTA--but do not authorize subtraction of the
Indian salary from the United States compensation, which is what
Plaintiffs allege that Defendants did.   Further, the fact that
Defendants may have contracted to pay class members a net salary

United States District Court
For the Northern District of California

that was calculated after specific mandatory and voluntary deductions were withheld from the contracted-for gross salary does not mean that Defendants could make additional deductions from the gross salary beyond those which were specifically authorized, as Defendants appear to argue.

Defendants also argue that individual issues predominate as to the second type of violation, because "there is no uniform policy or practice regarding tax refunds." Opp. at 24-25. Defendants claim that the Court would have to hold mini-trials to determine whether each individual employee signed a tax refund check over to Defendants in a given year. However, Defendants' Rule 30(b)(6) witness, Ramakrishnan Venkataraman, testified that, during the class period, Defendants' policy and practice was that "when the tax refunds are received, they have been sent to the employee with a request that the tax refunds are signed and sent back to the company." Hutchinson Decl. ¶ 7, Ex. E, Tr. 223:9-12. He also agreed that Defendants' "practice" was to mark "the back of deputed employees' tax refund checks with a stamp that read, "Pay to the order of [Defendants]." Id. at 223:23-224:1. Defendants also do not dispute Plaintiffs' evidence that one hundred percent of the tax refund checks that Defendants produced from the period relevant to the class, with a copy of the back of the check, were stamped in this way. Shaver Decl. ¶ 9. See also Summ. J. Order, at 16 (noting that Defendants presented evidence that their "Overseas Deputation Manual stated that employees on deputation were required to sign over their income tax refund checks to Defendants"). Although Defendants state that Plaintiffs "misconstrue" their policy, they do not explain how. Instead,

26

Defendants argue that this policy was not always uniformly applied, because, for example, some class members did not comply with the policy--did not return the signed tax refund--or sometimes Defendants did not receive a refund check for a class member. Opp. at 25. However, Defendants cannot disprove the existence of their own acknowledged policy by asserting that isolated employees failed to comply with it. See Kurihara v. Best Buy Co., 2007 U.S. Dist. LEXIS 64224, at 29-30 (N.D. Cal.) ("Where a plaintiff challenges a well-established company policy, a defendant cannot cite poor management to defend against class certification."). Further, these arguments primarily relate to the amount of damages, which "is invariably an individual question and does not defeat class action treatment." Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975) (citations omitted).

Defendants argue that individual issues will predominate as to the third type of violation, because there is no form contract in that there were variations in how the blank in the "Compensation in the United States" section was or was not filled in. Defendants argue that these variations create ambiguity and mean that individual inquiries will need to be conducted to ascertain how much additional compensation Defendants had promised to each class member in order to determine if Defendants breached this obligation.

Defendants rely primarily on Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Serv., Inc., 601 F.3d 1159 (11th Cir. 2010). However, in that case, there were significant variations in multiple contract clauses that were material to the dispute, including at least thirty-three material variations of the payment

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

clauses, which could not be adequately addressed through sub-classes. Id. at 1171-76. In contrast, here there is variation only in one material contract term. Even for that term--the specific amount of additional compensation promised-- there is much less variation here than in Sacred Heart. As stated above, Defendants identify several variations in how this blank is completed. Defendants concede that a substantial percentage of the DTAs were unambiguous and included a "reliable, intended, and agreed compensation amount." Opp. at 18.[5] For these DTAs,

---

[5] Defendants state at several points in their opposition that fifty-nine percent of sample DTAs examined had ambiguous terms and that forty-one percent had unambiguous terms, citing the declaration of Dr. Siskin, which contains a summary of a sample of 194 DTAs executed between 2002 and 2005 that they produced to Plaintiffs following a court order. In his summary, Dr. Siskin created eight categories of DTAs, based on how the compensation field was completed, and assigned each DTA to a category. Siskin Decl. ¶ 14, Chart A; Siskin Suppl. Decl. Chart A. To calculate the number of DTAs that Defendants concede have unambiguous compensation terms, Dr. Siskin appears to have added up the number of DTAs in four of his categories in which there was a figure in the blank other than a typed $50,000, including three DTAs in which $50,000 was written in by hand. Id. Dr. Siskin included in this figure DTAs in which the number in the blank was followed by a typed $50,000 in parentheses--($50,000)--which he describes as a sample instruction on how to complete the field. Id. This totaled eighty-two DTAs. Id.

In his supplemental declaration, Dr. Siskin corrected the percentage obtained by dividing eighty-two by 194 from fifty-nine percent to fifty-eight percent. Siskin Suppl. Decl. ¶ 3. He also reassigned two DTAs to a different category and assigned eleven DTAs to categories, which he stated he had previously been unable to do. Id. at ¶¶ 5-8. He also stated that, if he limited his analysis to the 143 DTAs he found to be executed within the class period, he would characterize approximately twenty-nine percent of the DTAs as unambiguous. Id. at ¶ 5.

United States District Court
For the Northern District of California

extrinsic evidence of intent would be inadmissible, and thus gross wages could be determined on a common basis, supporting a finding of predominance.

For the remaining DTAs, Defendants argue that there is ambiguity in the amount of compensation promised, which would necessitate individualized inquiries into the intent of the parties to ascertain the intended amount.  These DTAs have compensation fields completed in the following three manners: (1) _____;[6] (2) $50,000; (3) _____ ($50,000).  Defendants also assert that this term is ambiguous for class members for whom DTAs cannot be located.  Defendants contend that, for the class members with ambiguous compensation terms, individual extrinsic evidence will be required to determine the parties' intent and thus individual issues would predominate.

Extrinsic evidence is only admissible if contract terms are ambiguous.  Under California law, the interpretation of a contract involves a two-step process.  <u>Wolf v. Superior Court</u>, 114 Cal. App. 4th 1343, 1351 (2004).  First, the court provisionally

---

In their analysis of the same sample, Plaintiffs calculated that thirty-three percent of the 172 DTAs executed within the class period had a compensation term other than $50,000 in the relevant blank.  Shaver Decl. ¶ 11.

Thus, the parties agree that approximately a third or more of the DTAs contain an unambiguous additional compensation amount.

[6] Dr. Siskin separates DTAs in which the fields are completed in the following two ways: _____ and _____(_____).  <u>See</u> Siskin Decl. ¶ 14, Chart A; Siskin Suppl. Decl. Chart A.  In their opposition brief, Defendants do not draw an analytical distinction between these categories, and the Court finds none.  Accordingly, the Court considers these variations to be the same for the purposes of its analysis.

**United States District Court**
For the Northern District of California

receives all credible evidence concerning the parties' intentions to determine if there is an ambiguity.  Id.; Pac. Gas & Elec. Co. v. G.W. Drayage & Rigging Co., Inc., 69 Cal. 2d 33, 39-40 (1968). Thus, the court will examine the proffered evidence concerning the parties' intentions in order to determine whether the disputed terms are ambiguous.  If, in light of the extrinsic evidence, the court determines the language of the contract is ambiguous, the extrinsic evidence is admitted to aid in the second step: interpreting the contract.  Id.  However, as previously noted, where a form contract of adhesion is at issue, the court will, wherever reasonable, interpret the agreement "as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing" in order to "effectuate the reasonable expectations of the average member of the public who accepts it."  Ewert v. eBay, Inc., 2010 WL 4269259, at *7 (N.D. Cal.) (quoting Restatement (Second) of Contracts § 211(2) & Comment e).

    Defendants argue that all contracts that fall into the second and third category (approximately forty-two percent of the sampled DTAs) are ambiguous, because the typed $50,000 is a sample amount, not the amount that the parties intended as compensation. Defendants do not proffer persuasive evidence that $50,000, when typed, is a sample amount.  Defendants cite only Dr. Siskin's conclusory declaration.  However, neither Defendants nor Dr. Siskin demonstrate that he is an expert in contract interpretation or in determining whether a particular contract term was a sample or intended term.  Neither has offered evidence of any scientific methodology at all, let alone a reliable and valid one, that would

allow a statistician to determine that a compensation amount
entered on a contract did not accurately reflect what was promised
in that contract, even though it appeared there.  Dr. Siskin also
substantially reduced any persuasive force that his declaration
may have had by testifying in his deposition that, for a
particular DTA with which he was presented, he did not believe
$50,000 was a sample amount.  See Hutchinson Reply Decl., Ex. A,
Tr. 103:3-9.

Defendants also argue that some unknown fraction of contracts
in the second and third category may be rendered ambiguous because
they may present evidence that class members signed other
documents stating a different compensation amount.  The only such
documents that Defendants allude to are APDs.  However, Defendants
do not present evidence that the compensation amounts in the APDs
ever differed from those in the corresponding DTAs.  Defendants
also argue that they may present evidence that some class members
did not believe that $50,000 was the correct amount of their
additional compensation, even though this was the only figure
shown in the DTA.  In support, Defendants assert that some class
members' visa petitions had a different compensation amount than
that on their DTAs and that certain class members testified that
they thought they would be compensated the amount in their visa
petitions.  However, this argument does not demonstrate that
individual issues will predominate for a variety of reasons.
First, Defendants do not offer credible evidence that the terms in

the deponents' visa petitions differed from those in their DTAs.[7] Further, even if they did, the visa petitions were not contracts between deputed employees and Defendants, but instead were sworn petitions prepared and submitted by Defendants to the United States government without the participation of the deputed employee.  Additionally, as previously stated, given that the DTA was a form adhesion contract, the understanding of the individual class members of its terms is not relevant.  Instead, the Court will effectuate the reasonable expectations that an employee would have of the meaning of the contract.

Further, as previously recognized, the Court will construe ambiguous terms against Defendants, as the drafting parties. Thus, if there were evidence of ambiguity in the DTAs in the second and third categories, the Court must take into account that Defendants drafted all the documents signed by the class members, introduced any ambiguity into the documents, and were in a superior bargaining position to the class members at the time that the documents were signed.

Plaintiffs concede that there is ambiguity as to the compensation term for the class members with DTAs that are completely missing a number--less than fifteen percent of the

---

[7] The Court accords little or no weight to Dr. Siskin's testimony comparing salaries on the visa petitions in a sample of employment records to salaries on the DTAs in those records.  Dr. Siskin "matches" DTAs and visa petitions to one another based on which of these documents is "closest in date," as long they are dated less than a year apart.  Siskin Decl. ¶ 10.  However, he also acknowledges in his declaration that "the dates on the visa petitions and DTAs are rarely the same," and that many employees have multiple visa petitions and DTAs.  Id.

**United States District Court**
For the Northern District of California

sample of DTAs produced, according to the data summaries prepared by both parties--and for class members without an DTA that can be currently located.  It is not clear what percentage of the putative class falls into the latter category.  Defendants point only to two specific sources of extrinsic proof, both documents that contain some figure for the amount of gross salary: an APD, which some class members signed, and the visa petitions, which Defendants filed on behalf of each deputed employee.  Opp. at 9, 23-24.[8]  These are standard forms that are susceptible to proof on a class-wide basis as well.  See Menagerie Prods. v. Citysearch, 2009 U.S. Dist. LEXIS 108768, at *37 (C.D. Cal.) (where the extrinsic evidence relevant to interpreting an ambiguous contract can be established on a class-wide basis, "it cannot be said that individual issues predominate" as to the breach of contract claim).

Accordingly, the Court finds that Plaintiffs have met their burden to demonstrate that issues for the breach of contract claim common to the national class predominate over issues affecting only individual members.

b. Wrongful Collection of Wages (Cal. Labor Code § 221) (California Class)

California Labor Code section 221 provides, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said

---

[8] While Defendants point to deposition testimony as well, they do so only to support that visa petitions may be an extrinsic source of information about the intended amount of compensation. Opp. at 24.

**United States District Court**
For the Northern District of California

employee." "'Wages' for this purpose 'includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.'" Prachasaisoradej v. Ralphs Grocery Co., Inc., 42 Cal. 4th 217, 226 (2007) (quoting Cal. Lab. Code § 200(a)).  Section 221 "was adopted to prevent the use of secret deductions or 'kickbacks' to make it appear the employer is paying a required or promised wage, when in fact it is paying less." Prachasaisoradej, 42 Cal. 4th at 231 (citing Kerr's Catering Serv. v. Dep't of Indus. Relations, 57 Cal. 2d 319, 328 (1962)).  Plaintiffs contend that Defendants violated section 221 in two ways: (1) by deducting their Indian salary from their United States compensation and (2) by requiring them to sign over their tax refund checks to Defendants.  Many of Defendants' arguments against predominance for Plaintiffs' section 221 claim are already addressed above regarding breach of contract.

Defendants argue that Plaintiffs cannot prove the intended compensation amount on a class-wide basis.  However, proof of total compensation is not relevant to this claim, which simply requires proof that Defendants deducted their Indian salary from their United States salary, that Defendants required class members to sign over their tax refund checks and that class members did not give express authorization for these deductions.  See Cal. Lab. Code § 224 (deductions not otherwise authorized by state or federal law must be "expressly authorized in writing by the employee").

**United States District Court**
For the Northern District of California

Defendants contend that some declarants signed APDs in which they gave Defendants express authorization to take deductions from their wages.  Opp. at 28.  While this may be true, these declarants did not expressly authorize Defendants to keep the over-withheld tax deductions or to deduct their Indian salary from their United States salary.  Thus, the APDs do not provide proof that individual issues will predominate.

Accordingly, Plaintiffs have met the predominance requirement for their section 221 claim predicated on unlawful collection of tax refunds and deduction of Indian salary.

> c. Failure to Provide Accurate Itemized Wage
> Statements (Cal. Labor Code § 226(a))
> (California Class)

California Labor Code section 226(a) mandates, in pertinent part, "Every employer shall furnish each of his or her employees . . . an accurate itemized statement in writing showing (1) gross wages earned, . . . (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned . . . ." Section 226(e) provides, "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)" is entitled to certain statutory compensation for each pay period in which the violation occurred and an award of costs and attorneys' fees.

Plaintiffs argue that Defendants violated section 226 by (1) inaccurately reporting the number of tax exemptions for class members; and (2) inaccurately reporting the gross and net incomes of class members by failing to disclose class members' payments to

the company in tax refund checks and the money that Defendants
deducted for class members' Indian salary.[9]

Defendants contend that section 226 does not require them to
list tax exemptions on the wage statements.  Opp. at 29.  In their
reply, Plaintiffs do not contend that section 226 requires that
exemptions be accurately reported on wage statements, and instead
argue that "inaccurately reporting tax exemptions . . . resulted
in inaccurate deductions of Class members' salary for federal and
state taxes," which is a violation of section 226.  Reply, at 23.
However, while Plaintiffs have alleged that Defendants commonly
changed class members' exemptions, Plaintiffs have not submitted
proof that these changes were incorrect or resulted in inaccurate
withholding that was common to the California class.  Plaintiffs
primarily rely on the declaration of Anne Shaver, in which she
summarizes changes in exemptions found in a small number of sets
of earnings statements produced by Defendants.[10]  Ms. Shaver
asserts that over half of the sets of earnings statements examined
show that there was a change of two or more in the number of
exemptions from month-to-month or year-to-year; however, Ms.
Shaver acknowledges that there is no evidence as to why these

_____

[9] At the hearing, Plaintiffs' counsel stated that this claim
was also premised on the failure to pay the full amount of
additional salary promised; however, this was not alleged in the
complaint or argued in the motion for class certification.
Accordingly, the Court does not reach this argument.

[10] While Defendants produced 197 sets of monthly earning
statements, only thirty-three listed the number of exemptions and
thus Ms. Shaver's summary is based on only those thirty-three sets
of earning statements.  Shaver Decl. ¶ 10.

United States District Court
For the Northern District of California

changes were made, that they were inaccurate, or that they were
made without authorization.  Shaver Decl. ¶ 10 & n.2.  Further,
the class member declarations that Plaintiffs submit show that the
number of exemptions changed for only some class members, that it
changed in different ways, and that the change was sometimes
accurate and sometimes inaccurate.  Plaintiffs' proposed trial
plan also recognizes that these changes may have been proper in
individual cases.  Pls.' Proposed Trial Plan, at 6.  Thus, the
Court finds that Plaintiffs have not established that common
issues would predominate as to their section 226 claim based on
inaccurate reporting of the number of tax exemptions for class
members.

     However, to the extent that Plaintiffs' section 226 claim is
predicated on Defendants' failure accurately to report gross and
net wages and deductions, by failing to reflect class members'
payments to the company in tax refund checks and the money that
Defendants deducted for Indian salaries, the predominance
requirement has been met.  Plaintiffs argue that this can be shown
through the same common proof as the breach of contract and
section 221 claims, addressed above.  Defendants respond that the
wage statements accurately show the net pay to the class members;
however, the fact that wage statements showed the amount on the
pay checks is irrelevant to Plaintiffs' arguments that Defendants
paid deputed employees an incorrect amount.  Defendants also argue
that Plaintiffs cannot show the proper gross compensation through
common proof; this is also irrelevant, because if Plaintiffs prove
that deputed employees were improperly required to pay Defendants
back their wages, the wage shown on the statements would be

United States District Court
For the Northern District of California

inaccurate regardless of amount.  Finally, relying on Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1142-43 (2011), Defendants argue that Plaintiffs "fail to demonstrate any injury suffered by putative class members due to the allegedly inaccurate wage statements."  However, Price is inapplicable; there, the California Court of Appeal held that the mere omission of one of the required terms, without an allegation that the information was inaccurate, was insufficient to allege injury.  The court distinguished cases where the plaintiffs had "to engage in discovery and mathematical computations . . . to determine if they were correctly paid."  Id. at 1143.  Further, the Court has already rejected this argument.  See Order on Mot. to Dismiss, 12 (rejecting Defendants' argument that "plaintiffs fail to allege injury suffered as a result of defendants' violation of section 226," because "failure to provide accurate wage statements alone has been held to be an injury to employees").

Accordingly, the Court finds that Plaintiffs have met their burden to establish predominance for their section 226 claim predicated on Defendants' failure to account for class members' payments to the company in tax refund checks or the Indian salary deduction, but not for Defendants' inaccurate reporting of the number of tax exemptions.

### d. Waiting Period Penalties (Cal. Labor Code §§ 201-203) (California Class)

California Labor Code section 201(a) provides, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  California Labor Code section 203 provides that employees "not

United States District Court
For the Northern District of California

having a written contract for a definite period of time" who quit employment are entitled to payment of wages either at time of quitting if they have given seventy-two hours previous notice or within seventy-two hours thereafter if they have not given such notice. Section 203 further provides, "If an employer willfully fails to pay . . . in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Plaintiffs allege that Defendants have violated Labor Code sections 201 through 203 by failing properly to compensate deputed employees at the time of discharge for: (1) the Indian wages that Defendants deducted from their United States wages; (2) the wages that Defendants required deputed employees to sign over to them through the tax refund checks; and (3) the amount of unpaid additional compensation promised in the DTAs. Because these violations are predicated on the breach of contract and section 221 claims, Plaintiffs assert that common questions predominate over individual questions for the same reasons.

In response, Defendants again argue that Plaintiffs cannot establish the amount of compensation that class members were promised through common proof. This is addressed above, and is not relevant to all of the theories of liability. Defendants also argue that common questions do not predominate, because Defendants may be able to file counter-claims against some class members who

United States District Court
For the Northern District of California

1  "absconded from TCS and did not fulfill their post-deputation

2  obligations."  Opp. at 30.

3      However, "the existence of counterclaims . . . will not

4  usually bar a finding of predominance of common issues."  2

5  Newberg § 4:26.  Defendants have not filed any counter-claims,

6  have not identified any actual putative class members who have

7  absconded and have not provided an estimate of how many class

8  members may have done so.  As Plaintiffs point out, counter-claims

9  against most class members would be barred by the four year

10 statute of limitations.  Defendants have not cited any cases to

11 support the proposition that mere speculation about possible

12 counter-claims will bar certification.

13      Thus, Plaintiffs have satisfied their burden as to

14 predominance of common issues in their waiting period penalties

15 claim to the same extent as with the underlying violations.

16               e. UCL Claim (California Class)

17      California's Unfair Competition Law (UCL) prohibits any

18 unlawful, unfair or fraudulent business act or practice."  Cal.

19 Bus. & Prof. Code § 17200.  The UCL incorporates other laws and

20 treats violations of those laws as unlawful business practices

21 independently actionable under state law.  Chabner v. United of

22 Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).

23 Violation of almost any federal, state or local law may serve as

24 the basis for a UCL claim.  Saunders v. Superior Court, 27 Cal.

25 App. 4th 832, 838-39 (1994).  Plaintiffs' UCL claim is premised on

26 Defendants' alleged violations of California Labor Code § 221.

27 Thus, the predominance of common questions for this claim mirrors

28 that of the section 221 claim.

                                40

United States District Court
For the Northern District of California

2.  Superiority

Defendants' only argument that class action treatment is not superior is that class members "who were deputed to the U.S. in multiple years" would likely have claims worth "tens of thousands of dollars" and, thus, class members have sufficient monetary incentive to bring individual suits.  Opp. at 31.  Notably, Defendants do not argue that all putative class members would have what they characterize as "large" claims.  There is evidence in the record that some class members were deputed to the United States for less than a year during the class period.  See, e.g., Gunalan Decl. ¶ 3 (deputed for less than a year of the class period); Karmakar Decl. ¶¶ 3-4 (deputed for less than six months of the class period); Malnedi Decl. ¶¶ 3 (deputed, over the course of two deputations to the United States, for less than a year of the class period).  While the court in Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001), found that the superiority factor weighed against class certification when damages suffered by each class member were large, in that case, the court found that the damages for each class member exceeded $50,000.  Id. at 1190-91.  Here, Defendants acknowledge that one of the named Plaintiffs seeks under $25,000 in damages.  See also Smith v. Cardinal Logistics Mgmt. Corp., 2008 U.S. Dist. LEXIS 117047, at *32 (N.D. Cal.) (where "full recovery would result in an average amount of damages of $25,000-$30,000 per year of work for each class member" and "not all of the putative class members worked for the entire class period of approximately five years, the Court cannot conclude that the damages sought are large enough to weigh against a class action").

Further, Plaintiffs have argued that many class members fear retaliation from Defendants if they file individual suits and that many class members currently reside in India, which would pose substantial barriers to bringing individual actions.  Defendants have not disputed these arguments.

Thus, the Court finds that Plaintiffs have demonstrated that class treatment is superior to litigating individual cases.

V.    Appointment of Class Counsel

Rule 23(g)(1) of the Federal Rules of Civil Procedure provides in part:

> Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
>   (A) must consider:
>
>       (i) the work counsel has done in identifying or investigating potential claims in the action;
>
>       (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
>       (iii) counsel's knowledge of the applicable law; and
>
>       (iv) the resources that counsel will commit to representing the class;
>
>   (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
>
>   (C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
>
>   (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and
>
>   (E) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1).

Plaintiffs represent that their counsel, the law firms of Rukin, Hyland, Doria & Tindall, LLP (RHDT) and Lieff, Cabraser,

Heimann & Bernstein, LLP (LCHB), have invested significant time and resources to investigating and developing the legal claims in this case thus far, that they are seasoned and experienced in handling class actions of this nature, that they are knowledgeable of the relevant law, and that they will continue to commit ample resources to representing the class.  Plaintiffs have submitted declarations and other evidence in support thereof.  See Tindall Decl. ¶¶ 1-20 (describing his and RHDT's experience litigating class action employment matters, the efforts of Plaintiffs' counsel on behalf of the class thus far and their commitment to continue to represent the class vigorously in the future); Dermody Decl. ¶¶ 1-5 (describing her experience litigating class action employment matters and providing a firm resume for LCHB). Defendants do not oppose the appointment of their attorneys as class counsel.

Accordingly, the Court GRANTS Plaintiffs' motion for appointment of their counsel as class counsel.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification (Docket No. 185) is GRANTED IN PART and DENIED IN PART.  The Court certifies a national class, defined as "all non-U.S. citizens who were employed by Tata in the United States at any time from February 14, 2002 through June 30, 2005 and who were deputed to the United States after January 1, 2002." This class may prosecute Plaintiffs' breach of contract claims. The Court certifies a California class, defined as "all non-U.S. citizens who were employed by Tata in California at any time from February 14, 2002 through June 30, 2005 and who were deputed to

**United States District Court**
For the Northern District of California

California after January 1, 2002."[11]  This class may prosecute

Plaintiffs' claims for wrongful collection of wages, failure to

provide accurate itemized wage statements, waiting period

penalties and violation of the UCL, except to the extent that

Plaintiffs' section 226 claim is based on the inaccurate reporting

of the number of tax exemptions.  The Court APPOINTS the law firms

of Lieff, Cabraser, Heimann & Bernstein, LLP and Rukin Hyland

Doria & Tindall LLP as class counsel.

The parties shall appear for a case management conference to

set future deadlines in this case on Wednesday, April 25, 2012 at

2:00 p.m.  The parties shall submit a joint case management

statement by April 18, 2012.

IT IS SO ORDERED.

Dated: 4/2/2012

CLAUDIA WILKEN
United States District Judge

---

[11] Plaintiffs have requested that the California class include individuals employed by Tata through the date of judgment. Because Defendants changed their policies regarding income tax returns and deduction of the Indian salary from the United States salary in July 2005, the Court limits the California class to include only individuals who were employed by Tata through June 30, 2005.  However, the class may pursue claims for waiting time penalties that accrued after June 30, 2005 for failure to pay wages that were earned before that date or that were improperly deducted before that date.